UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

ALBA MORALES and LANIE COHEN, on behalf of themselves and all others similarly situated,

                    Plaintiffs,

        v.

UNILEVER UNITED STATES, INC.,

                    Defendant.

CIV. NO. 2:13-2213 WBS EFB

MEMORANDUM AND ORDER RE: MOTION TO DISMISS

----oo0oo----

        Plaintiffs Alba Morales and Lanie Cohen brought this putative class-action lawsuit against defendant Unilever United States, Inc., in which they allege that defendant misled them and similarly situated consumers by falsely representing that its TRESemmé Naturals line of hair care products contained no synthetic chemicals or artificial ingredients.  Defendant now moves to dismiss the First Amended Complaint ("FAC") pursuant to Federal Rule of Civil Procedure 12(b)(1) for lack of standing and

1

1   Federal Rule of Civil Procedure 12(b)(6) for failure to state a

2   claim upon which relief can be granted.

3   I.   Factual & Procedural History

4        Defendant is a major cosmetics company that produces,

5   among other products, the TRESemmé Naturals line of shampoos and

6   conditioners.  (FAC ¶ 1 (Docket No. 1).)  Morales is a resident

7   of South Lake Tahoe, California.  (Id. ¶ 6.)  Morales alleges

8   that she purchased defendant's Nourishing Moisture shampoo,

9   Nourishing Moisture conditioner, Vibrantly Smooth shampoo, and

10  Vibrantly Smooth conditioner at a Safeway store in South Lake

11  Tahoe, California in June 2012.  (Id.)  Cohen is a resident of

12  Canton, Massachusetts.  (Id. ¶ 7.)  Cohen alleges that she

13  purchased defendant's Radiant Volume shampoo and Vibrantly Smooth

14  conditioner at a Target store in Stoughton, Massachusetts in

15  April 2013.  (Id.)  Both plaintiffs allege that they viewed the

16  product labels before purchasing the products and paid a premium

17  for the products over comparable products not marketed as

18  "natural."  (Id. ¶¶ 6-7, 17.)  Plaintiffs allege that defendant's

19  representation that the products are natural is false because the

20  products contain numerous "unnatural synthetic ingredients."

21  (Id. ¶ 16.)

22       On October 22, 2013, plaintiffs brought this action on

23  behalf of themselves, a putative class of purchasers located in

24  twenty-one states including California and Massachusetts (the

25  "Class"), a subclass of California purchasers (the "California

26  subclass"), and a subclass of Massachusetts purchasers (the

27  "Massachusetts Subclass").  Plaintiffs assert three claims: (1) a

28  claim by Morales under the Unfair Competition Law ("UCL"), Cal.

1   Bus. & Prof. Code § 17200 et seq., on behalf of the California

2   Subclass; (2) a claim by Morales under the Consumers Legal

3   Remedies Act ("CLRA"), Cal. Civ. Code § 1750 et seq., and twenty

4   other state consumer protection statutes[1] on behalf of the Class

5   and the California Subclass; and (3) a claim by Cohen under the

6   Massachusetts Consumer Protection Act ("MCPA"), Mass. Gen. Laws.

7   Ann. ch. 93A, and twenty other state consumer protection statutes

8   on behalf of the Class and the Massachusetts Subclass.  Defendant

9   now moves to dismiss the complaint pursuant to Rule 12(b)(1) for

10  lack of standing and pursuant to Rule 12(b)(6) for failure to

11  state a claim upon which relief can be granted.

12  II.  Standing

13       A.   Article III and Statutory Standing

14            "An Article III federal court must ask whether a

15  plaintiff has suffered sufficient injury to satisfy the 'case or

16  controversy' requirement of Article III of the U.S.

17  Constitution."  Brazil v. Dole Food Co., 935 F. Supp. 2d 947, 960

18  (N.D. Cal. 2013) (citing Clapper v. Amnesty Int'l, --- U.S. ---,

19  133 S.Ct. 1138, 1146 (2013)).  "To establish Article III

20  standing, an injury must be concrete, particularized, and actual

21  or imminent; fairly traceable to the challenged action; and

22  redressable by a favorable ruling."  Clapper, 133 S.Ct. at 1147

23  (internal quotation marks omitted).  A plaintiff invoking federal

24  _____

25       [1]   Those statutes were enacted by the District of Columbia
    and the following twenty states: Alaska; Arkansas; California;
26  Connecticut; Delaware; Florida; Hawaii; Illinois; Maine;
    Massachusetts; Michigan; Missouri; Nebraska; New Hampshire; New
27  Jersey; New York; Rhode Island; Vermont; Washington; and
    Wisconsin.  Each of plaintiffs' class-wide claims arises under
28  the same grouping of state consumer protection statutes.

