Alan R. Plutzik (State Bar No. 77785)
Michael S. Strimling (State Bar No. 96135)
**BRAMSON, PLUTZIK, MAHLER
& BIRKHAEUSER LLP**
2125 Oak Grove Road
Walnut Creek, CA 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792
aplutzik@bramsonplutzik.com
mstrimling@bramsonplutzik.com

Mark P. Kindall (State Bar No. 138703)
Robert A. Izard *(admitted pro hac vice)*
**IZARD NOBEL LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290
mkindall@izardnobel.com
rizard@izardnobel.com

*Attorneys for Plaintiffs*
[Additional Counsel on Signature Page]

**UNITED STATES DISTRICT COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| ALBA MORALES; LAINIE COHEN; LINDA CLAYMAN; and KENNETH DREW, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> CONOPCO, INC., d/b/a UNILEVER, <br><br> Defendant. | CIV. NO.  2:13-cv-2213 WBS EFB <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Date: July 11, 2016 <br><br> Time: 1:30 p.m. <br><br> Courtroom 5, 14th Floor <br><br> Hon. William B. Shubb |

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

**PLEASE TAKE NOTICE** that on July 11, 2016 at 1:30 p.m., or as soon thereafter as the matter may be heard by the Court, located at 501 I Street, Sacramento, California, 95814, Courtroom 5, 14th Floor, in the courtroom of the Honorable William B. Shubb, Plaintiffs will move pursuant to Fed. R. Civ. P. 23(e) for the Court to: (1) provisionally certify the Class; (2) establish procedures for giving notice to the Class; (3) grant preliminary approval of the parties' Settlement; (4) approve the named Plaintiffs as interim representatives of the provisionally certified class, Izard Nobel LLP ("Izard Nobel") as Interim Class Counsel, and Bramson, Plutzik, Mahler and Birkhaeuser, LLP ("BPM&B") as Interim Liaison counsel for the class; and (5) set a date, time and place for a final approval hearing.

The Motion is made on the grounds that preliminary approval of the proposed Settlement is proper because each requirement of Fed. R. Civ. P. 23(e) has been met, and certification of the proposed Class is proper pursuant to the requirements of Fed. R. Civ. P. 23(a) and 23(b)(3).

The Motion is based on the accompanying Declaration of Mark Kindall ("Kindall Decl.") and the attached Memorandum of Law, the pleadings and papers on file in this case and any other written and oral arguments that may be presented to the Court.

Dated:  May 27, 2016                    Respectfully submitted,


By: /s/ Mark P. Kindall
Mark P. Kindall (State Bar No. 138703)
Robert A. Izard *(*admitted *pro hac vice)*
**IZARD NOBEL LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290
mkindall@izardnobel.com
rizard@izardnobel.com

Alan R. Plutzik (State Bar No. 77785)
**BRAMSON, PLUTZIK, MAHLER
& BIRKHAEUSER LLP**
2125 Oak Grove Road
Walnut Creek, CA 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792
aplutzik@bramsonplutzik.com

Joseph J. DePalma (admitted *pro hac vice*)
Katrina Carroll (admitted *pro hac vice*)
**LITE DEPALMA GREENBERG, LLC**
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
jdepalma@litedepalma.com
kcarroll@litedepalma.com

Nicole A. Veno (admitted *pro hac vice*)
**LAW OFFICE OF NICOLE VENO**
573 Hopemeadow Street
Simsbury, CT 06070
Telephone: (860) 474-4024
Facsimile: (860) 717-3207
nveno@venolaw.com

*Attorneys for Plaintiffs*

## MEMORANDUM OF POINTS AND AUTHORITIES

### TABLE OF CONTENTS

I.      INTRODUCTION ....................................................................................................1

II.     BACKGROUND AND DETAILS OF SETTLEMENT ...........................................1

        A.  Litigation History.........................................................................................1

        B.  The Proposed Settlement ..............................................................................2

III.    THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS
        AND APPROVE THE SETTLEMENT ..................................................................4

        A.  The Court Should Preliminarily Certify the Class .......................................4

              1.   Certification of a Nationwide Class is Appropriate .......................5

              2.   Rule 23(a)'s Requirements are Met ................................................6

                   a.   Numerosity.............................................................................6

                   b.   Commonality..........................................................................8

                   c.   Typicality ...............................................................................9

                   d.   Adequacy of Representation ..................................................9

              3.   Rule 23(b)'s Predominance and Superiority Requirements are
                   Met .................................................................................................11

                   a.   Predominance.......................................................................11

                   b.   Superiority............................................................................11

        B.  The Court Should Appoint Interim Class Representatives and Counsel ..............13

        C.  The Court Should Approve the Notice Plan ...............................................14

        D.  The Court Should Preliminarily Approve the Notice Plan ........................16

              1.   The Settlement was Achieved After Hard-Fought Litigation
                   and Negotiations .............................................................................17

              2.   The Settlement is Well Within the "Range of Possible
                   Approval .........................................................................................18

              3.   The Settlement Treats Class Members Equally ............................19

4.  The Settlement Will Not Provide Excessive Compensation to Counsel ........................................................................................19

5.  The Settlement was Achieved at an Appropriate Stage of the Proceedings ...............................................................................20

6.  Plaintiffs and Plaintiffs' Counsel Support the Settlement ........................20

IV.     CONCLUSION...........................................................................................20

# TABLE OF AUTHORITIES

*Cases*

*Alberto v. GMRI, Inc.,* 252 F.R.D. 652 (E.D. Cal. 2008) ................................13, 20

*Amchem Products, Inc. v. Windsor*, 521 U.S. 591 (1997) .......................................10, 12

*Anderson-Butler v. Charming Charlie, Inc.*, No. 2:14-cv-01921 WBS,
  2015 WL 6703805 (E.D. Cal. Nov. 3, 2015) .........................................................20

*Avilez v. Pinkerton Gov't Services*, 286 F.R.D. 450 (C.D. Cal. 2012) ...........................7

*Ballard v. Equifax Check Servs., Inc.,* 186 F.R.D. 589 (E.D. Cal. 1999) ....................12

*Brown v. Ticor Title Ins.*, 982 F.2d 386 (9th Cir. 1992) ............................................9

*Bruno v. Quten Research Inst., LLC,* 280 F.R.D. 524 (C.D. Cal. 2011) ................11, 12

*Chavez v. Blue Sky Nat. Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010)..................6, 8

*Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848 (N.D. Cal. 2010)..........17-18

*Class Plaintiffs v. City of Seattle*, 955 F.2d 1268 (9th Cir. 1992) ..................................4

*Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294 (E.D. Cal. 2011) ....................7

*Delarosa v. Boiron, Inc.,* 275 F.R.D. 582 (C.D. Cal. 2011) ....................................8, 12

*Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326 (1990) ............................................12

*Donnelly v. EquityExperts.org, LLC,* No. 4:13-cv-10017 TGB,
  2014 WL 4923081 (E.D. Mich. Sept. 26, 2014)....................................................15

*Ebarle v. Lifelock, Inc.*, No. 15-cv-00258 HSG, 2016 WL 234364 (C.D. Cal. Jan. 20, 2016) .......9

*Eisen v. Carlisle & Jacquelin,* 417 U.S. 156 (1974)....................................................14

