Alan R. Plutzik (State Bar No. 77785)
Michael S. Strimling (State Bar No. 96135)
**BRAMSON, PLUTZIK, MAHLER**
**& BIRKHAEUSER LLP**
2125 Oak Grove Road
Walnut Creek, CA 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792
aplutzik@bramsonplutzik.com
mstrimling@bramsonplutzik.com

Mark P. Kindall (State Bar No. 138703)
Robert A. Izard (*Admitted pro hac vice*)
**IZARD NOBEL LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290
mkindall@izardnobel.com
rizard@izardnobel.com

*Attorneys for Plaintiffs*

*[Additional counsel on signature page]*

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LAINIE COHEN, ALBA MORALES, LINDA CLAYMAN and KENNETH DREW, on behalf of themselves and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>CONOPCO, INC. D/B/A UNILEVER,<br><br>Defendant. | No. 2:13-cv-02213-WBS-EFB<br><br>**DECLARATION OF MARK P. KINDALL IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY APPROVAL**<br><br>Date: July 11, 2016<br><br>Time: 1:30 p.m.<br><br>Courtroom 5, 14th Floor<br><br>Hon. William B. Shubb |

I, Mark P. Kindall, hereby declare as follows:

1. I am a partner in the law firm of Izard Nobel LLP, counsel for Plaintiffs in the above-captioned litigation. I submit this declaration in support of Plaintiffs' Motion for Preliminary Approval, and have personal knowledge of the facts contained herein.

2. Plaintiffs Alba Morales and Lainie Cohen commenced this litigation in October of 2013 by filing a complaint against Defendant in the U.S. District Court for the Eastern District of California [ECF No. 1]. The Complaint alleged that Defendant manufactured and sold shampoo and conditioner products under the "TRESemmé Naturals" label that contained numerous artificial, synthetic ingredients, contrary to the "natural" representations on the labels. Plaintiffs also sent notice to Defendant of their intent to amend the Complaint to add claims pursuant to the California Consumers Legal Remedies Act (the "CLRA").

3. Defendant's formal response to the CLRA Notice was to deny any liability and to state that any claim under the CLRA would be sanctionable pursuant to Cal. Civ. Code § 1780(e) and Fed. R. Civ. P. 11. Plaintiffs nonetheless filed an Amended Complaint adding the CLRA claims on December 3, 2013 [ECF No. 8].

4. Defendant filed a Motion to Dismiss the Amended Complaint on January 14, 2014 [ECF No. 14], which the parties fully briefed. On April 7, 2014, the Court heard Oral Argument on the motion, and issued a ruling two days later, granting the motion in part and denying it in part [ECF No. 27].

5. As a result of the Court's April 9, 2014 ruling, Plaintiffs filed a Second Amended Complaint on April 29, 2014 [ECF No. 30], followed by a Corrected Second Amended Complaint on April 30, 2014 [ECF No. 31]. Defendant answered the complaint on May 29, 2014 [ECF No. 37].

6. In accordance with the Court's Pretrial Scheduling Order [ECF No. 34], the parties exchanged initial disclosures on May 16, 2014. Plaintiffs also sent out initial discovery requests on April 17, 2014, which Defendant responded to on June 3, 2014. The parties engaged in a meet and confer process concerning Defendant's objections to Plaintiffs' discovery requests,

1  including conference calls and correspondence that narrowed the differences between the parties
2  concerning the appropriate scope of the discovery.  The parties also negotiated the content of a
3  stipulated protective order for protecting the confidentiality of documents and information
4  obtained through the discovery process, which stipulation was submitted to the Court for
5  approval and was issued on October 7, 2014 [ECF No. 40].  Following the issuance of the
6  Protective Order, Defendant commenced a rolling production of documents that continued over
7  the course of ten months and consisted of close to a quarter million pages of documents.
8  Counsel for Plaintiffs reviewed and analyzed these documents in detail.  Plaintiffs also
9  conducted fact depositions of key witnesses concerning Defendant's marketing of the products at
10 issue and the origin of each of the ingredients in the products.

11         7.      Defendant sent detailed discovery requests to Plaintiffs on August 6, 2014, to
12 which Plaintiffs provided objections and responses.  Defendant deposed Mr. Drew on March 31,
13 2015, Ms. Cohen on April 9, 2015, and Ms. Morales on April 23, 2015.

14         8.      Beginning in December of 2014, counsel for the parties first began to discuss the
15 possibility of negotiating a settlement to the litigation.  In the spring of 2015 the parties agreed to
16 proceed by mediation, and further agreed to request that Jonathan Marks, a respected
17 independent mediator based in Bethesda, Maryland, serve as the mediator.

18         9.      The mediation was scheduled for June 15, 2015, in New York.  In preparation for
19 that mediation session, the parties exchanged detailed mediation submissions and responses.
20 Plaintiffs also engaged the services of Dr. Elizabeth Howlett of the University of Arkansas to
21 conduct a survey and conjoint analysis to assist Plaintiffs in refining a damages model.

22         10.     The June 15 mediation session failed to produce agreement between the parties.
23 Mr. Marks worked hard to continue the dialogue following the face-to-face discussions,
24 encouraging the parties to provide additional information and analysis of other recent cases and
25 settlements for consideration, which they did over a period of several weeks.  Although the
26 parties were able to reach agreement on many contentious elements − most especially,
27
28

DECLARATION OF MARK P. KINDALL

Defendant's willingness to discontinue the "TRESemmé Naturals" line – agreement on damages remained out of reach. In September, the Parties agreed to put settlement discussions on hold.