1  jurisdiction must satisfy the standing requirements of Article

2  III even if she asserts only state-law claims.  Birdsong v.

3  Apple, Inc., 590 F.3d 955, 960 n.4 (9th Cir. 2009).

4          In addition to the requirements set forth by Article

5  III, a plaintiff asserting claims under California's consumer

6  protection statutes must also establish statutory standing.  To

7  have standing to sue under the UCL, a plaintiff must "(1)

8  establish a loss or deprivation of money or property sufficient

9  to qualify as an injury in fact, i.e., economic injury, and (2)

10 show that that economic injury was the result of, i.e., caused

11 by, the unfair business practice or false advertising that is the

12 gravamen of the claim."  Kwikset Corp. v. Superior Court, 51 Cal.

13 4th 310, 322 (2011) (emphasis in original).

14         The standing requirements under the UCL are both

15 similar to and "substantially narrower than federal standing

16 under [A]rticle III . . . which may be predicated on a broader

17 range of injuries."  Id. at 324.  The standing requirements under

18 the UCL are also more stringent than those imposed by the CLRA,

19 which requires only that a plaintiff have suffered "any damage"

20 as a result of the defendant's misconduct.  Cal. Civ. Code §

21 1780(a); see also Hinojos v. Kohl's Corp., 718 F.3d 1098, 1108

22 (9th Cir. 2013) ("[A]ny plaintiff who has standing under the

23 UCL's . . . 'lost money or property' requirement will, a

24 fortiori, have suffered 'any damage' for purposes of establishing

25 CLRA standing." (emphasis in original)); Meyer v. Sprint Spectrum

26 L.P., 45 Cal. 4th 634, 641-43 (2009) (discussing standing

27 requirements under CLRA).  Therefore, if plaintiffs have

28 sufficiently alleged standing under the UCL, they have also

4

1 alleged standing under the CLRA and Article III.

2          1.   Economic Injury

3          A plaintiff must establish that he suffered "some form

4 of economic injury" in order to have standing under the UCL.

5 Kwikset, 51 Cal. 4th at 323.  "An economic injury exists where a

6 seller misrepresents a product and, had the product been

7 represented accurately, buyers would not have been willing to pay

8 as much as they did, or would have refused to purchase the

9 product altogether."  Rosales v. FitFlop USA, LLC, 882 F. Supp.

10 2d 1168, 1174 (S.D. Cal. 2012).

11          Here, plaintiffs allege that they suffered economic

12 injury because they paid a premium for TRESemmé Naturals products

13 over comparable products that are not marketed as "natural."

14 (FAC ¶ 17.)  The "extra money paid" for these products above what

15 plaintiffs would have paid but for defendant's allegedly

16 deceptive representations constitutes economic injury.  Kwikset,

17 51 Cal. 4th at 330; see also Mazza v. Am. Honda Motor Co., 666

18 F.3d 581, 595 (9th Cir. 2012) (holding that plaintiffs'

19 allegations that "class members paid more . . . than they

20 otherwise would have paid . . . because Honda made deceptive

21 claims" sufficiently alleged economic injury).  Even if

22 plaintiffs have not alleged what they would have paid absent

23 defendant's alleged misrepresentations that the products were

24 free from artificial ingredients, they are not required to do so

25 in order to allege economic injury under the UCL.  See Hinojos,

26 718 F.3d at 1105 (noting that the UCL does not require a

27 plaintiff "to plead how much he would have paid for the

28 merchandise had he known its true value").  Accordingly,

1   plaintiffs have sufficiently alleged that they suffered economic

2   injury as a result of defendant's misrepresentations.  See

3   Kwikset, 51 Cal. 4th at 323.

4           2.   Causation

5           In order to have standing under the UCL, a plaintiff

6   must allege not only that he suffered economic injury, but also

7   that there was a "causal connection" between that injury and the

8   defendant's alleged misrepresentation.  Kwikset, 51 Cal. 4th at

9   326.  Because "reliance is the causal mechanism of fraud," a

10  plaintiff "proceeding on a claim of misrepresentation must

11  demonstrate actual reliance on the allegedly deceptive or

12  misleading statements" in order to have standing under the UCL.

13  In re Tobacco II Cases, 46 Cal. 4th 298, 326 (2009).[2]

14          The California Supreme Court has recognized that a

15  presumption of actual reliance arises whenever a

16  misrepresentation is material--that is, if a reasonable person

17  would "attach importance to its existence or nonexistence in

18  determining his choice of action."  Id.  As a result, a plaintiff

19  "need only allege a misrepresentation of a material fact" in

20  order "[t]o satisfy the requirement of pleading actual reliance,

21  or causation, in connection with false advertising for purposes

22  of the UCL."  Chapman v. Skype Inc., 220 Cal. App. 4th 217, 229

23  (2d Dist. 2013).  "The materiality of a misrepresentation is

24  generally a question of fact unless the misrepresentation was so

25  _____

26      [2]   This requirement also applies to claims brought under
    the "unlawful" prong of the UCL if "the predicate unlawful

27  conduct is based on misrepresentations," as is allegedly the case
    here.  Durell v. Sharp Healthcare, 183 Cal. App. 4th 1350, 1363

28  (4th Dist. 2010).

1  obviously unimportant that the trier of fact could not reasonably

2  conclude that a reasonable person would have been influenced by

3  it." Id.