*Flynn v. Sony Electronics, Inc.,* No. 09-cv-2109, 2015 WL 128039 (S.D. Cal. Jan. 7, 2015) ......15

*Garnett v, ADT, LLC,* No. 2:14-cv-02851 WBS,
  2016 WL 572954 (E.D. Cal. Apr. 19, 2016)..........................................................16

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ...................................................4

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) ....................................8-11

*Hanon v. Dataproducts Corp.*, 976 F.2d 497 (9th Cir. 1992)........................................9

*Hopson v. Hanesbrands, Inc.*, No. 08-08444 EDL,
  2009 WL 928133 (N.D. Cal. Apr. 3, 2009) ...........................................................10

*Hendricks v. StarKist Co.*, No. 13-cv-00729, 2015 WL 4498083 (N.D. Cal. July 23, 2015) ...6, 15

*In re Cathode Ray Tube (Crt) Antitrust Litig.,* No. 3:07-cv-5944,
2016 WL 721680 (N.D. Cal. Jan. 28, 2016) ...............................................................15

*In re Google Referrer Header Privacy Litig.,* No. 10-cv-04809,
2014 WL 1266091 (N.D. Cal. Mar. 26, 2014) ............................................................16

*In re Tableware Antitrust Litig.,*484 F. Supp. 2d 1078 (N.D. Cal. 2007) ......................................17

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 955 F.2d 1268 (9th Cir. 1992) ...........................7

*In re Wells Fargo Home Mortg. Overtime Pay Litig.,*527 F. Supp. 2d 1053 (N.D. Cal. 2007) ....11

*Jaffe v. Morgan Stanley*, No. 06-cv-3902 TEH, 2008 WL 34617 (N.D. Cal. Feb. 7, 2008) .........18

*Jordan v. County of Los Angeles*, 669 F.2d 1311 (9th Cir. 1982) ..................................................7

*Keilholtz v. Lennox Hearth Products*, 268 F.R.D. 330 (N.D. Cal. 2010) .......................................6

*Kirchner v. Shred-It USA, Inc.*, No. 2:14-cv-1437 WBS,
2015 WL 1499115 (E.D. Cal. Mar. 31, 2015) ............................................................8

*Levya v. Medline Indus., Inc.,* 716 F.3d 510 (9th Cir. 2013) ......................................................11

*Lewis v. Starbucks Corp.*, No. 2:07-cv-00490 MCE,
2008 WL 4196690 (E.D. Cal. Sept. 11, 2008) ..........................................................17

*Mazza v. Am. Honda Motor Co.*, 666 F.3d 581 (9th Cir. 2012) ...................................................6

*McCrary v. Elations Company,* No. 13-cv-0242 JGB,
2016 WL 769703 (C.D. Cal. Feb. 25, 2016) ..............................................................17

*Murrillo v. Pac. Gas & Elec. Co.,* 266 F.R.D. 468 (E.D. Cal. 2010) ...........................................11

*Nat'l Rural Tecomms. Coop. v. DIRECTV, Inc.,* 221 F.R.D. 523 (C.D. Cal. 2004).......................4

*Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th (1999) ............................................6

*Omtiveros v. Zamora*, No. 2:08-cv-567 WBS, 2014 WL 3057506 (E.D. Cal. July 7, 2014)....4, 18

*Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580 (C.D. Cal. 2008).............................................6

*Phillips Petroleum v. Shutts*, 472 U.S. 797 (1985) .......................................................................5

*Ravens v. Iftikar.,*174 F.R.D. 651 (N.D. Cal. 1997) ...................................................................14

*Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741 (9th Cir. 2006)....................................7

*Rhodes v. Olson Associates, P.C.,*308 F.R.D. 664 (D. Colo. 2015) ............................................15

*Rodriguez v. Hayes*, 591 F.3d 1105 (9th Cir. 2010) .............................................................8

*Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948 (9th Cir. 2009)..........................................17

*Ruch v. AM Retail Group, Inc.*, No. 14-cv-05352 MEJ,
    2016 WL 1161453 (N.D. Cal. Mar. 24, 2016)........................................................19

*Satchell v. Fed Ex Corp.*, Nos. C03-2659 SI, C03-2878 SI,
    2007 WL 1114010 (N.D. Cal. Apr. 13, 2007) .......................................................17

*Schaffer v. Litton Loan Servicing LP*, No. 05-cv-07673 MMM,
    2012 WL 10274679 (C.D. Cal. Nov. 13, 2012).....................................................18

*Silber v. Mabon,* 18 F.3d 1449 (9th Cir. 1994)..............................................................14, 15

*Spann v. J.C. Penney Corp.,* No. SACV-12-0215 FMO,
    2016 WL 297399 (C.D. Cal. Jan. 25, 2016) .........................................................17

*Staton v. Boeing*, 323 F.3d 938 (9th Cir. 1992) ...............................................................4

*Van Vranken v. Atl. Richfield*, 901 F. Supp. 294 (N.D. Cal. 1995) ...............................12

*Vinole v. Countrywide Home Loans,* 571 F.3d 935 (9th Cir. 2009) .........................11, 12

*Wren v. RGIS Inventory Specialists*, No. C-06-05778 JCS,
    2011 WL 1230836 (N.D. Cal. Apr. 1, 2011) ........................................................19

*Zeisel v. Diamond Foods, Inc.*,
    No. 10-cv-01192 JSW, 2011 WL 2221113 (N.D. Cal. June 7, 2011) ....................10

**Court Rules**

Fed. R. Civ. P. 23(a) ....................................................... ii, 4, 7, 9, 11, 13

Fed. R. Civ. P. 23(b) ....................................................... ii, 4, 6, 8, 11, 13, 14

Fed. R. Civ. P. 23(c) ....................................................... 14-16

Fed. R. Civ. P. 23(e) ....................................................... ii, 4

Fed. R. Civ. P. 23(g) ....................................................... 13-14

**Treatises**

Federal Judicial Center, *Judges' Class Action Notice and Claims Process Checklist
    and Plain Litigation Guide* ...................................................15

MANUAL FOR COMPLEX LITIGATION (THIRD) ................................................4

Albert Conte & Herbert, NEWBERG ON CLASS ACTIONS (4th ed. 2002).........................8

## I.   INTRODUCTION

Plaintiff Alba Morales, Kenneth Drew, Lainie Cohen and Linda Clayman ("Plaintiffs") brought this class action in 2013 to challenge the sale of hair care products (the "Products") that Defendant Conopco, Inc., d/b/a Unilever ("Defendant") labeled "TRESemmé Naturals" even though they contain numerous synthetic ingredients.   Plaintiffs sought injunctive relief and damages for purchasers of the Products.   In December of last year, in response to this litigation, Defendant discontinued the sale of the Products.   In February of this year, the Parties reached agreement to settle the damages claims on behalf of all purchasers of the Products in the United States for $3.25 million.   As set forth more fully below, this is a very good result for the Class and merits preliminary – and ultimately final – approval.

Plaintiffs ask the Court to preliminarily certify the Class for Settlement purposes only, and to preliminarily approve the Settlement so that the Class as a whole may receive notice of the Settlement and express their views on its merits.   Plaintiffs and their counsel believe that the Settlement is the best way to resolve all claims concerning Defendant's nationwide labeling and sale of the Products as "naturals."