11.     The parties recommenced settlement discussions in January of 2016, again with the assistance of Mr. Marks acting as mediator. After a month of back-and-forth proposals and counter-proposals, Mr. Marks made a mediator's proposal to both sides for a $3.25 million settlement to the Class. The mediator further proposed that Defendant would pay any court-awarded case contribution awards to the named plaintiffs, in a total amount not to exceed $15,000. Both parties accepted the proposal on February 5, 2016.

12.     As part of the agreement reached on February 5, the parties agreed to work in good faith to negotiate the details of a written settlement agreement that would be submitted to the Court for approval pursuant to Federal Rule 23. The parties began these negotiations shortly thereafter and exchanged a series of drafts over a period of several weeks.

13.     While the parties were working on the final terms of the settlement stipulation, Plaintiffs' counsel sought proposals from firms to perform notice and claim administration under the terms of the Settlement. After careful review of the proposals of several highly qualified firms and after consultation with counsel for Defendant, Plaintiffs' counsel selected KCC Class Action Services LLC. Counsel then worked with representatives of KCC on the Notice Plan and other aspects of the settlement relevant to claims processing and administration.

14.     The Stipulation of Settlement, including all exhibits thereto, was finally approved by all parties and signed on May 27, 2016.

15.     As the above description demonstrates, this case was hard-fought and contentious from the very beginning. The settlement was not concluded until the parties had conducted substantial discovery and had tested their legal theories in motions practice before the Court and through an extensive and contentious mediation process before a highly experienced and well-regarded mediator. Counsel for both parties unequivocally had full knowledge of the strengths and weaknesses of the parties' claims.

16. Izard Nobel LLP has substantial experience prosecuting class action cases (a copy of the firm resume is attached as Exhibit 3). Based on our experience and judgment, the proposed Settlement is a very good result for the Class. First and foremost, a key goal of the litigation was achieved: discontinuance of the "naturals" line of products. Furthermore, the $3.25 million settlement is extremely reasonable based on the total damages at issue and the risks involved in continued litigation.

17. Based on Plaintiffs' analysis, augmented by the conjoint analysis done by Dr. Howlett, the damages sustained by the class as a whole as a result of the premium attributable to Defendant's representations that the Products were "naturals" was approximately $12.65 million. The $3.25 million is more than 25 percent of this total.

18. There were also significant risks to continuing with the litigation. First, Plaintiffs would have been required to prove that the "naturals" labeling was likely to deceive or confuse reasonable persons, or that those representations are material to reasonable persons. Defendant disputed that consumers would interpret "naturals" to mean that all of the ingredients in the products were "natural" and non-synthetic. Establishing that all class members paid a price premium that was directly related to the "naturals" claim would have involved a battle of experts, as would any effort to quantify the amount of the premium.

19. It is also apparent that continuing litigation would take considerable time. Although fact discovery was close to complete, expert discovery had not commenced, after which the parties would have engaged in further motions practice, likely including cross-motions for summary judgment, *Daubert* motions and (necessarily) class certification. In all likelihood, the case would have gone to trial. Whichever party did not prevail would likely have appealed the judgment. Even if Plaintiffs had prevailed in each of these challenges, it might have taken years for the class members to obtain relief.

20. While Defendant's U.S. headquarters are in New Jersey, based on Plaintiffs' investigation, it has operated various locations in California over the years. During parts of the Class Period, Defendant had manufacturing facilities in California in which TRESemmé

1  products were manufactured. Defendant also employed salespeople in the field. While
2  Defendant no longer has any manufacturing plants in California, it currently utilizes two third-
3  party distribution centers there and salespeople remain in the field.

4      21.    Based on the sales data that Defendant produced in discovery, there are thousands
5  of individuals across the United States that purchased the Products. Defendant's sales data also
6  indicated that approximately 9% of its nationwide sales of the Products were in the San
7  Francisco and Los Angeles markets in 2015. And in 2015, more than 17% of Defendant's
8  nationwide sales of the Products were in California, Oregon and Washington.[1]

9      22.    All of the named Plaintiffs, Lainie Cohen, Alba Morales, Linda Clayman and
10  Kenneth Drew, support the approval of the proposed Settlement.

11      23.    True and accurate copies of the Settlement Agreement and exhibits A-G thereto
12  are attached as Exhibit 1 to this Declaration.

13      24.    A true and accurate copy of the Declaration of Daniel Burke, Executive Vice
14  President, Kurtzman Carson Consultants LLC, is attached as Exhibit 2 to this Declaration.

15      25.    A true and accurate copy of the Firm Resume of Izard Nobel LLP is attached as
16  Exhibit 3 to this Declaration.

17      26.    A true and accurate copy of the Firm Resume of Bramson, Plutzik, Mahler &
18  Birkhaeuser, LLP, is attached as Exhibit 4 to this Declaration.

19
20      This Declaration was executed on the 27th day of May in West Hartford, Connecticut.
21
22  DATED: May 27, 2016        Respectfully submitted
23
    By: \s\ Mark P. Kindall
24      Mark P. Kindall
25

---

[1] The 2015 units sold data is based on data reported by Nielsen through its RMS (Scanning) Service for the Daily Hair Care Category for the last three years, ending April 9, 2016, for the Total US xAOC (All Outlets Combined) market, as well as the Los Angeles market, San Francisco market, and Pacific Region (California, Oregon and Washington) market. Copyright © 2013-2016 The Nielsen Company.

DECLARATION OF MARK P. KINDALL