4          Here, plaintiffs allege that they "viewed the labels"

5  and "paid a premium for those products over comparable products

6  that do not purport to be natural." (FAC ¶¶ 6-7, 17.)  Those

7  allegations permit the reasonable inference that plaintiffs

8  purchased the products on the basis of representations made on

9  the label. See In Re Tobacco II Cases, 46 Cal. 4th at 326.

10 Although defendant contends that plaintiffs have not identified

11 the specific aspect of the product labels that influenced their

12 decision to purchase the products, plaintiffs are not required to

13 do so in order to establish standing.[3] See Kwikset, 51 Cal. 4th

14 at 328 ("While a plaintiff must allege that the defendant's

15 misrepresentations were an immediate cause of the injury-causing

16 conduct, the plaintiff is not required to allege that those

17 misrepresentations were the sole or even the decisive cause of

18 the injury-producing conduct.").  Rather, a plaintiff need only

19 allege that defendant's misrepresentations were a "substantial

20 factor" in influencing her decision to purchase the product.

21 Engalla v. Permanente Med. Grp., 15 Cal. 4th 951, 977 (1997).

22

23        [3]   Defendant's contention that plaintiffs must identify
   the particular aspect of the labeling they relied on is
24 particularly inappropriate where, as plaintiffs allege, the
   labeling of the TRESemmé Naturals products was part of a larger
25 advertising campaign that emphasized the products' "natural"
   qualities.  See In re Tobacco II Cases, 46 Cal. 4th at 328
26 ("[W]here, as here, a plaintiff alleges exposure to a long-term
   advertising campaign, the plaintiff is not required to plead with
27 an unrealistic degree of specificity that the plaintiff relied on
   particular advertisements or statements.").

28

1    Plaintiffs have alleged that defendant's representations were a

2    substantial factor in their decision to purchase the product--so

3    much so, in fact, that plaintiffs paid a significant premium over

4    comparable products not marketed as natural.  (See FAC ¶ 17

5    (comparing cost of TRESemmé Naturals products and comparable

6    TRESemmé products on Drugstore.com).)

7           Even if defendant were correct that plaintiffs have not

8    alleged that they relied upon any particular representation or

9    aspect of the product label, plaintiffs have sufficiently alleged

10   that the product labels contained material misrepresentations.

11   Plaintiffs allege that consumers are "increasingly concerned"

12   about the effects of synthetic chemicals, pay a premium for

13   natural products, and that, as a result, the nationwide market

14   for "natural" products exceeds $100 billion dollars.  (FAC ¶ 9.)

15   In light of these concerns, plaintiffs allege that the

16   representation that the products contain only natural ingredients

17   is "material to a reasonable consumer."  (Id. ¶ 14.)  Those

18   allegations are sufficient to invoke a presumption of reliance.[4]

19   See In re Tobacco II Cases, 46 Cal. 4th at 326; see also, e.g.,

20   Bruton v. Gerber Prods. Co., 961 F. Supp. 2d 1062, 1089 (N.D.

21   Cal. 2013) (holding that plaintiff sufficiently alleged that

22

23          [4]    The presumption of reliance is not merely an
     evidentiary presumption.  In fact, courts routinely apply the
24   presumption of reliance at the pleading stage to determine
     whether a plaintiff has standing under the UCL.  See, e.g.,
25   Chapman, 220 Cal. App. 4th at 229; Plascencia v. Lending 1st
     Mortg., 259 F.R.D. 437, 448-49 (N.D. Cal. 2009) ("Just as the
26   materiality of the interest rate and negative amortization terms
     permits a presumption of reliance in connection with the fraud
27   claim, it also permits a presumption of reliance for the purposes
     of Proposition 64 standing.").
28

1  defendant's health claims and nutrient content claims were

2  material based on allegations about consumer behavior and

3  consumers' understanding of product labels).

4         Accordingly, because plaintiffs have sufficiently

5  alleged economic injury and reliance, they have standing to bring

6  this action under California's consumer protection statutes, see

7  Kwikset, 51 Cal. 4th at 322, as well as Article III, see Clapper,

8  133 S.Ct. at 1147.

9       B.   Radiant Volume Conditioner Claims

10        In the Ninth Circuit, there is "no controlling

11 authority" on whether a plaintiff in a class action has standing

12 to assert claims based on products he did not purchase.  Miller

13 v. Ghirardelli Chocolate Co., 912 F. Supp. 2d 861, 868 (N.D. Cal.

14 2012).  However, "[t]he majority of the courts that have

15 carefully analyzed the question hold that a plaintiff may have

16 standing to assert claims for unnamed class members based on

17 products he or she did not purchase so long as the products and

18 alleged misrepresentations are substantially similar."  Id. at

19 869; accord Wilson v. Frito-Lay N. Am., Inc., 961 F. Supp. 2d

20 1134, 1140-41 (N.D. Cal. 2013).  "Factors that . . . courts have

21 considered include whether the challenged products are of the

22 same kind, whether they are comprised of largely the same

23 ingredients, and whether each of the challenged products bears

24 the same alleged mislabeling."  Id. at 1141.