## II.   BACKGROUND FACTS AND DETAILS OF SETTLEMENT

### A.   Litigation History

Defendant manufactured and sold the Products across the United States.   On October 22, 2013, Plaintiffs filed their Complaint alleging violations of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq. and Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.,* Massachusetts' Consumer Protection Act, Mass. Gen. Laws Ann. ch. 93A, and various other state consumer protection laws.   *See* ECF No. 1.   On December 3, 2013, Plaintiffs filed their First Amended Complaint, alleging the same causes of action with minor changes to the various other state consumer protection laws.   *See* ECF No. 8.   Defendant moved to dismiss on January 14, 2014.   *See* ECF No. 14.

On April 9, 2014, the Court granted in part and denied in part Defendant's Motion to Dismiss, upholding Plaintiffs' claims under the laws of California and Massachusetts, and dismissing

Plaintiffs' claims under the laws of states for which there was no representative named plaintiff.  *See* ECF No. 27.  On April 30, 2014, Plaintiffs filed their Second Amended Complaint, which added Linda Clayman and Kenneth Drew as Plaintiffs and added claims under the Florida Deceptive and Unfair Trade Practices Act, F.S.A. § 501.201, *et seq.* and the New York General Business Law § 349.  *See* ECF No. 31.   Defendant filed its answer to Plaintiffs' Second Amended Complaint on May 29, 2014.  *See* ECF No. 37.

From June 2014 until May 2015, the Parties engaged in extensive discovery.  This included Plaintiffs' counsel's review and analysis of nearly a quarter million pages of documents produced by the Defendant, the depositions of several key witnesses concerning Defendant's marketing and the Products' ingredients, and Defendant's depositions of Mr. Drew, Ms. Cohen and Ms. Morales.  *See* Kindall Decl. at ¶¶ 6-7.  Plaintiffs also retained an expert to develop their damages model.  *Id*. at ¶ 9.

On June 15, 2015, the Parties participated in a mediation before Jonathan Marks, a nationally renowned and respected mediator based in Bethesda, Maryland.  The Parties were not able to reach an agreement during the first mediation session or during follow-up discussions, and thereafter continued to litigate the case.  The Parties recommenced settlement discussions in January of 2016 with Mr. Marks again serving as a mediator.  After a month of back-and-forth proposals and counter-proposals, Mr. Marks made a mediator's proposal: a $3.25 million settlement to the Class.  Both sides accepted Mr. Marks' recommendation on February 5, 2016.  *Id*. at ¶¶ 9-11.

## B.    The Proposed Settlement

For purposes of the Settlement only, Defendant has stipulated to certification of a nationwide class.[1]  *See* Settlement Agreement ("SA"), ¶¶ 1(j) and 44, attached to the Kindall Declaration as Exhibit 1.  The Settlement defines the Class as:

> All individuals in the United States who purchased the following TRESemmé Naturals products: (a) Nourishing Moisture Shampoo; (b) Nourishing Moisture Conditioner; (c) Radiant Volume Shampoo; (d) Radiant Volume Conditioner (e) Vibrantly Smooth Shampoo; and (f) Vibrantly Smooth Conditioner (collectively, the "Products"). Specifically excluded from the Class are (1) Defendant, (2) the officers, directors, or employees of Defendant

---

[1] If the Settlement does not receive the Court's preliminary and final approval, this stipulation is voided and the Parties will continue to litigate the case.  *See* SA, ¶ 44.

1

2

3
and their immediate family members, (3) any entity in which Defendant has a controlling interest, (4) any affiliate, legal representative, heir, or assign of Defendant, (5) all federal court judges who have presided over this Action and their immediate family members (6) all persons who submit a valid request for exclusion from the Class and (7) those who purchased the Products for the purpose of resale.

4

5
*Id.*, ¶1(j).

6
Under the Settlement, Defendant will contribute $3.25 million to a "Settlement Fund" which

7
will be used to settle the Class claims.  After payment of notice and administration costs and

8
attorneys' fees and expenses in an amount to be determined by the Court (both of which will be paid

9
out of the Settlement Fund), this common Settlement Fund will be used to compensate Class

10
Members for each of the Products they purchased during the Class Period.  Class Members who

11
properly and timely submit the Claim Form may recover for purchases of up to ten (10) bottles of the

12
Products per household without the need to submit additional proof of purchase, and for more than

13
ten bottles if they submit adequate proofs of purchase. In exchange for these benefits, Class

14
Members will release Defendant from any and all claims "arising out of related to the product

15
representations complained of in this Action."  *Id.*, ¶ 16.  Any amounts remaining in the Settlement

16
Fund after all fees, expenses and claims have been paid will be distributed to an appropriate non-

17
profit or civic entity for use in a manner that the Court determines to be appropriate in light of the

18
nature of the case.  *Id.*, ¶ 25(f) and 43.  No funds will be returned to Defendant.

19
Notice to the Class of the Settlement will be provided by several methods.  First, a notice will

20
be published nationwide in English and Spanish that provides potential Class Members with basic

21
information about the Settlement and explains how to object to or opt out of the Settlement, how to

22
submit a claim and where to obtain additional information.  There will also be a Settlement Website

23
that contains all information about the Settlement and Izard Nobel LLP will provide a link to the

24
Settlement Website on its own website.  In addition, the Claim Administrator will conduct an

25
internet-based ad campaign that will alert potential Class Members to the existence of the Settlement

26
and direct them to the Settlement Website.  *Id.*, ¶¶ 46-48.  Plaintiffs believe these methods are the

27
most effective means of reaching the proposed Class Members.

28

The Settlement also provides that Plaintiffs' counsel, upon being appointed by this Court as counsel for the Class, may submit an application to the Court for an award of attorneys' fees, not to exceed thirty percent (30%) of the Settlement Fund, as well as reimbursement of costs and expenses incurred in litigating the case. *Id.*, ¶ 56. Additionally, Defendant has agreed in the Settlement to not oppose application of an award to compensate each of the Plaintiffs for their service as a Class Representative in an amount not to exceed $15,000 collectively, to be determined by the Court. Any amount paid to the Plaintiffs for their service will be paid by the Defendant directly and will be not be paid from the $3.25 million Settlement Fund. *Id*., ¶ 60.

## III. THE COURT SHOULD PRELIMINARILY CERTIFY THE CLASS AND APPROVE THE SETTLEMENT

Fed. R. Civ. P. 23(e) provides that "[t]he claims, issues, or defense of a certified class may be settled . . . only with the Court's approval." Fed. R. Civ. P. 23(e). Approval under 23(e) involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to Class Members, whether final approval is warranted. *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 525 (C.D. Cal. 2004) (citing MANUAL FOR COMPLEX LITIG., THIRD, § 30.41 (1995)).

Strong judicial policy favors settlement of class actions. *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992). Where "the parties reach a settlement agreement prior to class certification, courts must peruse the proposed compromise to ratify both (1) the propriety of the certification and (2) the fairness of the settlement." *Staton v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003). As discussed in detail below, the Court should preliminarily certify the Class and approve the Settlement in accordance with the Ninth Circuit's policy.