25        Although plaintiffs allege that they purchased five

26 other products from the TRESemmé Naturals line, neither plaintiff

27 alleges that she purchased defendant's Radiant Volume

28 conditioner.  (See FAC ¶¶ 6-7.)  However, the packaging of the

1  Radiant Volume conditioner is strikingly similar to the five

2  products that plaintiffs purchased: it contains the same

3  "Naturals" label and prominent green leaf as the other five

4  products and makes the same claim of "silicone free conditioning"

5  as the two conditioners that plaintiffs purchased.  (Id. ¶ 11.)

6  Plaintiffs have therefore alleged that the mislabeling of the

7  Radiant Volume conditioner misled other purchasers in the same

8  way that the mislabeling of defendant's other five products

9  misled them.  See, e.g., Chavez v. Blue Sky Natural Beverage Co.,

10 268 F.R.D. 365, 378 (N.D. Cal. 2010) (holding that, "[a]lthough

11 plaintiff did not purchase each type of beverage carrying the

12 misleading label, his claims are reasonably coextensive with

13 those of absent class members").

14      Accordingly, because the Radiant Volume conditioner is

15 "substantially similar" to products that plaintiffs purchased,

16 Miller, 912 F. Supp. 2d at 869, plaintiffs have standing to bring

17 claims on behalf of putative class members alleging that the

18 Radiant Volume conditioner was mislabeled.

19      C.   Claims Based On Other States' Consumer Protection Laws

20      In a class action, "named plaintiffs who represent a

21 class must allege and show that they personally have been

22 injured, not that injury has been suffered by other, unidentified

23 members of the class to which they belong and which they purport

24 to represent." Lewis v. Casey, 518 U.S. 343, 347 (1996).  "At

25 least one named plaintiff must have standing with respect to each

26 claim the class representatives seek to bring." In re Ditropan

27 XL Antitrust Litig., 529 F. Supp. 2d 1098, 1107 (N.D. Cal. 2007).

28 Therefore, when "a representative plaintiff is lacking for a

10

particular state, all claims based on that state's laws are subject to dismissal."  In re Flash Memory Antitrust Litig., 643 F. Supp. 2d 1133, 1164 (N.D. Cal. 2009) (citing Ditropan, 529 F. Supp. 2d at 1106-07) (alteration in original).

Here, although Morales only alleges that she purchased TRESemmé Naturals products in California, (see FAC ¶ 6), she asserts claims under the consumer protection laws of twenty-one different states, (see id. ¶ 52).  Likewise, although Cohen only alleges that she purchased TRESemmé Naturals products in Massachusetts, (see FAC ¶ 7), she asserts claims under the consumer protection laws of those states, (see id. ¶ 60). Because neither Morales nor Cohen is a resident of any state other than California or Massachusetts, respectively, and did not purchase defendant's products in any state but her own, plaintiffs do "not have standing to assert a claim under the consumer protection laws of the other states named in the Complaint."  Pardini v. Unilever U.S., Inc., 961 F. Supp. 2d 1048, 1061 (N.D. Cal. 2013); see also, e.g., In re Apple & AT&TM Antitrust Litig., 596 F. Supp. 2d 1288, 1309 (N.D. Cal. 2008) ("Plaintiffs lack standing to bring consumer protection claims in the forty states where no named Plaintiff resides.").

Plaintiffs contend that the court should resolve this question at class certification, rather than on a motion to dismiss.  However, the Ninth Circuit has emphasized that, with narrow exceptions not relevant here, a district court should "addresss[] the issue of standing before it addresse[s] the issue

11

1   of class certification."[5]   Easter v. Am. W. Fin., 381 F.3d 948,

2   962 (9th Cir. 2004); see also Lee v. Oregon, 107 F.3d 1382, 1390

3   (9th Cir. 1997) ("Standing is a jurisdictional element that must

4   be satisfied prior to class certification." (citations and

5   internal quotation marks omitted)).   Because plaintiffs' lack of

6   standing is "plain enough from the pleadings," it is an

7   appropriate basis for dismissal even if it overlaps with issues

8   typically raised at class certification.   Gen. Tel. Co. of Sw. v.

9   Falcon, 457 U.S. 147, 160 (1982).

10          Plaintiffs also argue that even if this question is

11   appropriate for resolution on a motion to dismiss, plaintiffs

12   have standing to bring claims on behalf of purchasers in other

13   states so long as the consumer protection laws of those states

14   are materially identical to the CLRA or the MCPA.   This argument

15   conflates the inquiry required under Rule 23[6] with the inquiry

16          [5]   Plaintiffs rely principally on In re Hydroxycut
17   Marketing & Sales Practices Litig., 801 F. Supp. 2d 993, 1004-05
     (S.D. Cal. 2011), as well as several district court decisions
18   from the Second and Third Circuits, in support of the proposition
     that the court should determine plaintiffs' standing to bring
19   class-wide claims at class certification rather than on a motion
     to dismiss.   Hydroxycut's suggestion that courts should defer
20   questions of standing for class certification is inconsistent
     with controlling Ninth Circuit precedent.   See Easter, 381 F.3d
21   at 962.   That suggestion is also at odds with Hydroxycut's
     observation that "the issue of individual standing is separate
22   and distinct from the inquiry of whether named plaintiffs can
     meet the requirements to certify a class under Rule 23."  801 F.
23   Supp. 2d at 1005.