### A. The Court Should Preliminarily Certify the Class

A class action will only be certified if it meets the four requirements in Rule 23(a) and also fits within one of the three subdivisions in Rule 23(b). *See Omtiveros v. Zamora*, Case No. 2:08-CV-567 WBS, 2014 WL 3057506, at *4 (E.D. Cal. July 7, 2014) (Shubb, J.); Fed. R. Civ. P. 23(a)-(b). While a court has discretion in determining if the moving party has satisfied each Rule 23

requirements, the court must conduct a rigorous inquiry before certifying the class. *See Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 161 (1982).

### 1.     Certification of a Nationwide Class Is Appropriate

The Settlement proposes the certification of a nationwide Class and the application of California law to that Class. *See SA*, ¶ 44. Both are permissible under the Supreme Court's decision in *Phillips Petroleum v. Shutts*, 472 U.S. 797 (1985) ("*Shutts*").

In *Shutts*, the Supreme Court addressed whether a Kansas state court had the power to certify a nationwide class of plaintiffs. The majority of the Class Members were citizens of other states who had no contact with Kansas relative to the claims asserted in the case. The defendant opposed a nationwide class on due process grounds, claiming the absent plaintiffs did not have "minimum contacts" with Kansas and had not affirmatively consented to the Kansas court's jurisdiction. The Supreme Court rejected the defendant's due process argument. It held that for an absent class member's due process to be satisfied:

> [t]he plaintiff must receive notice plus an opportunity to be heard and participate in the litigation, whether in person or through counsel. The notice must be the best practicable, "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." . . . The notice should describe the action and the plaintiffs' rights in it. Additionally, we hold that due process requires at a minimum that an absent plaintiff be provided with an opportunity to remove himself from the class by executing and returning an "opt out" or "request for exclusion" form to the court.

*Id*. at 812.

Here, Notice of the Settlement will be disseminated to Class Members in multiple ways and is "reasonably calculated" to apprise them of this case. *See SA*, ¶¶ 46-48. The Notice will tell Class Members of their rights, including how to "opt out" of the Class or oppose the Settlement. *Id*. The Class Members' due process rights will be satisfied. *See Shutts*, 472 U.S. at 812.

Applying California law to the Class is also consistent with due process. In *Shutts*, the Supreme Court held that for a state's substantive law to be applied, that state "must have a significant contact or aggregation of contacts to the claims asserted by each member of the plaintiff class . . . ." *Shutts*, 472 U.S. at 818.

California has the requisite contacts. *See, e.g.*, *Mazza v. Am. Honda Motor Co.*, 666 F.3d 581, 589 (9th Cir. 2012) (quoting *Wash. Mut. Bank v. Superior Court*, 15 P.3d 1071, 1080 (Cal. 2001). During the Class Period, Defendant manufactured TRESemmé products in California and a substantial portion of the products were sold in California. Kindall Decl. at ¶¶ 20, 21. In the most recent full year for which data are available, 2015, approximately nine percent of Defendant's nationwide sales of the Products were in the San Francisco and Los Angeles markets alone, and more than seventeen percent of Defendant's nationwide sales of the Products were in the California, Oregon and Washington markets. *Id.* at ¶ 21.[2]

The confluence of ties between the Products and California, and its substantial sales in the state, make it appropriate to apply California law to the nationwide class. *See, e.g., Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 589 (C.D. Cal. 2008) (applying California law to nationwide class where defendant had California operations and a significant number of class members resided in California); *see also Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214 (1999) (upholding certification of nationwide class in a consumer protection action against defendant whose headquarters was outside California for alleged wrongful conduct that occurred in California); *Hendricks v. StarKist Co.*, Case No. 13-CV-00729, 2015 WL 4498083, *4 (N.D. Cal. July 23, 2015) (approving that California law to nationwide class and finding that Rule 23(b)'s predominance element met where defendant engaged in wrongful actions in Samoa, California); *Keilholtz v. Lennox Hearth Products*, 268 F.R.D. 330, 339-40 (N.D. Cal. 2010) (applying California law to nationwide class where 19% of sales were in California).

California also has an interest in seeing its consumer protection laws applied to the Defendant's actions. *See Parkinson v. Hyundai Motor Am.*, 258 F.R.D. 580, 599 (C.D. Cal. 2008). Defendant is large corporation that operates in California and sells a substantial amount of the Products there. These factors support applying California law to the Class. *See Chavez v. Blue Sky*

---

[2] The 2015 units sold data is based on data reported by Nielsen through its RMS (Scanning) Service for the Daily Hair Care Category for the last three years, ending April 9, 2016, for the Total US xAOC (All Outlets Combined) market, as well as the Los Angeles market, San Francisco market, and Pacific Region (California, Oregon and Washington) market. Copyright © 2013-2016 The Nielsen Company.

*Nat. Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (certifying nationwide class under California law, stating "with such significant contacts between California and the claims asserted by the class, application of the California consumer protection laws would not be arbitrary or unfair to defendants.").

This Court also has the authority to bind absent members of the Class.  "[A] federal court may release not only those claims alleged in the complaint, but also a claim based on the identical factual predicate as that underlying the claims in the settled class action even though the claim was not presented and might not have been presentable in the class action."  *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 955 F.2d 1268, 1287 (9th Cir. 1992) (internal quotations and citations omitted).  All Class Members' claims share an "identical factual predicate" (*see Reyn's Pasta Bella, LLC v. Visa USA, Inc.*, 442 F.3d 741, 743 (9th Cir. 2006), as they all relate to paying a price premium for the Products that were marketed as "Natural."

The Class Members' due process concerns will be satisfied and, if Class Members do not agree with the Settlement, they can either opt out of the Settlement or object to it.  Accordingly, it is appropriate to analyze application of the certification requirements of Federal Rules 23(a) and (b) to a nationwide class.

### 2.      Rule 23(a) Requirements are Met

#### a.      Numerosity

A class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1).  Often, a large number of class members by itself establishes the impracticability of joining them as plaintiffs.  *See Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), vacated on other grounds, 459 U.S. 810 (1982).  "A proposed class of at least forty members presumptively satisfies the numerosity requirement."  *Avilez v. Pinkerton Gov't Services*, 286 F.R.D. 450, 456 (C.D. Cal. 2012); *see also Collins v. Cargill Meat Solutions Corp.*, 274 F.R.D. 294, 300 (E.D. Cal. 2011) ("Courts have routinely found the numerosity requirement satisfied when the class comprises 40 or more members.").

The numerosity requirement is easily met here.  Thousands of people purchased the Products and would therefore be members of the Class.  *See* Kindall Decl. at ¶ 21.  Joinder of everyone who purchased the Products is impractical if not impossible.  *See*, *e.g.*, *Kirchner v. Shred-It USA, Inc.*, Case No. 2:14-1437 WBS, 2015 WL 1499115, *3 (E.D. Cal. March 31, 2015) (Shubb, J.).

### b.      Commonality

Commonality requires that there be common questions of law or fact.  *See*, *e.g.*, *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  This requirement is construed permissively and is "less rigorous than the companion requirements of Rule 23(b)(3)."  *Id.*  For there to commonality, there does not have to be "complete congruence" of common issues – even one is sufficient.  *See*, *e.g.*, *Rodriguez v. Hayes*, 591 F.3d 1105, 1122 (9th Cir. 2010); *see also* 4 Albert Conte & Herbert Newberg, Newberg on Class Actions, ("Newberg") § 3.10 (4th ed. 2002) (the commonality standard is "easily met" for most settlement classes).