24
            [6]   Federal Rule of Civil Procedure 23 describes the
25   requirements for class certification.   See Fed. R. Civ. P. 23.
     "To be certified, the putative class and sub-classes must meet
26   the four threshold requirements of Federal Rule of Civil
     Procedure 23(a): numerosity, commonality, typicality, and
27   adequacy of representation. Moreover, the proposed class must
28   satisfy the requirements of Rule 23(b), which defines three

1    into whether Morales has standing to assert those claims in the

2    first instance.  See In re Genentech, Inc. Sec. Litig., Civ. No.

3    88-4038 DLJ, 1990 WL 120641, at *6 n.4 (N.D. Cal. June 6, 1990)

4    ("The requirements for individual standing represent a threshold

5    inquiry that must be analyzed separate and apart from Rule 23.

6    If the named plaintiffs for the proposed . . . class in this

7    action do not have standing, the necessary consequence is

8    dismissal . . . of the claim, not denial of class certification."

9         The cases that plaintiffs cite in support of this

10   argument do not even discuss standing; rather, those cases

11   address whether differences in state law undermine commonality,

12   see, e.g., In re Conseco Life Ins. Co. LifeTrend Ins. Sales &

13   Marketing Litig., 270 F.R.D. 521, 529 (N.D. Cal. 2010), or

14   predominance, see, e.g., Hanlon v. Chrysler Corp., 150 F.3d 1011,

15   1022-23 (9th Cir. 1998).  Plaintiffs have not cited, and the

16   court cannot identify, any case holding that a plaintiff may

17   assert class-wide claims that no named plaintiff has standing to

18   bring.  By contrast, numerous cases make clear that a plaintiff

19   may not do so.  See, e.g., Ditropan, 529 F. Supp. 2d at 1107.

20        Accordingly, because neither plaintiff has standing to

21   sue under the laws of any state but her own, the court must grant

22   defendant's motion to dismiss plaintiffs' claims on behalf of the

23   Class to the extent they arise under the laws of states other

24   than California and Massachusetts.

25   III. Motion to Dismiss

26        On a motion to dismiss under Rule 12(b)(6), the court

27   _____

28   different types of classes."  Leyva v. Medline Indus. Inc., 716
     F.3d 510, 512 (9th Cir. 2013) (citations omitted).

                                   13

must accept the allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff.  Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by Davis v. Scherer, 468 U.S. 183 (1984); Cruz v. Beto, 405 U.S. 319, 322 (1972).  To survive a motion to dismiss, a plaintiff must plead "only enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  This "plausibility standard," however, "asks for more than a sheer possibility that a defendant has acted unlawfully," and where a complaint pleads facts that are "merely consistent with a defendant's liability," it "stops short of the line between possibility and plausibility."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 557).

A.   Reasonable Consumer Test

California's UCL prohibits "any unlawful, unfair, or fraudulent business act or practice."  Cal. Bus. & Prof. Code § 17200; see Cel-Tech Comm'ns, Inc. v. L.A. Cellular Tel. Co., 20 Cal. 4th 163, 180 (1999) (describing application of UCL). California's CRLA prohibits "unfair methods of competition and unfair or deceptive acts or practices."  Cal. Civ. Code § 1770; see Meyer, 45 Cal. 4th at 639 (describing application of CLRA). "The standard for California's UCL, FAL, and CLRA is the 'reasonable consumer' test, which requires a plaintiff to show that members of the public are likely to be deceived by the business practice or advertising at issue."  Brazil, 935 F. Supp. 2d at 962-63 (N.D. Cal. 2013) (citing Williams v. Gerber Prods., 552 F.3d 934, 938 (9th Cir. 2008)).

Massachusetts's MCPA prohibits "unfair method[s] of

competition" or "unfair or deceptive acts or practices" when used "in the conduct of any trade or commerce."  Mass. Gen. Laws. ch. 93A § 11; see Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55-56 (1st Cir. 1998) (analyzing case law defining "unfair or deceptive acts or practices").  The MCPA likewise incorporates a "reasonable consumer" test.  See Aspinall v. Philip Morris Cos., 442 Mass. 381, 397 (2004) (holding that an advertisement is deceptive only "when it has the capacity . . . to entice a reasonable consumer to purchase the product").

As a general rule, whether a business practice is likely to deceive a reasonable consumer is a "question of fact" that cannot be resolved on a motion to dismiss.  Williams, 552 F.3d at 938; see also, e.g., Von Koenig v. Snapple Beverage Corp., 713 F. Supp. 2d 1066, 1079 (E.D. Cal. 2010) (Damrell, J.); Linear Tech. Corp. v. Applied Materials, Inc., 152 Cal. App. 4th 115, 134-35 (6th Dist. 2007) (noting that this inquiry is a "question of fact which requires consideration and weighing of evidence from both sides").  Dismissal is appropriate only in the "rare situation" where "the advertisement itself made it impossible for the plaintiff to prove that a reasonable consumer was likely to be deceived."  Williams, 552 F.3d at 939.