There are many common issues to satisfy this requirement.  They include: (1) whether the Products labels were likely to deceive reasonable consumers; (2) whether Defendant engaged in unfair, deceptive or lawful business practices when marketing the Products; (3) the amount of revenue and profit Defendant received as a result of such alleged wrongdoing; (4) the amount of the price premium associated with Defendant's allegedly false advertising; and (5) whether Class Members are entitled to damages.  *See* ECF No. 31 and Kindall Decl., generally.

Courts in the Ninth Circuit have repeatedly found commonality in cases in which deceptive advertising on product labels is alleged.  *See*, *e.g.*, *Zeisel v. Diamond Foods, Inc.*, Case No.  CV-10-01192 JSW, 2011 WL 2221113, at *7 (N.D. Cal. June 7, 2011) (commonality requirement met where "class was exposed to the same misleading and misbranded labels"); *Chavez*, 268 F.R.D. at 377 (commonality where the issue was "whether the [product] packaging and marketing materials are unlawful, unfair, deceptive or misleading to a reasonable consumer"); *Delarosa v. Boiron, Inc.*, 275 F.R.D. 582, 589 (C.D. Cal. 2011) (commonality where "Plaintiff alleges a single misrepresentation [on a product's packaging] that was made identically to all potential class members").  Like the class members in *Zeisel*, *Chavez* and *Delarosa*, the Class was subject to the

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

same allegedly misleading representations concerning a consumer product. The Defendant's advertisements and Products' labels create common issues among members of the Class to satisfy Rule 23(a)(2).

### c.      Typicality

Typicality requires that named plaintiffs have claims "reasonably co-extensive with those of absent class members" but their claims do not have to be "substantially identical." *Hanlon*, 150 F.3d at 1020. The test for typicality "is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir. 1992).

Plaintiffs' allegations in their Second Amended Complaint are equally applicable to all Class Members. Plaintiffs allege that they paid a premium for the Products over comparable shampoos and conditioners that did not purport to be "natural." *See* ECF No. 31 at ¶¶ 6-9. Other Class Members would have paid the same alleged premium. This weighs in favor of the typicality requirement being met. *See, e.g.*, *Ebarle v. Lifelock, Inc.*, Case No. 15-CV-00258 HSG, 2016 WL 234364 (C.D. Cal. Jan. 20, 2016) (finding named plaintiffs' claims were typical to those of proposed class because they all purchased defendant's products and subject to the same allegedly false advertising).

### d.      Adequacy of Representation

The court makes two inquires to resolve the question of adequacy: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members; and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020. These questions involve consideration of a number of factors, including "the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees and the unlikelihood that the suit is collusive." *Brown v. Ticor Title Ins.*, 982 F.2d 386, 390 (9th Cir. 1992).

Under the first inquiry, Plaintiffs' interests are aligned with those of the Class.  The Class includes all individuals in the United States who purchased the Products during a defined period and who, therefore, suffered the same alleged injury as the Plaintiffs.  *See* SA, ¶ 1(j).  There is no discrimination among members of the Class in the Settlement.  *See Amchem Products, Inc. v. Windsor*, 521 U.S. 591, 625-6 (1997) ("[A] class representative must be part of the class and possess the same interest and suffer the same alleged injury as the class members.").  Under the Settlement, payments to members of the Class will be based on how many bottles of the Products they purchased.  *See* SA, ¶ 29 and Plan of Allocation, attached to the SA as Exh. A.[3]

In the second prong of the adequacy inquiry, the court examines the vigor in which the named plaintiff and her counsel have pursued the common claims.  *Hanlon*, 150 F.3d at 1021.  "Although there are no fixed standards by which 'vigor' can be assayed, considerations include the competency of counsel and, in the context of a settlement-only class, an assessment of not pursuing further litigation."  *Id.*

Plaintiffs selected experienced counsel who have aggressively litigated the case.  *See, e.g.*, ECF No. 19 (Opposition to Defendant's Motion to Dismiss) and Kindall Decl. at ¶¶ 2-14 (detailing the motions practice, discovery, depositions and mediation).  There are no adequacy concerns in this case.

---

[3] The proposed incentive payments to the Plaintiffs do not create any sort of conflict.  First and foremost, they are entirely discretionary with the Court and the settlement is in no way contingent upon Plaintiffs receiving anything.  *See* SA, ¶ 61.  Moreover, the Settlement caps the total amount of incentive awards that Plaintiffs will request at $15,000, an average of $3,750 per Plaintiff, and the amounts – if approved by the Court – will be paid by Defendant and will not reduce the amount of the common Settlement Fund.  *Id.* at ¶ 60.  Courts have found larger awards to be entirely reasonable and no impediment to approval of a settlement or certification of a settlement class.  *See e.g., Hopson v. Hanesbrands, Inc.,* Civ. No. 08-08444 EDL, 2009 WL 928133 at *10 (N.D. Cal. Apr. 3, 2009) ("In general, courts have found that $5,000 incentive payments are reasonable."); *see also Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 300 (N.D. Cal. 1995) (incentive award of $50,000 to each plaintiff was found reasonable); *Glass v. UBS Fin. Servs., Inc.,* Civ. No. 04-4068 MMC, 2007 WL 221862 at *16 (N.D. Cal. Jan. 26, 2007) (approving $25,000 incentive award for each named plaintiff).  In light of the fact that Plaintiffs have spent substantial time and effort prosecuting this case including, in the case of three of the four plaintiffs, sitting for a deposition, the amounts at issue are extremely reasonable compensation for their work on behalf of the class.  Thus, nothing in the proposed incentive awards undermines Plaintiffs' adequacy as class representatives in any way.

### 3.    Rule 23(b)'s Predominance and Superiority Requirements Are Met

An action that meets the prerequisites of Rule 23(a) may only be certified as a class action if it also satisfies the requirements of one of the three subdivisions in Rule 23(b).  *Levya v. Medline Indus., Inc.*, 716 F.3d 510, 512 (9th Cir. 2013).  As set forth below, Plaintiffs satisfy Rule 23(b)'s predominance and superiority requirements.

### a.    Predominance

"Because Rule 23(a)(3) already considers commonality, the focus of Rule 23(b)(3) is on the balance between individual and common issues."  *Murrillo v. Pac. Gas & Elec. Co.*, 266 F.R.D. 468, 476 (E.D. Cal. 2010) (Shubb, J.) (citing *Hanlon*, 150 F.3d at 1022).  The Ninth Circuit has explained that "a central concern of the Rule 23(b)(3) predominance test is whether 'adjudication of common issues will achieve judicial economy.'"  *Vinole v. Countrywide Home Loans*, 571 F.3d 935, 944 (9th Cir. 2009).

The predominance requirement does not demand that the common issues be identical.  There only needs to be an essential common factual link between all class members and the defendant for which the law provides a remedy.  *See In re Wells Fargo Home Mortg. Overtime Pay Litig.,* 527 F. Supp. 2d 1053, 1065 (N.D. Cal. 2007).  Predominance is often readily met in consumer cases (*see, e.g., Bruno v. Quten Research Inst.,* LLC, 280 F.R.D. 524, 537 (C.D. Cal. 2011)) where there is a common representation made to all members of the class, and is likewise found here.  Issues that predominate across the Class include: (a) whether Defendant misrepresented that the Products were "Naturals;" (b) whether Defendant's labeling of the products is likely to deceive a reasonable consumer; (c) whether Defendant's labeling of the Products constitutes an unfair or deceptive act or practice in the conduct of trade or commerce under California law; (d) whether Plaintiffs and members of the Class are entitled to damages.