Here, plaintiffs allege that several aspects of the product labels are misleading: the use of the term "Naturals," the green leaf that is prominently displayed on the bottle, and the claims that the product is "silicone free" or "lower in sulfates."  (FAC ¶ 11.)  Plaintiffs allege that a reasonable consumer would take these representations to indicate that defendant's products are "natural" and free of "synthetic

15

ingredients."  (Id. ¶ 2.)  Defendant argues that reasonable
consumers would not be misled by those product labels because
they understand that cosmetics are not natural--that "there are
neither shampoo trees nor conditioner streams."  (Def.'s Mem. at
12:2-3 (citing Balser v. Hain Celestial Grp., Inc., Civ. No. 13-
5604 R, 2013 WL 6673617, at *2 (C.D. Cal. Dec. 18, 2013).)  In
support of this contention, defendant points to numerous FDA
regulations referring to the "manufacture" of cosmetic products
and argues that those regulations foreclose the possibility that
cosmetics can be "natural."  (Id. at 11-12 (citing 21 C.F.R. §
700.3(b)-(k)).)

    Despite defendant's contention that a cosmetic product
cannot be natural, numerous courts have denied motions to dismiss
claims alleging that cosmetic products were falsely labeled as
"natural".  See, e.g., Brown v. Hain Celestial Grp., 913 F. Supp.
2d 881, 898 (N.D. Cal. 2012) (denying motion to dismiss when
defendant claimed that various cosmetic products were "pure,
natural, and organic"); Fagan v. Neutrogena Corp., Civ. No. 5:13-
1316 SVV OP, 2014 WL 92255, at *2 (C.D. Cal. Jan. 8, 2014)
(denying motion to dismiss when defendant claimed that its
sunscreen was "100% naturally sourced").  Even if defendant were
correct that a cosmetic product cannot be "natural," it does not
follow that labeling cosmetic products as natural is per se not
misleading.  Defendant's argument leads to the opposite
conclusion--namely, that labeling cosmetic products manufactured
from artificial ingredients as "natural" is misleading.

    Defendant then argues that the term "natural" is not
misleading because that term is "vague and ambiguous" and "lacks

16

an objective meaning."  (Def.'s Mem. at 11:1-8 (citing Balser, 2013 WL 6673617, at *1).)  Although the FDA has not defined the term "natural" in the context of cosmetics labeling, see Astiana v. Hain Celestial Grp., 905 F. Supp. 2d 1013, 1016 (N.D. Cal. 2012), plaintiffs allege that their understanding of the term "natural" reflects the dictionary definition of the term--that is, that the products' ingredients are "existing in or produced by nature" and are "not artificial."  (FAC ¶ 2 n.1 (citing Merriam-Webster Dictionary, www.merriam-webster.com/dictionary).)

Even if plaintiffs had not proffered an "objective meaning" of the term "natural," they need not do so; the relevant question is the meaning that consumers would attach to the term. As many courts have observed, this is generally not a question that can be resolved on a motion to dismiss.  See, e.g., Brown, 913 F. Supp. 2d at 899; Vicuna v. Alexia Foods, Inc., Civ. No. 11-6119 PJH, 2012 WL 1497507, at *2 (N.D. Cal. Apr. 27, 2012) (holding that "the question whether a reasonable consumer would likely be deceived by the designation 'All Natural' is a factual dispute [that] cannot be resolved" on a motion to dismiss); Parker v. J.M. Smucker Co., Civ. No. 13-690 SC, 2013 WL 4516156, at *6 (N.D. Cal. Aug. 23, 2013) (holding that the plaintiff's allegations that a reasonable consumer would believe that a product labeled as "all natural" contained no bioengineered or chemically altered ingredients "cannot be resolved as a matter of law").  The court therefore cannot conclude at this stage of the litigation that a reasonable consumer would not be misled by the

term "natural" or "Naturals."[7]

Finally, defendant argues that its labels were not misleading because the label on the back of each bottle accurately lists the ingredients contained in the product. (Def.'s Mem. at 8-9.)  The Ninth Circuit has explicitly foreclosed the use of this argument:

> We do not think that the FDA requires an ingredient list so that manufacturers can mislead consumers and then rely on the ingredient list to correct those misinterpretations and provide a shield for liability for the deception.  Instead, reasonable consumers expect that the ingredient list contains more detailed information about the product that confirms other representations on the packaging.