### b.    Superiority

In addition to there being predominant issues across the Class, a class action is the best method to fairly and efficiently adjudicate this case.  Rule 23 sets forth four non-exhaustive factors for a district court to consider when determining if the "superiority" requirement is met: (A) the class

members' interest in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of claims in the particular forum; and (D) the likely difficulties in managing a class action.  Fed. R. Civ. P.(b)(3)(A) – (D).  The fact that the Parties entered into the Settlement prior to class certification makes factors (C) and (D) inapplicable.  *See Murillo*, 266 F.R.D. at 476 (citing *Amchem Products, Inc.*, 521 U.S. at 620).

Factor (A) (Class Members' interest in controlling prosecution) weighs in favor of certifying the Class.  "Class certifications to enforce compliance with consumer protection laws are 'desirable and should be encouraged.'"  *Ballard v. Equifax Check Servs. Inc.*, 186 F.R.D. 589, 600 (E.D. Cal. 1999).  This is particularly true when the amount in dispute for each class member is small and may not provide an incentive to pursue individual actions.  *Id.*

Here, Plaintiffs allege that they paid a price premium due to Defendant's "naturals" labeling on the Products.  *See* ECF No. 31 at ¶¶ 6-9.  Given that the *total* cost of each of the Products was only a few dollars and the alleged "naturals" premium was only a portion of the total cost, damages for each individual class member will be small, especially compared to the cost of litigation.  In these circumstances, "class treatment is not merely the superior, but the only manner in which to ensure fair and efficient adjudication of the action."  *Bruno*, 280 F.R.D. at 537 (certifying class where each class member only suffered a nominal amount of damages because it was the best way to adjudicate the controversy).

Indeed, "[w]here it is not economically feasible to obtain relief with the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they employ the class action device."  *Deposit Guar. Nat'l Bank v. Roper*, 445 U.S. 326, 339 (1980); *see also Ballard*, 186 F.R.D. at 600.  Furthermore, each member of the Class pursuing a claim individually would burden the judiciary, which is contrary to the goals of efficiency and judicial economy advanced by Rule 23.  *See Vinole*, 571 F.3d at 946; *see also Delarosa*, 275 F.R.D. at 594-595.

Factor (B) (if there is other litigation) also favors certification of the Class.  Plaintiffs are unaware of any other action or potential action that raises allegations similar to those in this case. *See* SA, ¶ 64.  If there are competing lawsuits unknown to the Plaintiffs, any objectors may reveal them at the Fairness Hearing.  *See Alberto v. GMRI, Inc.*, 252 F.R.D. 652 (E.D. Cal. 2008) (Shubb, J.).

This case – and the Settlement – is the best opportunity for members of the Class to receive redress for the injuries they allegedly suffered.  Thus, the proposed Settlement and proposed Class satisfy both the predominance and superiority requirements of Rule 23(b)(3), as well as all requirements of Rule 23(a).  Certification of the class is therefore appropriate.

**B.     The Court Should Appoint Interim Class Representatives and Counsel**

The Court should appoint plaintiffs Lainie Cohen, Alba Morales, Linda Clayman and Kenneth Drew as Interim Class Representatives.  They have prosecuted the claims in the Complaint for over 2 years and have represented the Class diligently and well.  *See* Kindall Decl., ¶¶ 2-14.

The Court should also appoint Izard Nobel as Interim Lead Counsel, and BPM&B as Interim Liaison Counsel, for the preliminarily approved Class pursuant to Fed R. Civ. P. 23(g)(3). The 2003 Advisory Committee Notes explain that interim counsel should be appointed "if necessary to protect the interests of the putative class." *Id.*, 2003 Advisory Committee Notes.  In determining whether the proposed Class Counsel will adequately represent the Class, the Court should consider: (1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. Fed. R. Civ. P. 23(g)(1)(A).

Izard Nobel and BPM&B meet all of these criteria.  Izard Nobel has done substantial work identifying, prosecuting and settling the claims.  *See* ECF Nos. 1 (Complaint), 8 (Amended Complaint), 19 (Opposition to Defendant's Motion to Dismiss) and 31 (Second Amended Complaint); *see also* Kindall Decl. at ¶¶ 6-12 (describing discovery and settlement efforts), and BPM&B has served as liaison counsel throughout the litigation, providing invaluable assistance at

every step.  Plaintiffs' counsel are well-versed in class actions and consumer litigation.  *See* Kindall Decl., Exhs. 3 and 4.  Izard Nobel and BPM&B have expended the necessary resources to represent the Class through motions practice, discovery and mediation, and should be approved as Class Counsel pursuant to Rule 23(g).

### C.    The Court Should Approve the Notice Plan

If the Court certifies a class under Rule 23(b)(3), it "must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort."  *See* Fed. R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and content of a proposed notice.  *See Ravens v. Iftikar*, 174 F.R.D. 651, 658 (N.D. Cal. 1997) (citing *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 172, 177 (1974)).  Although the notice must be "reasonably certain to inform the absent members of the plaintiff class," actual notice is not required.  *Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994).

Here, as in many similar consumer class actions, actual notice to each class member is not feasible because Defendant does not have records showing the people that purchased the Products, much less their contact information.  Plaintiffs have retained KCC to develop and (with the Court's approval) execute a notice plan that is based on the demographics of the Class and is calculated to provide notice of the Settlement to over seventy percent of the members of the Class.  *See* SA Exhibit D (the "Notice Plan"); *see also* Declaration of Daniel Burke ("Burke Decl."), Attached to the Kindall Declaration as Exhibit 2.

The Notice Plan proposes placing banner advertisements on general Run of Network websites that individuals who purchased the Products are likely to visit, including, for example: (a) USA Today; (b) Food Network; and (c) CNN.  These advertisements will produce over 150 million unique impressions over an approximately one-month period.  *See* Burke Decl. at ¶ 20.  The Notice Plan also calls for an advertisement to be placed in *People* magazine, which reaches 23.3% of the Class.  *Id*., ¶ 17.  Notice of the Settlement will also appear four times in the *Sacramento Bee. Id.,* ¶ 22.  In addition, KCC will provide a dedicated website where class members can get additional information and fill out online claim forms, as well as toll-free telephone support. *Id.,* ¶ 23-24.  The

methods set forth in Notice Plan will reach approximately 71.6% of Class Members. *Id., ¶ 25*. This reach is within the range considered "reasonable" in the Federal Judicial Center's (FJC) *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide*. *See id.* at p. 3 (notice plan reasonable if it reaches over 70 percent of the class); *see also In re Cathode Ray Tube (Crt) Antitrust Litig.*, Case No. 3:07-cv-5944 JST, 2016 WL 721680, * 31 (N.D. Cal. Jan. 28, 2016) (relying on FJC's numerical range when analyzing whether to approve notice plan); *Flynn v. Sony Electronics*, Case No. 09-cv-2109 BAS, 2015 WL 128039 (S.D. Cal. Jan. 7, 2015) (approving print and ad banner aspects of notice plan developed by KCC because it would reach 80% of class members, which was within the range developed by the FJC).