Williams, 552 F.3d at 939-40; see also Lam v. Gen. Mills, Inc., 859 F. Supp. 2d 1097, 1105 (N.D. Cal. 2012) (citing Williams and holding that the "ingredients list cannot be used to correct the message that reasonable consumers may take from the rest of the

---

[7]     Defendant argues that even if the term "natural" may be misleading, the term "TRESemmé Naturals" is not.  This argument is meritless.  The term "Naturals" is a derivative of "natural" and plaintiffs allege that it connotes the same meaning--namely, that the products are free of synthetic ingredients.  (FAC ¶ 2.) Courts have specifically held that a defendant cannot insulate itself from liability for a misleading term by adding an "s" to the end of it.  See, e.g., Brown, 913 F. Supp. 2d at 898 (denying motion to dismiss a claim alleging that the "Avalon Organics" brand name was misleading).
    To the extent that defendant claims the term "Naturals" cannot be misleading because it is part of a brand name, that argument is also incorrect.  See, e.g., id. (holding that the "Avalon Organics"  brand name could mislead reasonable consumers because it "could reasonably be interpreted to mean that the product is being sold as organic or that it otherwise meets a compositional standard for the term 'organic'"); Bronco Wine Co. v. Jolly, 129 Cal. App. 4th 988, 1006 (3d Dist. 2005) (holding that geographic brand names containing the term "Napa" may be "inherently misleading" to the extent they are "suggestive of a false or misleading source of the grapes used in making the wine").

1  packaging").

2       To the extent that the cases defendant cites suggest

3  otherwise, those cases are either inconsistent with Williams or

4  are distinguishable because the ingredient list merely confirmed

5  the representation on the front of the package.  See, e.g.,

6  Viggiano v. Hansen Natural Corp., 944 F. Supp. 2d 877, 892 (C.D.

7  Cal. 2013) (holding that soda labels advertising "all natural

8  flavors" were not misleading where the "natural fruit from which

9  the characterizing flavor is derived is listed on the statement

10 of ingredients").  Here, by contrast, plaintiffs allege that

11 defendant's product labels and use of the term "Naturals" were

12 misleading because the products contain chemicals and other

13 synthetic ingredients.  Even if defendant disclosed those

14 ingredients on the back label, it is settled law that it may not

15 "rely on the ingredient list" to correct misleading labels.

16 Williams, 552 F.3d at 939.  Accordingly, because plaintiffs have

17 adequately alleged that defendant's labels were likely to mislead

18 a reasonable consumer, see id. at 938, the court must deny

19 defendant's motion to dismiss plaintiffs' UCL, CLRA, and MCPA

20 claims.

21      B.   Rule 9(b)

22       Although none of the consumer protection statutes at

23 issue in this action require a showing of fraud, a plaintiff

24 bringing a claim under these statutes must satisfy Federal Rule

25 of Civil Procedure 9(b) if her claim alleges a course of

26 fraudulent conduct.[8]  Kearns v. Ford Motor Co., 567 F.3d 1120,

27 _____

28       [8]  The Ninth Circuit has emphasized that Rule 9(b) applies
   to state-law claims brought in federal court.  Vess, 317 F.3d at

1  1125 (9th Cir. 2009); Vess v. Ciba-Geigy Corp. USA, 317 F.3d

2  1097, 1103-04 (9th Cir. 2003).  Rule 9(b) requires a plaintiff

3  whose claim "sounds in fraud" to "state with particularity the

4  circumstances constituting fraud or mistake."  Fed. R. Civ. P.

5  9(b).  Under Rule 9(b), "[a]verments of fraud must be accompanied

6  by the 'who, what, where, when, and how' of the misconduct

7  charged."  Vess, 317 F.3d at 1106 (quoting Cooper v. Pickett, 137

8  F.3d 616, 627 (9th Cir. 1997)).  In addition to identifying the

9  particulars of the alleged fraud, Rule 9(b) requires that a

10  plaintiff "must 'set forth what is false or misleading about a

11  statement, and why it is false.'"  Rubke v. Capitol Bancorp Ltd.,

12  551 F.3d 1156, 1161 (9th Cir. 2009) (quoting Yourish v. Cal.

13  Amplifier, 191 F.3d 983, 993 (9th Cir. 1999)).

14        "In a deceptive advertising case, Rule 9(b) requires

15  that the plaintiff(s) identify specific advertisements and

16  promotional materials; allege when the plaintiff(s) were exposed

17  to the materials; and explain how such materials were false or

18  misleading."  Janney v. Mills, 944 F. Supp. 2d 806, 818 (N.D.

19  Cal. 2013).  Here, plaintiffs provide a copy of each of the

20  allegedly misleading product labels and identify several features

21  that they contend are misleading: the term "naturals," the use of

22  a green leaf, and the claim that the product is "silicone free"

23  or contains "lower sulfates."  (FAC ¶ 11.)  Plaintiffs also

24  identify the locations of the stores where they purchased

25  defendant's products after viewing the product labels and the

26  ─────────────────────────────────────────────────

27  1102.  Rule 9(b) specifically applies to claims brought under the
    UCL and CLRA, see Kearns, 567 F.3d at 1125, and the MCPA, see
    First Choice Armor & Equip. Co. v. Toyobo Am., Inc., 717 F. Supp.

28  2d 156, 163 (D. Mass. 2010).