KCC has successfully served as the notice and claim administrator a number of other consumer class action settlements where it has employed similar notice plans, including *Apple Purchase Litigation,* No. 5:11-cv-01758-EJD (S.D. Cal.), *Zeisel v. Diamond Foods,* No. 3:10-cv-1192-JSW (N.D. Cal.), *Pappas v. Naked Juice,* No. 2:11-cv-8276 (C.D. Cal.), and *Schiff Nutrition Int'l Consumer Settlement,* No. 11-cv-1056-JAH (S.D. Cal.).[4]  As a result, KCC is highly confident that the proposed Notice Plan will be both effective in reaching the great majority of class members, and efficient in terms of cost to the class.  *See* Burke Decl., generally.  Accordingly, the Notice Plan is "reasonably certain to inform the absent members of the plaintiff class," and merits approval.  *See Silber*, 18 F.3d at 1454.

The content of the Notice also meets the requirements of Rule 23(c)(2)(B) and applicable law. *See Churchill Vill. LLC v. General Elec.*, 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'").  The dedicated website will give Class Members the ability to review the critical settlement documents, including the operative

---

[4] Other courts as well have found KCC to be a well-qualified and experienced notice and claim administrator.  *See, e.g., Hendricks v. Starbucks*, 2008 WL 4196690, at *9 ("The Court finds that KCC is qualified to perform the tasks associated with administering the notice and claims procedures outlined in the Settlement Agreement and therefore approves KKC as claims administrator."); *Donnelly v. EquityExperts.org, LLC*, Case No. 4:13-CV-10017 TGB, 2014 WL 4923081, *2 (E.D Mich. Sept. 26, 2014) (appointing KCC as claim administrator); *Rhodes v. Olson Associates, P.C.*, 308 F.R.D. 664,  666 (D. Colo. 2015).

complaint.  In addition, the website will include a complete Notice that explains the Settlement in detail (including the release), defines the scope of the Class, informs Class Members how to submit a claim and the procedure for opting out of the Class and objecting to the Settlement, and provides the time, date and location of the Fairness Hearing.  The internet advertising and publication notices will direct Class Members to the website (as will Class Counsel's own website), but will also indicate that the Claim Administrator will send interested parties a copy of the Notice by U.S. Mail if they request it.  *See* SA at ¶¶ 46-48.  Notice plans with similar language and procedure have been approved by other courts in California.  *See* Burke Decl. at ¶ 8 citing *In re Google Referrer Header Privacy Litig.*, Case No. 10-cv-04809, 2014 WL 1266091, *6 (N.D. Cal. Mar. 26, 2014).

The Notice and the procedure for distributing it to members of the Class satisfies Rule 23(c)(2)(B).  Accordingly, Plaintiffs request that the Court appoint KCC as Notice Administrator, and direct that Notice be provided to the Class in substantially the forms set out in Exhibits C to the Settlement, and in accordance with the Notice Plan developed by KCC and attached to the Settlement as Exhibit D.

### D.      The Court Should Preliminarily Approve the Settlement

As this Court very recently held, approval of a Class Action settlement "'involves a two-step process in which the Court first determines whether a proposed class action settlement deserves preliminary approval and then, after notice is given to class members, whether final approval is warranted.'"  *Garnett v. ADT, LLC*, No. 2:14-02851 WBS AC, 2016 WL 1572954, *1 (E.D. Cal. Apr. 19, 2016) (Shubb, J.) (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 523).  At the first, preliminary approval stage – where this case is presently – the goal is to determine whether there are any "glaring deficiencies" in the proposed settlement.  *Id.* at *6.  Specifically:

> At the preliminary stage, the court need only determine whether the proposed settlement is within the range of possible approval. This generally requires consideration of whether the proposed settlement discloses grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or segments of the class, or excessive compensation of attorneys.

*Id.* (internal quotations and citations omitted).  Based on these factors, the proposed settlement merits preliminary approval.

### 1. The Settlement was Achieved After Hard-Fought Litigation and Negotiations

"Preliminary approval of a settlement has both a procedural and a substantive component." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).  Absent evidence of fraud or collusion, Courts in the Ninth Circuit have "long deferred to the private consensual decision of the parties." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).  As the Ninth Circuit has emphasized:

> [T]he court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned.

*Id.*  A district court is to examine whether the settlement is "the product of arms-length, non-collusive, negotiated resolution."  *Id.*  When it is, courts afford the parties a presumption that the settlement is fair and reasonable.  *See*, *e.g.*, *Spann v. J.C. Penney Corporation*, Case No. SACV-12-0215 FMO, 2016 WL 297399, *8 (C.D. Cal. Jan. 25, 2016); *McCrary v. Elations Company*, Case No. 13-CV-0242 JGB, 2016 WL 769703 (C.D. Cal. Feb. 25, 2016).

The Settlement was the product of long, hard-fought litigation and negotiations.  The Parties litigated the case for nearly two years before signing the Settlement, with both sides zealously representing their clients' interests.  *See*, *e.g.*, ECF No. 31 (Motion to Dismiss) and Kindall Decl. at ¶ 15.  The Parties also conducted extensive discovery before the Settlement, with each side serving and responding to written discovery and conducting multiple depositions.  *See Id.*, ¶¶ 6, 7.  Plaintiffs and Plaintiffs' Counsel were fully informed of all relevant facts when the Settlement was reached. *Id.* at ¶¶ 6-12, 15; *see*, *e.g.*, *Lewis v. Starbucks Corp.*, Case No. 2:07-CV-00490 MCE, 2008 WL 4196690, *6 (E.D. Cal. Sept. 11, 2008) ("approval of a class action settlement as long as discovery allowed the parties to form a clear view of the strengths and weaknesses of their cases.")

The assistance of a mediator is further evidence the Settlement was reached in a procedurally sound manner and without collusion.  *See*, *e.g.*, *Satchell v. Fed Ex Corp.*, Case Nos. C03-2659 SI, C03-2878 SI, 2007 WL 1114010, *4 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive."); *see also Chun-*

*Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010).  The Parties employed Jonathan Marks, a well-respected mediator in Bethesda, Maryland, to help them reach a resolution. In fact, it was only after Mr. Marks made a mediator's proposal of $3.25 million that the Parties were able to reach the Settlement.  *See* Kindall Decl. at ¶¶ 8-11.

### 2.  The Settlement is Well Within the "Range of Possible Approval"

In determining whether a settlement agreement is substantively fair to the class, the court must balance the value of expected recovery against the value of the settlement offer.  *See Tableware*, 484 F. Supp. 2d at 1080.  This inquiry may involve consideration of the uncertainty class members would face if the case were to go to trial.  *See Omtiveros v. Zamora*, 2014 WL 3057506 at *14.

The Settlement is well within the "range of possible approval."  *Garnett,* 2016 WL 1572954, at *6.  The litigation itself achieved a key goal of the case: discontinuance of Defendant's "Naturals" line of products, effectively rendering moot Plaintiffs' request for injunctive relief.  The Settlement also provides that Defendant will pay $3.25 million into a Settlement Fund for persons who purchased the Products while they were still being sold.   This amount is more than 25 percent of Plaintiffs' "best case" recovery if the case proceeded to trial.  *See* Kindall Decl. at ¶ 17.