1    dates on which they made those purchases.  (Id. ¶¶ 6-7.) Finally,

2    plaintiffs allege that the product labels are misleading because

3    each product contains three to twelve artificial and unnatural

4    ingredients, all of which are identified in the Complaint.  (Id.

5    ¶¶ 2, 16.)

6         District courts in California have found that similar

7    allegations are sufficient to satisfy Rule 9(b).  For instance,

8    one court held that plaintiffs who provided labels from cooking

9    oils marketed as "100% natural," that they viewed those labels

10   throughout the class period, and that the labels were false

11   because the oils were made from genetically modified crops

12   satisfied Rule 9(b), even though plaintiffs failed to specify the

13   specific dates on which they viewed the product labels.  In re

14   ConAgra Foods Inc., 908 F. Supp. 2d 1090, 1100-01 (C.D. Cal.

15   2010).  Another judge in this district held that a plaintiff who

16   submitted copies of Snapple labels containing the term "all

17   natural" and alleged that the labels were false because Snapple

18   contained high-fructose corn syrup satisfied Rule 9(b).  Von

19   Koenig, 713 F. Supp. 2d at 1077.  Plaintiff's allegations are at

20   least as detailed as the allegations in ConAgra and Von Koenig

21   and are therefore sufficient to satisfy Rule 9(b).  See Janney,

22   944 F. Supp. 2d at 818.

23        Defendant contends that even if plaintiffs have

24   described the alleged misrepresentations with adequate

25   specificity, they have not satisfied Rule 9(b) because they have

26   not adequately alleged reliance.  As a preliminary matter, it is

27   not clear whether allegations of reliance are subject to Rule

28   9(b)'s heightened pleading requirement.  Compare Andrews Farms v.

1   _Calcot, Ltd._, 527 F. Supp. 2d 1239, 1252 (E.D. Cal. 2007)

2   (O'Neill, J.) (holding that Rule 9(b) does not "require[] more

3   particular pleading for the element of reliance"), and _Anthony v._

4   _Yahoo Inc._, 421 F. Supp. 2d 1257, 1264 (N.D. Cal. 2006) (holding

5   that the "heightened standards" of Rule 9(b) do not apply to

6   allegations of reliance), _with_ _Kane v. Chobani, Inc._, --- F.

7   Supp. 2d ----, Civ. No. 12-2425 LHK, 2014 WL 657300, at *10 (N.D.

8   Cal. Feb. 20, 2014) (holding that the plaintiffs' allegations of

9   reliance "fail[] to meet the heightened pleading requirement

10  under Rule 9(b)"), and _In re Countrywide Fin. Corp. Sec. Litig._,

11  588 F. Supp. 2d 1132, 1198 (C.D. Cal. 2008) (holding that "[t]he

12  reliance element is subject to the pleading requirements of Rule

13  9(b) because it is one of the 'circumstances constituting

14  fraud'").

15        The court need not resolve this question, however,

16  because plaintiffs have adequately pled reliance even under Rule

17  9(b).  Plaintiffs allege that they understood the product labels

18  to mean that the products were free of artificial or unnatural

19  ingredients and that they paid a premium for those products as a

20  result.  Those allegations are sufficiently particular to satisfy

21  Rule 9(b).  _See, e.g._, _ConAgra_, 908 F. Supp. 2d at 1100-1101

22  (holding that the plaintiffs satisfied Rule 9(b) when they

23  "alleged that the phrase '100% natural' meant that Wesson Oil was

24  not made from genetically modified organisms, and that they

25  purchased the product based on this understanding"); _In re Toyota_

26  _Motor Corp. Unintended Acceleration Marketing, Sales Practices, &_

27  _Prods. Liability Litig._, 754 F. Supp. 2d 1145, 1172 n.18 (C.D.

28  Cal. 2010) ("Allegations of representations from product labels

1   and statements that, had consumers not been deceived by the

2   labels, they would not have purchased the product, are sufficient

3   to plead under Rule 9(b).”); <u>Werdebaugh v. Blue Diamond Growers</u>,

4   Civ. No. 12-2724 LHK, 2013 WL 5487236, at *14 (N.D. Cal. Oct. 2,

5   2013) (holding that a plaintiff sufficiently alleges reliance

6   under Rule 9(b) when she states “why a reasonable consumer would

7   be misled” by allegedly misleading food labels).

8        Accordingly, because plaintiffs have alleged the

9   “circumstances constituting fraud” with sufficient particularity,

10  <u>see</u> Fed. R. Civ. P. 9(b), the court must deny defendant’s motion

11  to dismiss on this basis.

12       IT IS THEREFORE ORDERED that defendant’s motion to

13  dismiss be, and the same hereby is, GRANTED with respect to

14  plaintiffs’ claims on behalf of similarly situated purchasers to

15  the extent that they arise under the laws of states other than

16  California and Massachusetts, and DENIED in all other respects.

17       Plaintiffs have twenty days from the day this Order is

18  signed to file an amended Complaint, if they can do so consistent

19  with this Order.

20  Dated:  April 9, 2014

21

22  WILLIAM B. SHUBB

23  UNITED STATES DISTRICT JUDGE

24

25

26

27

28