This recovery is reasonable given the significant risks the Plaintiffs faced if they continued litigating this case.  Plaintiffs would have to prove that Defendant's "Naturals" labeling was likely to deceive or confuse reasonable persons, and that those representations were material.  *See Id.,* ¶ 18. Plaintiffs would also have had to establish that the price premium that Class Members paid was attributable to the "Naturals" labeling, and quantify the aggregate amount of damages that resulted from the premium.  These issues would have involved expert testimony from both sides, creating a "battle of experts" and all of the intendant risk such a battle invariably entails.  *Id*.  Continuing the litigation also would have taken considerable time – perhaps years – to complete.  *Id*. at ¶ 19. Given these risks, Plaintiffs believe that $3.25 million, which is more than 25% of the best case recovery, is an excellent result.  *Id*., ¶¶ 16-17;  s*ee also Schaffer v. Litton Loan Servicing, LP*, Case No. 05-CV-07673 MMM, 2012 WL 10274679, *11 (C.D. Cal. Nov. 13, 2012) (considering risk of

losing at trial, the expense of litigating the case and the expected delay in recovery when evaluating the settlement on a preliminary approval motion); *see also Jaffe v. Morgan Stanley*, No. 06-CV-3902 TEH, 2008 WL 346417, at *9 (N.D. Cal. Feb. 7, 2008) ("The settlement amount could undoubtedly be greater, but it is not obviously deficient, and a sizeable discount is to be expected in exchange for avoiding the uncertainties, risks, and costs that come with litigating a case to trial.").

### 3.      The Settlement Treats Class Members Equally

The Settlement does not grant preferential treatment to any members of the Class.  Payments to Class members will be based on the number of Products they purchased, subject to a limit of ten Products per household unless the claimants provide valid proofs of purchase.  *See* SA, ¶ 29.  This method is reasonable and supports preliminary approval of the Settlement.  *See*, *e.g.*, *Ruch v. AM Retail Group, Inc.*, Case No. 14-cv-05352 MEJ, 2016 1161453 (N.D. Cal. Mar. 24, 2016) (granting preliminary approval of settlement where payments would be distributed based on amount of weeks worked).  Any funds remaining after all claims have been paid will be distributed to an appropriate non-profit or civic entity selected by the Parties and approved by the Court.  *See* SA, ¶¶ 25(f), 43. No money will be returned to Defendant.  *Id*.

### 4.      The Settlement Will Not Provide Excessive Compensation to Counsel

The Settlement will not provide excessive compensation to Counsel.  Any award to counsel from the Settlement Fund will be made at the Court's discretion, and the Settlement is not in any way contingent upon approval of any particular counsel fee award by the Court.  *Id*. at ¶ 58.  Thus, the amount that counsel will receive for their services on behalf of the Class will be determined by the Court in accordance with the standards applicable to common fund settlements.  Moreover, the Settlement itself provides that counsel will not request fees in excess of 30% of the Settlement Fund. *Id*. at ¶ 56.  This amount is in line with what other courts have previously awarded.   *See*, *e.g.*, *Ruch* (approving Class Counsel's proposed fees of 30% to be reasonable); *Wren v. RGIS Inventory Specialists*, Case No. C-06-05778 JCS, 2011 WL 1230826, * 29 (N.D. Cal. Apr. 1, 2011) (approving attorneys' fees of 42%).

**5.      The Settlement was Achieved at an Appropriate Stage of the Proceedings**

"A settlement that occurs in an advanced stage of the proceeding indicates the parties carefully investigated the claims before reaching a resolution." *Anderson-Butler v Charming Charlie, Inc.*, Case No. 2:14-CV-01921 WBS, 2015 WL 6703805, *6 (E.D. Cal. Nov. 3, 2015) (Shubb, J.) (citing *Alberto v. GMRI, Inc.*, Case No. 07-CV-1895 WBS, 2008 WL 4891201, *9 (E.D. Cal. Nov. 12, 2008)).   As detailed in § III.C.1, above, the Parties engaged in motion practice, extensive discovery and multiple mediation sessions before they reached the Settlement.  *See* Kindall Decl. at ¶¶ 6-12.   These facts weigh in favor of approving the Settlement.  *See*, *e.g.*, *Anderson-Butler*, at * 6 (discovery and mediation between the parties supported approval of the settlement).

**6.      Plaintiffs and Plaintiffs' Counsel Support the Settlement**

Each of the Plaintiffs support the Settlement.  *See* Kindall Decl., ¶ 22.  For Plaintiffs, they achieved a key goal of the case: the discontinuance of Defendant's "Naturals" line of Products.  *Id.*, ¶ 16.  Plaintiffs will also receive damages to compensate for the premium they allegedly paid over similar shampoos and conditioners that were not marketed as "natural."

Plaintiffs' Counsel also supports the Settlement.  Plaintiffs' Counsel has considerable experience in litigating consumer class action litigation and believes that the Settlement is fair and reasonable.  *See* Kindall Decl. at Exhibit 3 (firm biography) and ¶ 16.

## IV.   CONCLUSION

For all of the foregoing reasons, Plaintiffs ask the Court to: (1) provisionally certify the Class; (2) establish procedures for giving notice to the Class; (3) grant preliminary approval of the parties' Settlement; (4) approve Izard Nobel LLP as Interim Class Counsel and BPM&B as Interim Liaison Counsel for the Class; and (5) set a date, time and place for a final approval hearing.

Dated:  May 27, 2016                    Respectfully submitted,


                                        By: /s/ Mark P. Kindall
                                        Mark P. Kindall (State Bar No. 138703)
                                        Robert A. Izard *(Admitted pro hac vice)*
                                        **IZARD NOBEL LLP**
                                        29 South Main Street, Suite 305
                                        West Hartford, CT 06107
                                        Telephone: (860) 493-6292
                                        Facsimile: (860) 493-6290
                                        mkindall@izardnobel.com
                                        rizard@izardnobel.com

                                        Alan R. Plutzik (State Bar No. 77785)
                                        **BRAMSON, PLUTZIK, MAHLER
                                        & BIRKHAEUSER LLP**
                                        2125 Oak Grove Road
                                        Walnut Creek, CA 94598
                                        Telephone: (925) 945-0200
                                        Facsimile: (925) 945-8792
                                        aplutzik@bramsonplutzik.com

                                        Joseph J. DePalma (admitted *pro hac vice*)
                                        Katrina Carroll (*pro hac vice* forthcoming)
                                        **LITE DEPALMA GREENBERG, LLC**
                                        Two Gateway Center, 12th Floor
                                        Newark, New Jersey 07102
                                        Telephone: (973) 623-3000
                                        Facsimile: (973) 623-0858
                                        jdepalma@litedepalma.com
                                        kcarroll@litedepalma.com

                                        Nicole A. Veno (admitted *pro hac vice*)
                                        **LAW OFFICE OF NICOLE VENO**
                                        573 Hopemeadow Street
                                        Simsbury, CT 06070
                                        Telephone: (860) 474-4024
                                        Facsimile: (860) 717-3207
                                        nveno@venolaw.com

                                        *Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who have consented to electronic service are being served with a copy of the attached **Notice of Motion and Motion for Preliminary Approval** via the CM/ECF system on May 27, 2016.

DATED:  May 27, 2016                                                  */s/*  Mark P. Kindall
                                                                                        Mark P. Kindall