Kindall Declaration In Support of Plaintiffs' Motion
for Preliminary Approval

# EXHIBIT 1

Settlement Agreement

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| LAINIE COHEN, ALBA MORALES, LINDA CLAYMAN and KENNETH DREW, on behalf of themselves and all others similarly situated, | No. 2:13-cv-02213 |
| | **STIPULATION OF SETTLEMENT** |
| *Plaintiffs* | |
| *v.* | |
| CONOPCO, INC. d/b/a UNILEVER, | |
| *Defendant.* | |

This Stipulation of Settlement ("Stipulation") is made and entered into by Plaintiffs Lainie Cohen, Alba Morales, Linda Clayman and Kenneth Drew, on behalf of themselves and all others similarly situated, and defendant Conopco, Inc. d/b/a Unilever.  The Stipulation is intended by the Parties (defined *infra*) to fully, finally and forever resolve, discharge and settle the Action (defined *infra*) and the claims asserted therein, upon and subject to the terms and conditions hereof, including but not limited to the approval of the Court.

## I.    DEFINITIONS

      1.    As used in this Stipulation, the following capitalized terms have the meanings specified below:

      a.    ***"Action"*** means the case entitled *Morales, et al. v. Unilever United States, Inc*. filed on October 10, 2013, in the U.S. District Court for the Eastern District of California and assigned Case No. 2:13-cv-02213.

      b.    ***"Approved Claim(s)"*** means the claims approved by the Claim Administrator according to the claims criteria set forth in the Plan of Allocation.

      c.    ***"Attorneys' Fees, Costs and Expenses"*** means fees, costs and expenses incurred by all Plaintiffs' Counsel in this Action.

      d.    ***"Authorized Claimants"*** means Class Members with claims approved by the Claim Administrator according to the claims criteria set forth in the Plan of Allocation.

e.   ***"Claim Administrator"*** means the independent company agreed upon by the Parties to provide the Class and Publication Notice and administer the claims process. The Parties agree that KCC Class Action Services LLC will be retained as the Claim Administrator.

f.   ***"Claims Cost Estimate"*** is the Claim Administrator's good faith best estimate of all the expenses to be incurred in the claims process.

g.   ***"Claim Form"*** means the form that is substantially in the form attached hereto as Exhibit F.

h.   ***"Claim Review Period"*** means the three-month period beginning no later than 10 days after the Effective Date.

i.   ***"Claim Submission Period"*** means the period beginning on the date notice to the Class is first published, and continuing until 5 days after the date of the Final Approval Hearing.

j.   ***"Class"*** and/or ***"Class Members"*** means all individuals in the United States who purchased the following TRESemmé Naturals products: (a) Nourishing Moisture Shampoo; (b) Nourishing Moisture Conditioner; (c) Radiant Volume Shampoo; (d) Radiant Volume Conditioner (e) Vibrantly Smooth Shampoo; and (f) Vibrantly Smooth Conditioner (collectively, the "Products"). Specifically excluded from the Class are (1) Defendant, (2) the officers, directors, or employees of Defendant and their immediate family members, (3) any entity in which Defendant has a controlling interest, (4) any affiliate, legal representative, heir, or assign of Defendant, (5) all federal court judges who have presided over this Action and their immediate family members, (6) all persons who submit a valid request for exclusion from the Class and (7) those who purchased the Products for the purpose of resale.

k.   ***"Class Notice"*** means the "Notice of Class Action Settlement" substantially in the same form as Exhibit E attached hereto.

l.   ***"Class Notice Package"*** means the information as approved in form and content by Plaintiffs' Counsel and Defendant's Counsel and to be approved by the Court. Class Notice Packages will include (a) the Class Notice, and (b) the Claim Form. The Class Notice Package will be available in English and in Spanish.

m.   ***"Class Representative Awards"*** means cash awards to be paid by Defendant to Plaintiffs for their work as representatives of the Class, in an aggregate amount not to exceed fifteen thousand dollars (which amount is apart from and in addition to the Settlement Fund), subject to approval by the Court and pursuant to the Court's discretion.

n.   ***"Court"*** means the U.S. District Court for the Eastern District of California.

2

o.  **"Defendant"** means Conopco, Inc. d/b/a Unilever, also referred to herein as **"Unilever."**

p.  **"Defendant's Counsel"** means the law firm of Kirkland & Ellis LLP.

q.  **"Distribution Plan"** means a written final accounting and plan of distribution prepared by the Claim Administrator, identifying (a) each claimant whose claim was approved, including the dollar amount of the payment to be awarded to each such claimant, and the dollar amount of any pro rata reduction required by ¶ 26(g); (b) each claimant whose claim was rejected; (c) the dollar amount of the Net Settlement Fund to be disbursed to each recipient(s); and (d) a final accounting of all administration fees and expenses incurred by the Claim Administrator.

r.  **"Effective Date"** means the date described in ¶ 53.

s.  **"Escrow Account"** means the account established in accordance with Paragraph 20 of this Stipulation where the Settlement Fund will be deposited and held.

t.  **"Final Approval Hearing"** means the hearing to be held by the Court to consider and determine whether the proposed settlement of the Action as contained in this Stipulation should be approved as fair, reasonable, and adequate, and whether the Final Settlement Order and Judgment approving the settlement contained in this Stipulation should be entered.

u.  **"Final Settlement Order and Judgment"** means an order and judgment entered by the Court:

   i.   Giving final approval to the terms of this Stipulation as fair, adequate, and reasonable;

   ii.  Providing for the orderly performance and enforcement of the terms and conditions of the Stipulation;

   iii. Dismissing the Action with prejudice;

   iv.  Discharging the Released Parties of and from all further liability for the Released Claims to the Releasing Parties; and

   v.   Permanently barring and enjoining the Releasing Parties from instituting, filing, commencing, prosecuting, maintaining, continuing to prosecute, directly or indirectly, as an individual or collectively, representatively, derivatively, or on behalf of them, or in any other capacity of any kind whatsoever, any action in the California Superior Courts, any other state court, any federal court, before any regulatory authority, or in any other tribunal, forum, or proceeding of any kind, against the Released Parties that asserts any Released Claims that would

3

be released and discharged upon final approval of the Settlement as provided in ¶¶ 16-17 of this Stipulation.

    vi.  The actual form of the Final Settlement Order and Judgment entered by the Court may include additional provisions as the Court may direct that are not inconsistent with this Stipulation, and will be substantially in the form attached hereto as Exhibit G.

v.  *"Net Settlement Fund"* means the amount of the $3.25 million Settlement Fund available to pay Approved Claims after deductions for the cost of notice and claims administration, expenses associated with maintaining the Settlement Fund (including taxes that may be owed by the Settlement Fund), and Attorneys' Fees, Costs and Expenses.

w.  *"Notice Plan"* or *"Notice Program"* means the plan for dissemination of the Publication Notice and Class Notice Package as described in ¶¶ 46-48.

x.  *"Fund Institution"* means a third-party institution which the Parties will approve and to which Unilever shall pay $3.25 million in trust to a fund to be administered by the Claim Administrator as described herein.

y.  *"Parties"* means the Plaintiffs and the Defendant.

z.  *"Plaintiff"* or *"Plaintiffs"* means Alba Morales, Lainie Cohen, Kenneth Drew and Linda Clayman.

aa.  *"Plaintiffs' Counsel"* means Izard Nobel LLP.

bb.  *"Plan of Allocation"* means the approved methodology for apportioning the Net Settlement Fund amongst Class Members who have filed Approved Claims.  The Plan of Allocation shall be submitted to the Court for approval in substantially the form shown in Exhibit A.

cc.  *"Preliminary Approval Order"* means the "Order re: Preliminary Approval of Class Action Settlement," substantially in the form attached hereto as Exhibit B.

dd.  *"Publication Notice"* means information as approved in form and content by Plaintiffs' Counsel and Defendant's Counsel and to be approved by the Court, substantially in the same form as Exhibit C attached hereto. The Publication Notice will be translated into Spanish for dissemination pursuant to the Notice Plan.

ee.  *"Rejected Claims"* means all claims rejected according to the claims criteria set forth in the Plan of Allocation.

ff.  *"Released Claims"* means those claims released pursuant to ¶¶ 16-17 of this Stipulation.

gg. **"Released Parties"** means Defendant and each of its parent, affiliated and subsidiary corporations and all of their agents, employees, partners, predecessors, successors, assigns, insurers, attorneys, officers and directors.

hh. **"Releasing Parties"** means the Plaintiffs, individually and as representatives of all those similarly situated, and the Class Members who do not exclude themselves.

ii. **"Settlement Fund"** means the sum of three million, two hundred fifty thousand dollars ($3,250,000), to be paid into the Escrow Account and administered in accordance with the terms of this Stipulation, for payment of Class Members' claims, notice and administration costs, Attorneys' Fees, Costs and Expenses, and expenses related to maintaining the fund (including taxes that may be owed by the Settlement Fund), if any.

jj. **"Settlement Fund Balance"** means the balance at the end of the Claim Review Period, consisting of the Net Settlement Fund minus the total amount paid to Class Members who submit Approved Claims.

kk. **"Settlement Website"** means the website established by the Claim Administrator that will contain documents relevant to the settlement, including the Class Notice Package. Claim Forms may be submitted by Class Members via the Settlement Website.

ll. **"Stipulation of Settlement"** and/or **"Stipulation"** and/or **"Settlement"** means this Stipulation of Settlement, including its attached exhibits (which are incorporated herein by reference), duly executed by Counsel for the Parties.

2.    Capitalized terms used in this Stipulation, but not defined above, shall have the meaning ascribed to them in this Stipulation and the exhibits attached hereto.

## II.    RECITALS

3.    On October 22, 2013, Plaintiffs Alba Morales and Lainie Cohen filed a complaint against Defendant in the U.S. District Court for the Eastern District of California. The Complaint alleged violations of (1) California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 *et seq.*; (2) California's Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750 *et seq.*; (3) Massachusetts' Consumer Protection Act, Mass. Gen. Laws Ann. ch. 93A; and (4) various other state consumer protection laws, all of which were related to the labeling, advertising, and marketing of Unilever's "TRESemmé Naturals" line of products.

5

4.      On December 3, 2013, Plaintiffs filed their First Amended Complaint, alleging the same causes of action with minor changes to the various other state consumer protection laws alleged, which Defendant moved to dismiss on January 14, 2014.

5.      On April 9, 2014, the Court granted in part and denied in part Defendant's Motion to Dismiss, upholding Plaintiffs' claims under the laws of California and Massachusetts, and dismissing Plaintiffs' claims under the other state laws alleged for which there was no representative named plaintiff.

6.      On April 30, 2014 Plaintiffs filed their Second Amended Class Action Complaint, which added Linda Clayman and Kenneth Drew as Plaintiffs, and added claims under the Florida Deceptive and Unfair Trade Practices Act, F.S.A. § 501.201, *et seq.* and New York General Business Law § 349.

7.      Defendant filed its answer to Plaintiffs' Second Amended Complaint on May 29, 2014.

8.      The parties conducted extensive pretrial discovery.  This included (a) Defendant's production of over 150,000 pages of documents; (b) Defendant deposing three of the named Plaintiffs; and (c) Plaintiffs deposing two Unilever witnesses.

9.      On June 15, 2015, the Parties participated in a mediation before mediator Jonathan Marks. Following this mediation session, the Parties continued to litigate the case.  In September 2015, the Parties requested that the Court suspend the litigation schedule to enable the Parties to engage in further settlement discussions.

10.      After further discussions concerning settlement, the Parties, with the aid of Jonathan Marks, reached an agreement in principle concerning the settlement of this action on February 5, 2016.

11.      Unilever has denied and continues to deny each and all of the claims alleged by Plaintiffs. Unilever has expressly denied and continues to deny all allegations of wrongdoing or liability against it arising out of any of the conduct, statements, acts or omissions alleged, or that could have been alleged, in the Action and states that its advertising and marketing of the Products was not false or misleading.  Unilever's willingness to resolve the Action in the manner and upon the terms and conditions set forth in the Stipulation is based on, among other things: (a) the time and expense associated with litigating this Action through trial and any appeals; (b) the benefits of resolving the

Action, including limiting further inconvenience and distraction, disposing of burdensome litigation, and permitting Unilever to conduct its business unhampered by the distractions of continued litigation; and (c) the uncertainty and risks inherent in any litigation, regardless of legal merit.

12.     Plaintiffs believe that their claims have merit and would ultimately prevail in Court. Plaintiffs recognize, however, that litigation entails significant risks, and that even meritorious claims may prove unsuccessful in whole or in part.  Moreover, Plaintiffs recognize the considerable value of a sure and certain payment now, compared to the possibility of achieving a better result after years of additional litigation, including appeals.

**III.     SETTLEMENT RELIEF**

13.     In consideration of the covenants set forth herein, the Parties agree that all Settled Claims shall be fully, finally and forever compromised, settled, released, and discharged and the Action shall be dismissed with prejudice, upon and subject to the following terms and conditions:

**A.     <u>Defendant Agrees to Discontinue the Challenged Label</u>**

14.     In their Prayer for Relief, Plaintiffs requested that the Court issue an injunction prohibiting Defendant from continuing to represent that the Products were "naturals."  As a result of the Action, Unilever has discontinued producing the Products.  Thus, no injunctive relief is necessary.

**B.     <u>Monetary Relief</u>**

15.     In Consideration of the Settlement, Defendant shall pay or cause to be paid into the Escrow Account the sum of $3,250,000, in accordance with the terms set forth herein.  This is an all-in settlement number, meaning that it includes all attorneys' fees, Litigation Expenses, and costs of Notice and Administration.  Upon the Effective Date of the Settlement, Defendant will not have any right to the return of the Settlement Fund or any portion thereof irrespective of the number of Claims filed, the collective amount of losses of Authorized Claimants, the percentage of recovery of losses or the amounts to be paid to Authorized Claimants from the Net Settlement Fund, or for any other reason.

**IV.     RELEASES**

16.     As of the Effective Date, in consideration of the settlement obligations set forth herein, any and all claims, demands, rights, causes of action, suits, petitions, complaints, damages of any kind, liabilities, debts, punitive or statutory damages, penalties, losses and issues of any kind or nature

whatsoever, asserted or unasserted, known or unknown (including, but not limited to, any and all claims relating to or alleging deceptive or unfair business practices, false or misleading advertising, intentional or negligent misrepresentation, negligence, concealment, omission, unfair competition, promise without intent to perform, unsuitability, unjust enrichment, and any and all claims or causes of action arising under or based upon any statute, act, ordinance, or regulation governing or applying to business practices generally, including, but not limited to, any and all claims relating to or alleging violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 *et seq.*; California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 *et seq.*; Massachusetts' Consumer Protection Act, Mass. Gen. Laws Ann. ch. 93A; Florida Deceptive and Unfair Trade Practices Act, F.S.A. § 501.201, *et seq.* and New York General Business Law § 349 (or any and all other federal, state, and/or local statutes analogous or similar to the statutes cited herein)), arising out of or related to the product representations complained of in this Action, whether legal, equitable, administrative, direct or indirect, or any other type or in any other capacity, against any Released Party ("Released Claims") shall be finally and irrevocably compromised, settled, released, and discharged with prejudice.

17.     Each of the Releasing Parties hereby waives any and all rights and benefits arising out of the facts alleged in the Action by virtue of the provisions of Civil Code § 1542, or any other provision in the law of the United States, or any state or territory of the United States, or principle of common law or equity that is similar, comparable or equivalent to Civil Code § 1542, with respect to this release. The Releasing Parties are aware that Civil Code § 1542 provides as follows:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

The Releasing Parties expressly acknowledge that they may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims, but the Releasing Parties, upon the Effective Date, shall be deemed to have, and by operation of law shall have, fully, finally and forever settled, released, and discharged any and all Released Claims, known or unknown, suspected or unsuspected, whether or not concealed or hidden, that now exist or heretofore have existed upon any theory of law or equity, including, but not limited to, Released Claims based on conduct that is negligent, reckless, intentional, with or without malice,

or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Parties agree that the Released Claims constitute a specific and not a general release.

18.     The Releasing Parties shall be deemed to have agreed that the release set forth in ¶¶ 16-17 (the "Release") will be and may be raised as a complete defense to and will preclude any action or proceeding based on the Released Claims.

19.     As of the Effective Date, by operation of entry of judgment, the Released Parties shall be deemed to have fully released and forever discharged Plaintiffs, all other Class Members and Plaintiffs' Counsel from any and all claims of abuse of process, malicious prosecution, or any other claims arising out of the initiation, prosecution or resolution of the Action, including, but not limited to, claims for attorneys' fees, costs of suit or sanctions of any kind, or any claims arising out of the allocation or distribution of any of the consideration distributed pursuant to this Stipulation of Settlement.

## V.     THE SETTLEMENT FUND

### A.     Creation of Settlement Fund and Escrow Account

20.     Plaintiffs' Counsel shall direct the Claim Administrator to open an escrow account (the "Escrow Account") at the Fund Institution following Preliminary Approval and act as the escrow agent (the "Escrow Agent") for the Escrow Account.

21.     Defendant shall deposit the full amount of the Settlement Fund into the Escrow Account on or before twenty (20) business days after the later of (a) entry of the Preliminary Approval Order, or (b) Plaintiffs' Counsel providing to Defendant's counsel all information necessary to effectuate a transfer of funds, including without limitation, wiring instructions on appropriate letterhead to include the bank name and address, ABA routing number, account name and number, and a signed W-9 reflecting a valid taxpayer identification number for the qualified settlement fund in which the Escrow Account has been established.

22.     Except as provided herein or pursuant to orders of the Court, the Settlement Fund shall remain in the Escrow Account prior to the Effective Date. All funds held by the Escrow Agent shall be deemed to be in the custody of the Court and shall remain subject to the jurisdiction of the Court

until such time as the funds shall be distributed or returned pursuant to the terms of this Stipulation and/or further order of the Court. The Escrow Agent shall invest any funds in excess of amounts likely to be needed to pay for costs of Notice in United States Treasury Bills having maturities of ninety (90) days or less, or money market mutual funds comprised of investments secured by the full faith and credit of the United States Government, or an account fully insured by the United States Government Federal Deposit Insurance Corporation (FDIC). Any other funds held in escrow may be held in an interest-bearing account insured by the FDIC or money market mutual funds comprised of investments secured by the full faith and credit of the United States Government or fully insured by the United States Government. All risks related to the investment of the Settlement Fund shall be borne by the Settlement Fund.

23.     The Parties agree that the Settlement Fund is intended to be a qualified settlement fund within the meaning of Treasury Regulation § 1.468B-1 and that Plaintiffs' Counsel, as administrator of the Settlement Fund within the meaning of Treasury Regulation § 1.468B-2(k)(3), shall be responsible for filing or causing to be filed all informational and other tax returns as may be necessary or appropriate (including, without limitation, the returns described in Treasury Regulation § 1.468B-2(k)) for the Settlement Fund. Such returns shall be consistent with this paragraph and in all events shall reflect that all taxes on the income earned on the Settlement Fund shall be paid out of the Settlement Fund as provided by paragraph 24 below.   Plaintiffs' Counsel shall also be solely responsible for causing payment to be made from the Settlement Fund of any Taxes owed with respect to the Settlement Fund. Plaintiffs' Counsel shall timely make such elections as are necessary or advisable to carry out this paragraph, including, as necessary, making a "relation back election," as described in Treasury Regulation § 1.468B-1(j), to cause the qualified settlement fund to come into existence at the earliest allowable date, and shall take or cause to be taken all actions as may be necessary or appropriate in connection therewith.

24.     All Taxes shall be paid out of the Settlement Fund, and shall be timely paid without prior Order of the Court. Any tax returns prepared for the Settlement Fund (as well as the election set forth therein) shall be consistent with the previous paragraph and in all events shall reflect that all Taxes (including any interest or penalties) on the income earned by the Settlement Fund shall be paid

out of the Settlement Fund as provided herein. The Settlement Fund shall indemnify and hold Defendant harmless for any Taxes and related expenses of any kind whatsoever (including without limitation, taxes payable by reason of any such indemnification). Defendant shall notify Plaintiffs' Counsel promptly if it receives any notice of any claim for Taxes relating to the Settlement Fund.

25.     Defendant shall have no responsibility for, interest in, or liability whatsoever with respect to the maintenance, investment or distribution of the Settlement Fund, the establishment or maintenance of the Escrow Account, the terms or administration of the Plan of Allocation or of any plan of allocation, the determination, administration, or calculation of Claims, the payment or withholding of Taxes, the distribution or disbursement of the Net Settlement Fund, the administration of the Settlement, or any other expenses or losses in connection with such matters. Without limiting the foregoing, the Settlement Fund shall be the sole source of Taxes, Notice and Administration Costs, Attorneys' Fees, Costs and Expenses, and there shall be no recourse against Defendant for any such expenses.

### B. <u>Disbursements from the Settlement Fund</u>

26.     The Settlement Fund shall be applied as follows:

(a) To reimburse or pay the costs reasonably and actually incurred by the Claim Administrator in connection with providing notice to the Class in accordance with the Notice Plan to be approved by the Court.

(b) To pay Attorneys' Fees, Costs and Expenses for Plaintiffs' Counsel in amounts to be determined by the Court.

(c) To reimburse or pay the costs reasonably and actually incurred by the Claim Administrator in connection with processing and paying Claims filed pursuant to the Settlement and otherwise assisting with administration of the Agreement.

(d) To pay costs and expenses associated with maintaining the Settlement Fund, including any taxes that may be owed by the Settlement Fund.

(e) To distribute to Class Members who submit Approved Claims to the Claim Administrator;

(f) If the amounts to be paid from the Settlement Fund do not equal or exceed $3.25 million, the remainder of the Settlement Fund (the "Settlement Fund Balance") shall be distributed in accordance with the provisions of Paragraph 43.

(g) If the amount to be paid from the Settlement Fund exceeds the amount remaining in the Settlement Fund after payment of all items set forth in subparagraphs (a)-(d) of this paragraph 26, all approved Class Member claims will be reduced pro rata, based on the respective dollar amounts of the Approved Claims, until the actual dollar amount paid from the Settlement Fund for all items in subparagraphs (a)-(e) of this paragraph 26 is equal to $3.25 million.

### C. Payment of Notice Costs following Preliminary Approval

27.     Following entry of the Preliminary Approval Order, Plaintiffs' Counsel may direct that payment be made from the Escrow Account for reasonable and necessary costs of Notice in accordance with Paragraphs 46-48 without further approval from Defendant or further order of the Court. In the event that the Settlement is terminated pursuant to the terms of this Stipulation, all Notice Costs actually paid or incurred will not be returned or repaid to Defendant.

### D. Claims Administration

28.     The Claim Administrator shall administer the Settlement under Plaintiffs' Counsels' supervision in accordance with this Stipulation and subject to the jurisdiction of the Court.

29.     Class Members shall have the opportunity to submit a claim to the Claim Administrator during the Claim Submission Period. Class Members must fill out a Claim Form substantially in the form of Exhibit F and submit it as described in Exhibits C and F attached hereto.  Class Members who properly and timely submit the Claim Form may recover for purchases of up to ten (10) bottles of the Products per household without the need to submit additional proof of purchase, and for more than ten bottles if they submit adequate proofs of purchase.

30.     The claim process will be administered by a Claim Administrator according to the criteria set forth in the Plan of Allocation, and neither Plaintiffs' Counsel nor Defendant's Counsel shall participate in resolution of such claims.

31.     The Claim Administrator shall approve or reject all claims according to the claims criteria set forth in the Plan of Allocation.  The determination of claims shall occur during the Claim Review Period.  The decision of the Claim Administrator shall be final and binding on Unilever and all Class Members submitting Claims, and neither Unilever nor such Class Members shall have the right to challenge or appeal the Claim Administrator's decision.

32.     The Claim Administrator shall provide periodic reports to Plaintiffs' Counsel and Defendant's Counsel regarding the progress of the claim process.

33.     The Claim Administrator shall exercise, in his or her discretion, all usual and customary steps to prevent fraud and abuse and take any reasonable steps to prevent fraud and abuse in the claims process.  The Claim Administrator may, in his or her discretion, deny in whole or in part, any claim to prevent actual or possible fraud or abuse.

34.     Within 15 days after conclusion of the Claim Review Period, the Claim Administrator shall provide to Plaintiffs' Counsel and Defendant's Counsel a written final accounting and distribution plan identifying (a) each claimant whose claim was approved, including the dollar amount of and pro rata reduction required by ¶ 26(g) if required; (b) each claimant whose claim was rejected; (c) the dollar amount of the Net Settlement Fund to be disbursed to each recipient; and (d) a final accounting of all administration fees and expenses incurred by the Claim Administrator.  No sooner than 20 days, but not later than 45 days after delivering the Distribution Plan, the Claim Administrator shall disclose the remaining amounts in the Settlement Fund according to the Distribution Plan and mail letters to all claimants with Rejected Claims explaining the rejection.  In no event shall a Class Member's claim be paid until the conclusion of the Claim Review Period.

35.     If any distribution checks mailed to Class Members are returned as non-deliverable, or are not cashed within 90 days, or are otherwise not payable, any such funds shall be disbursed to the recipients in accordance with the provisions of Paragraph 43.

36.     The Net Settlement Fund shall be distributed to Authorized Claimants according to the Plan of Allocation or according to such other plan of allocation as the Court approves.  Unilever shall have no responsibility or liability whatsoever for allocation of the Net Settlement Fund.

37.     The allocation of the Net Settlement Fund among Authorized Claimants is a matter separate and apart from the proposed Settlement between the Settling Parties, and any decision by the Court concerning the Plan of Allocation shall not affect the validity or finality of the Settlement. Plaintiffs may not terminate the Stipulation based on the Court's or any court's ruling with respect to the Plan of Allocation or any plan of allocation in the Action.

38.     All claims must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice, unless such deadline is extended by Order of the Court; provided, however, that, with the consent of Plaintiffs' Counsel, an otherwise valid claim may be considered timely if it is submitted no later than thirty (30) days after the Court enters Judgment. Any Class Member who fails to submit a timely claim shall be forever barred from receiving any distribution from the Net Settlement Fund or payment pursuant to this Stipulation, but shall in all other respects be bound by all of the terms of this Stipulation, including the terms of the Judgment and the releases provided for herein. Any Claim submitted by a Class Member will not be deemed to bar, waive or otherwise affect that Class Member's ability to object to all or any aspect of the Settlement.

39.     All Requests for Exclusion must be submitted by the date set by the Court in the Preliminary Approval Order and specified in the Notice.

40.     Each Claimant shall be deemed to have submitted to the jurisdiction of the Court with respect to the Claimant's Claim, including, but not limited to, the releases provided for herein and in the Judgment.

41.     Payment pursuant to the Class Distribution Order shall be final and conclusive against any and all Class Members. All Class Members whose Claims are not approved by the Court shall be barred from participating in distributions from the Net Settlement Fund, but otherwise shall be bound by all of the terms of this Stipulation and the Settlement, including the terms of the Judgment and the releases provided for herein and therein.

42.     The actual and reasonable costs associated with the administration of the claim process shall be paid from the Settlement Fund as described in ¶¶ 25 and 26(c).  Such amounts shall not be refunded to Unilever in the event the settlement is terminated pursuant to ¶ 54.

43.     Any and all amounts remaining in the Settlement Fund after payment of all claims and liabilities shall be disbursed to an appropriate non-profit or civic entity agreed to by the Parties and approved by the Court for use in a manner that the Court shall determine will be an appropriate vehicle to provide the next best use of compensation to Class Members arising out of claims that have been made by Plaintiffs in this Action and as consideration for the extinguishment of those claims.

14

## VI.   CLASS CERTIFICATION FOR SETTLEMENT PURPOSES ONLY

44.     Solely for the purposes of the settlement of this Action, the Parties agree to the certification of a Class of all persons or entities in the United States who purchased the Products. Plaintiffs shall make this request for certification to the U.S. District Court for the Eastern District of California, assigned to the Honorable William B. Shubb; and Plaintiffs' Counsel shall request the Court to enter an order, which, among other things, certifies the Class for settlement purposes, as set forth in this paragraph. In the event this Stipulation of Settlement and the settlement proposed herein is not finally approved, or is terminated, canceled, or fails to become effective for any reason whatsoever, this class certification, to which the parties have stipulated solely for the purpose of the settlement of the Action, shall be null and void and the Parties will revert to their respective positions immediately prior to the execution of this Stipulation of Settlement. Under no circumstances may this Stipulation of Settlement be used as an admission or as evidence concerning the appropriateness of class certification in these or any other actions against Unilever.

## VII.  CLASS NOTICE AND COURT APPROVAL

### A.   Notice Order; Preliminary Approval

45.     Within 30 days after the execution of the Stipulation of Settlement, Plaintiffs shall apply to the Court for a Preliminary Approval Order substantially in the form and content of Exhibit B, preliminarily approving the settlement, scheduling a final approval hearing, approving the contents and method of dissemination of the proposed Publication Notice and Class Notice Package, and conditionally certifying the Class for settlement purposes as defined in ¶ 44.

### B.   The Notice Program

46.     Plaintiffs' Counsel shall arrange a notice program that consists of notice by publication (the Publication Notice, attached hereto as Exhibit C) which generally describes the settlement and directs all interested parties to a detailed Class Notice available on the Settlement Website and, at the request of interested parties, by U.S. Mail. Plaintiffs' Counsel shall also place a link to the Settlement Website on the website of Izard Nobel LLP for a period starting from the date the Publication Notice is published, and continuing no longer than the end of the Claim Submission Period. The cost

associated with the Publication Notice and Class Notice Package shall be paid from the Settlement Fund as described in ¶¶ 25 and 26(a) except those costs associated with posting and maintaining notice on Plaintiffs' Counsel's Internet website.

47.   **_Publication Notice:_**   Commencing at least 90 days before the Final Approval Hearing or some other date as set by the Court, the Claim Administrator shall cause to be published the Publication Notice substantially in the form and content of Exhibit C pursuant to the Notice Plan described in Exhibit D.

48.   **_Class Notice Package:_**   The Class Notice Package shall be available in electronic format on the Settlement Website and mailed as a hard copy by the Claim Administrator upon request. The Parties are not currently aware of any other litigation involving the same claims as the Action. However, should any of the parties become aware, within the Claim Submission Period, of pending litigation that concerns false advertising claims related to the Products, they will notify the other Parties and Defendant's Counsel shall direct the Claim Administrator to mail the Class Notice Package to counsel for the plaintiff(s) in such pending litigation. Each Class Notice Package shall contain a Class Notice substantially in the form of Exhibit E and the Claim Form substantially in the form of Exhibit F.

49.   **_Notice of Deadlines:_**   Both the Publication Notice and the Class Notice shall inform Class Members of the dates by which they must file any objections, requests for exclusions, and submit a Claim Form. Class Members will have the opportunity to submit a Claim Form during the period beginning on the date notice to the Class is first published, and continuing until 5 days after the date of the Final Approval Hearing.

50.   **_Final Approval Hearing:_**   No later than twenty-eight (28) calendar days prior to the Final Approval Hearing, and unless the Settlement has otherwise been terminated pursuant to this Stipulation, Plaintiffs shall move for (a) final approval of the Settlement pursuant to Rule 23(e) of the Federal Rules of Civil Procedure; (b) entry of a Judgment substantially in the form annexed as Exhibit G; (c) approval of the Plan of Allocation; and (d) an award of attorneys' fees, expenses and Class Representative Awards for the Plaintiffs.

51.     The Parties shall request that after notice is given, the Court hold a Final Approval Hearing for the purpose of determining whether final approval of the settlement of the Action as set forth herein is fair, adequate, and reasonable to the Class Members, and enter a Final Settlement Order and Judgment dismissing the Action with prejudice substantially in the form and content of Exhibit G.

**VIII.   CONDITIONS; TERMINATION**

52.     Within ten (10) business days of: (a) the Court's entry of an order expressly declining to enter the Preliminary Approval Order in any material respect; (b) the Court's refusal to approve this Stipulation or any material part of it; (c) the Court's declining to enter the Judgment in any material respect; or (d) the date upon which the Judgment is modified or reversed in any material respect and such modification or reversal becomes final, the Parties shall each have the right to terminate the Settlement and this Stipulation, by providing written notice to the other of an election to do so; *provided, however,* that any decision, ruling, or order solely with respect to an application for attorneys' fees, litigation costs and expenses or incentive awards, or to any plan of allocation, shall not be grounds for termination.

53.     This Settlement shall become final on the first date after which all of the following events and conditions have occurred or been waived (the "Effective Date"):

    a.  The Court has preliminarily approved this Stipulation (including all attachments), the settlement set forth herein, and the method for providing notice to the Class; the Court has entered a Final Settlement Order and Judgment in the Action; and

    b.  One of the following has occurred:

        i.  The time to appeal from such orders has expired and no appeals have been timely filed;

        ii.  If any such appeal has been filed, it has finally been resolved and the appeal has resulted in an affirmation of the Final Settlement Order and Judgment; or

        iii.  The Court, following the resolution of any such appeals, has entered a further order or orders approving the Settlement of the Action on the terms set forth in this Stipulation of Settlement, and either no further appeal has been taken from such order(s) or any such appeal has resulted in affirmation of the settlement order.

54.     If the Settlement is not made final (per the provisions of ¶ 53) this entire Stipulation shall become null and void, except that the Parties shall have the option to agree in writing to waive the event or condition and proceed with this Settlement, in which event the Stipulation of Settlement shall be deemed to have become final on the date of such written agreement.

55.     If the Settlement is not made final, any balance remaining in the Escrow Account will be returned to Defendant.

## IX.     COSTS, FEES AND EXPENSES

### A.     <u>Attorneys' Fees, Costs and Expenses</u>

56.     No later than twenty-eight (28) calendar days prior to the Final Approval Hearing, Plaintiffs' Counsel may apply to the Court for an award of attorneys' fees in an amount not to exceed thirty percent (30%) of the value of the Settlement Fund as well as for reimbursement of litigation costs and expenses actually incurred ("Attorneys' Fees, Costs and Expenses").  Unilever will not oppose Plaintiff's Counsel's application, so long as it does not ask for more than thirty percent (30%) of the Settlement Fund.  Unilever shall have no responsibility for and shall take no position with respect to the allocation among Plaintiffs' Counsel, and/or any other person or entity who may assert some claim thereto, of any award of Attorneys' Fees, Costs and Expenses that the Court may make in the Action.

57.     Attorneys' Fees, Costs and Expenses awarded by the Court shall be payable as set forth above, notwithstanding the existence of appeal therefrom, or collateral attack on the settlement or any part thereof, subject to Plaintiffs' Counsel's obligation to make appropriate refunds or repayments to Unilever, if and when, as a result of any appeal and/or further proceedings on remand, or successful collateral attack, the fee or award of expenses is reduced or reversed. Any Attorneys' Fees, Costs and Expenses that are awarded by the Court shall be paid to Plaintiffs' Counsel with the Court's approval from the Escrow Account, immediately upon award (but in no event before the entry of the Judgment), notwithstanding the existence of any timely filed objections thereto, or potential for appeal therefrom, or collateral attack on the Settlement or any part thereof; provided, however, that Plaintiffs' Counsel shall make appropriate refunds or repayments into the Escrow Account, plus accrued interest at the same net rate as is earned by the Settlement Fund, if the Settlement is terminated pursuant to the terms

of this Stipulation or if, as a result of any appeal or further proceedings on remand, or successful collateral attack, the award of Attorneys' Fees, Costs and Expenses is reduced or reversed.  Plaintiffs' Counsel shall make the appropriate refund or repayment in full no later than seven (7) business days after receiving notice of the termination of the Settlement or notice of any reduction of the award of Attorneys' Fees, Costs and Expenses.

58.     An award of Attorneys' Fees, Costs and Expenses is not a necessary term of this Stipulation and is not a condition of this Stipulation. No decision by the Court or any court on any application for an award of attorneys' fees, litigation costs or expenses shall affect the validity or finality of the Settlement.  Plaintiffs and Plaintiffs' Counsel may not cancel or terminate the Stipulation or the Settlement based on this Court's or any appellate court's ruling with respect to attorneys' fees, litigation costs or expenses, although Plaintiffs and Plaintiffs' Counsel reserve the right to appeal a ruling concerning such fees and expenses without such appeal affecting the validity of the Settlement.

59.     Plaintiffs' Counsel, in their sole discretion, shall allocate and distribute the award of Attorneys' Fees, Costs and Expenses among Plaintiffs' Counsel. In the event that any Class Members object to any aspect of this Stipulation of Settlement, under no circumstances shall Unilever shall be obligated or required to pay Attorneys' Fees, Costs and Expenses claimed by or associated with such objectors (if any).

**B.     Class Representative Awards**

60.     Plaintiffs intend to apply to the Court for discretionary Class Representative Awards for their work on behalf of the Class in this litigation.  Plaintiffs expressly recognize that their approval of this Settlement is not in any way contingent upon the Court approving their application for payment of Class Representative Awards in any amount.  Unilever agrees not to oppose Plaintiffs' application for Class Representative Awards so long as the application does not ask for Class Representative Awards in an aggregate amount that exceeds $15,000 for all Plaintiffs, and agrees further that it will pay any such Class Representative Awards, in an aggregate amount not to exceed $15,000 for all Plaintiffs, separate and apart from the $3,250,000 payment to the Settlement Fund.  Such awards shall be paid within 30 days after the Effective Date or within 30 days after the issuance of an order awarding

such amount, whichever is later. In the event that a Class Member appeals the award of Class Representative Awards, Unilever shall not take a position contrary to this Stipulation.

61.    Class Representative Awards are not a necessary term of this Stipulation and are not a condition of this Stipulation. No decision by the Court or any court on any application for Class Representative Awards shall affect the validity or finality of the Settlement.  Plaintiffs and Plaintiffs' Counsel may not cancel or terminate the Stipulation or the Settlement based on this Court's or any appellate court's ruling with respect to Class Representative Awards, although Plaintiffs reserve the right to appeal a ruling concerning Class Representative Awards without such appeal affecting the validity of the Settlement.

## X.    COVENANTS AND WARRANTIES

### A.    Authority to Enter Agreement

62.     Plaintiffs and Defendant each covenant and warrant that they have the full power and authority to enter into this Stipulation of Settlement and to carry out its terms, and that they have not previously assigned, sold, or otherwise pledged or encumbered any right, title or interest in the claims released herein or their right, power and authority to enter into this Stipulation of Settlement. Any person signing this Stipulation of Settlement on behalf of any other person or entity represents and warrants that he or she has full power and authority to do so and that said other person or entity is bound hereby.

### B.    Represented by Counsel

63.    In entering into this Stipulation of Settlement, the Parties represent they have relied upon the advice of attorneys, who are the attorneys of their own choice, concerning the legal consequences of this Stipulation of Settlement; that the terms of this Stipulation of Settlement have been explained to them by their attorneys; and that the terms of this Stipulation of Settlement are fully understood and voluntarily accepted by the Parties.

### C.    No Other Actions

64.    As of the date of executing this Stipulation, Plaintiffs and Plaintiffs' Counsel represent and warrant that they are not aware of any action or potential action other than the Action that (1) raises allegations similar to those asserted in the Action, and (2) is pending or is expected to be filed

in any forum by any person or entity against Unilever. Until the Effective Date, Plaintiffs and Plaintiffs' Counsel shall have a continuing duty to notify Defendant's Counsel if Plaintiffs or Plaintiffs' Counsel become aware of any such action.

## XI.    MISCELLANEOUS

### A.    Governing Law

65.    The interpretation and construction of this Stipulation of Settlement shall be governed by the laws of the State of California.

### B.  Counterparts

66.    This Stipulation of Settlement may be executed in counterparts. All counterparts so executed shall constitute one agreement binding on all of the Parties hereto, notwithstanding that all Parties are not signatories to the original or the same counterpart.

### C.    No Drafting Party

67.    Any statute or rule of construction stating that ambiguities are to be resolved against the drafting party shall not be employed in the interpretation of this Stipulation of Settlement, and the Parties agree that the drafting of this Stipulation has been a mutual undertaking.

### D.    Entire Agreement

68.    This Stipulation and its exhibits constitute the entire agreement among the Parties concerning this Settlement, and no representations, warranties or inducements have been made by any Settling Party concerning this Settlement or the Action other than those contained and memorialized in this Stipulation and the exhibits hereto. Without limiting the foregoing, Unilever and Plaintiffs each expressly acknowledge that in entering into the Settlement they are relying solely on their own investigation and analysis, and are not relying on any statements or representations made, or information provided, by the other Party (whether in connection with the negotiation of the Settlement or otherwise) other than those expressly set forth in this Stipulation.  All of the following exhibits attached hereto are hereby incorporated by reference as though fully set forth herein:

**Exhibit A**: Plan of Allocation

**Exhibit B**: Preliminary Approval Order

**Exhibit C**: Publication Notice

**Exhibit D**: Notice Plan

**Exhibit E**: Class Notice

**Exhibit F**: Claim Form

**Exhibit G**: Judgment & Final Approval Order

**E.**     **Good Faith**

69.     The Parties agree not to assert in any forum that the Action was brought by Plaintiffs or Plaintiffs' Counsel, or defended by Unilever or Unilever's Counsel, in bad faith or without a reasonable basis. The Parties agree that the amount paid and the other terms of this Settlement were negotiated at arm's length and in good faith and reflect a settlement that was reached voluntarily after consultation with experienced legal counsel. The Parties shall assert no claims of any violation of Rule 11 of the Federal Rules of Civil Procedure, or any other law or rule governing litigation conduct, relating to the maintenance, defense or settlement of the Action.

**F.**     **Headings**

70.     The headings herein are used for the purpose of convenience only and are not meant to have legal effect.

**G.**     **Stay of Litigation**

71.     The parties stipulate and agree, subject to the Court's approval, that all litigation activity in the Action, except that contemplated herein and in the Preliminary Approval Order, the Notice, and the Judgment, shall be stayed, and all hearings, deadlines, and, other proceedings in the Action, except a preliminary approval hearing (if any) and the Final Approval Hearing, shall be taken off calendar.

**H.**     **Retained Jurisdiction**

72.     The Court shall retain jurisdiction with respect to the implementation and enforcement of the terms of this Stipulation, and all Parties hereto submit to the jurisdiction of the Court for purposes of implementing and enforcing the settlement embodied in this Stipulation.

**I.**     **Cooperation**

73.     Each of the Parties hereto shall execute such additional pleadings and other documents and take such additional actions as are reasonably necessary to effectuate the purposes of this Stipulation of Settlement.

**J.    Amendments in Writing**

74.    This Stipulation of Settlement may only be amended in writing signed by Plaintiffs' Counsel and Defendant's Counsel.

**K.    Binding Effect; Successors and Assigns**

75.    This Stipulation of Settlement shall inure to the benefit of, and shall be binding upon, the Parties hereto as well as the legal successors and assigns of the Parties hereto and each of them.

**L.    Construction**

76.    As used in this Stipulation of Settlement, the terms "herein" and "hereof" shall refer to this Stipulation in its entirety, including all exhibits and attachments, and not limited to any specific sections. Whenever appropriate in this Stipulation of Settlement, the singular shall be deemed to refer to the plural, and the plural to the singular, and pronouns of any gender shall be deemed to include both genders.

**M.    Waiver in Writing**

77.    No waiver of any right under this Stipulation of Settlement shall be valid unless in writing. Any condition in this Stipulation may be waived by the party entitled to enforce the condition in a writing signed by that party or its counsel.  The waiver by any party of any breach of this Stipulation by any other party shall not be deemed a waiver of the breach by any other party, or a waiver of any other prior or subsequent breach of this Stipulation by that party or any other party. Without further order of the Court, the parties may agree to reasonable extensions of time to carry out any of the provisions of this Stipulation.

**N.    Computation of Time**

78.    All time periods set forth herein shall be computed in business days, if seven days or fewer, and calendar days, if eight days or more, unless otherwise expressly provided. In computing any period of time prescribed or allowed by this Stipulation or by order of the Court, the day of the act, event or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included, unless it is a Saturday, a Sunday, or a legal or court holiday, or, when the act to be done is the filing of a paper in Court, a day in which weather or other conditions have made the office of the clerk of the Court inaccessible, in which event the period

23

shall run until the end of the next day as not one of the aforementioned days. As used in this subsection, "legal or court holiday" includes New Year's Day, Martin Luther King Day, Presidents' Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veterans Day, Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the President or the Congress of the United States or by the State of California.

### O.   No Admission of Liability

79.   Whether or not the Settlement is approved by the Court, and whether or not the Settlement is consummated, the fact and terms of this Stipulation, including exhibits, all negotiations, discussions, drafts and proceedings in connection with the Settlement, and any act performed or document signed in connection with the Settlement:

> (a) shall not be admissible in any action or proceeding for any reason, other than an action to enforce the terms hereof; and

> (b) is not, and shall not be deemed, described, construed, offered or received as evidence of any presumption, concession, or admission by any person or entity of the truth of any fact alleged in the Action; the validity or invalidity of any claim or defense that was or could have been asserted in the Action or in any litigation; the amount of damages, if any, that would have been recoverable in the Action; or any liability, negligence, fault, or wrongdoing of any person or entity.

### P.   Notice

80.   Any notice to the Parties required by this Stipulation of Settlement shall be given in writing by certified mail, return receipt requested to:

Mark P. Kindall
**IZARD NOBEL LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290

Jay P. Lefkowitz, P.C.
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, N.Y. 10022

Clerk of Court
Eastern District of California
Robert T. Matsui United States Courthouse
501 I Street
Sacramento, 95814

**Q.**  **CAFA Notice**

81.    The Class Action Fairness Act of 2005 ("CAFA") requires Unilever to inform certain federal and state officials about this Settlement.  *See* 28 U.S.C. § 1715.1.  The Parties will direct the Claim Administrator, on behalf of Unilever, to serve notice upon the appropriate officials within ten (10) calendar days after the Parties file the proposed Settlement with the Court in accordance with 28 U.S.C. § 1715(b).

**R.**  **Confidentiality**

82.    The Stipulated Protective Order ordered by the Court on October 7, 2014 [ECF No. 41] shall continue in effect after the Effective Date. Without limiting the forgoing, Plaintiffs and their Counsel agree (a) not to disclose to a non-party any "Confidential" information learned from Unilever during the course of discovery in this Action; (b) not to use any information learned from Unilever during discovery in this action in any other litigation or proceeding; and (c) to destroy documents designated as "Confidential" in accordance with the Confidentiality Stipulation and Protective Order.

IN WITNESS WHEREOF, the parties have executed this Stipulation of Settlement as of the dates set forth below.

**On behalf of Plaintiffs Lainie Cohen, Alba Morales, Linda Clayman and Kenneth Drew:**

DATED: May _27_, 2016

Mark P. Kindall
IZARD NOBEL LLP
29 South Main Street, Suite 350
West Hartford, CT 06107

*Counsel for Plaintiffs*

**On behalf of Defendant Conopco, Inc. d/b/a Unilever:**

DATED: May _27_, 2016

Jay P. Lefkowitz, P.C.
Ross L. Weiner
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022

*Counsel for Defendant*

# EXHIBIT A

## PLAN OF ALLOCATION

The Net Settlement Fund[1] will be distributed to Authorized Claimants who timely file a Claim Form.  Each Authorized Claimant will receive a maximum of five (5) dollars for each bottle of any of the Products purchased, subject to the following limitations:

1. Authorized Claimants may recover for purchases of up to ten (10) bottles of the Products ***per household*** by submitting a Claim Form that attests to their purchases, without the need to submit additional proof of purchase.  If multiple claims are filed per household that exceed this maximum, the first claim or group of claims received that reach this maximum will receive payment for that household.

2. Authorized Claimants may recover for the purchase of more than ten (10) bottles of the Products per household if they submit adequate proof of a greater number of purchases along with their Claim Forms.  Valid proof will be receipts or printed statements from store loyalty programs showing the location, date, quantity and cost of purchase of each Product.  The Claim Administrator will review the validity of the proof to ensure the purchases are eligible per the class definition.  If the supporting documentation is deemed valid, the Claim Administrator will also check to ensure the same proof is not being utilized by additional Claimants.

3. The Claim Administrator shall approve or reject all claims according to the criteria set forth above.  The Claim Administrator's determination shall be final and binding on Unilever and all Class Members submitting Claims, and neither Unilever nor such Class Members shall have the right to challenge or appeal the Claim Administrator's decision.

4. The actual amount available for each Authorized Claimant, whether or not proof of purchase is submitted with a Claim Form, will not be determined until after the Settlement has become final and all Claims Forms have been received and processed.  When the Claim Administrator has completed its review of all timely-filed Claims, the Claim Administrator will apportion the Net Settlement Fund among Approved Claimants on the following basis, and pay each Approved Claim accordingly.

   a. If the aggregate amount of all Approved Claims is ***less than or equal to*** the total amount of the Net Settlement Fund, the Claim Administrator shall pay each Approved Claim at the full value the Claim Administrator has approved (*i.e.* $5 per bottle, subject to the limitations described above).

   b. If the aggregate amount of all Approved Claims is ***greater than*** the total amount of the Net Settlement Fund, the Claim Administrator shall reduce all Approved Claims *pro rata* until they are equal to the total amount of the Net Settlement fund.

5. All checks issued to Authorized Claimants must be cashed within ninety (90) days.

6. If any funds remain in the Settlement Fund after 90 days have passed from the time that the Claim Administrator issues the last check to an Authorized Claimant, the remainder of the Fund shall be distributed to an appropriate non-profit or civic entity agreed to by the Parties and approved by the Court for use in a manner that the Court shall determine

---

[1] Capitalized terms are defined in the Settlement Agreement.

will be an appropriate vehicle to provide the next best use of compensation to Class Members arising out of claims that have been made by Plaintiffs in this Action and as consideration for the extinguishment of those claims, in accordance with the terms of the Settlement.  No remaining funds will be returned to Defendant.

---

### *Illustrations*

The following illustration shows what six hypothetical claimants, Alana, Bob, Charlene, Dylan, Eileen and Fernando would receive, depending on how many purchases of Products meeting the criteria set out in Paragraph 1 and 2 above were made by Approved Claimants.

- Alana's household purchased four bottles of TRESemmé Naturals Radiant Volume Shampoo.  All four purchases would qualify, regardless of whether she submits any proof of purchase.

- Bob's household purchased eight bottles of TRESemmé Naturals Nourishing Moisture Shampoo and eight bottles of TRESemmé Naturals Nourishing Moisture Conditioner, but Bob did not submit any proof of purchase.  Ten of the 16 total purchases would qualify.

- Charlene's household purchased 16 bottles of the Products, but she only submitted valid proofs of purchase for two bottles of each of the six different Products, covering a total of 12 purchases.  Twelve of Charlene's 16 purchases would qualify.

- Dylan's household purchased two bottles of each of the six Products (for a total of 12 purchases), and he submitted proof of purchase for all 12, but four of the proofs of purchase did not contain information as to quantity, cost or date of purchase. Ten of the 12 purchases would qualify (because, while only eight of Dylan's proofs of purchase meet the requirements of paragraph 2, 10 of the 12 purchases are reimbursable under paragraph 1).

- Eileen submitted a Claim Form showing four purchases of TRESemmé Naturals Vibrantly Smooth Shampoo and four purchases of TRESemmé Naturals Vibrantly Smooth Conditioner, for a total of eight purchases.  Fernando submitted a Claim Form for four purchases of TRESemmé Naturals Radiant Volume Shampoo and four purchases of TRESemmé Naturals Radiant Volume Conditioner, also for a total of eight purchases.  Neither Eileen nor Fernando submitted any proofs of purchase.  Upon review, the Claim Administrator determines that Eileen and Fernando are in the same household.  Eileen submitted her claim first.  Eileen's eight purchases would qualify and two of Fernando's would as well.

If the total value of the Net Settlement Fund for distribution was $2,000,000, and the Claim Administrator approved claims on the purchase of fewer than 400,000 Products in total, Alana would receive $20, Charlene would receive $60, Fernando would receive $10, and Bob, Dylan and Eileen would each receive $50.  On the other hand, if the total value of the Net Settlement Fund for distribution was $2,000,000, and the Claim Administrator approved claims on the purchase of 1,000,000 Products in total, Alana would receive $8, Charlene would receive $24, Fernando would receive $4, and Bob, Dylan and Eileen would each receive $20.

# EXHIBIT B

1

2 UNITED STATES DISTRICT COURT

3 EASTERN DISTRICT OF CALIFORNIA

4

5 | | Case No. 2:13-cv-02213-WBS

6 LAINIE COHEN, ALBA MORALES, LINDA | **[PROPOSED] ORDER**
CLAYMAN and KENNETH DREW, on behalf of | **PRELIMINARILY APPROVING CLASS**

7 themselves and all others similarly situated, | **ACTION SETTLEMENT,**
 | **CONDITIONALLY CERTIFYING THE**

8 Plaintiffs, | **CLASS, PROVIDING FOR NOTICE**
 | **AND SCHEDULING ORDER**

9 v. |

10 CONOPCO, INC. D/B/A UNILEVER, |

11 Defendant. |

12

13

14

15 WHEREAS, Plaintiffs in the action *Morales, et al. v. Conopco, Inc.*, filed on October 10,

16 2013, in the U.S. District Court for the Eastern District of California and assigned Case No. 2:13-

17 cv-02213, and Defendant Conopco, Inc. d/b/a Unilever have entered into a Stipulation of

18 Settlement, filed May 27, 2016 after arm's-length settlement discussions (the "Settlement" or

19 "Stipulation");

20 AND, WHEREAS, the Court has received and considered the Stipulation, including the

21 accompanying exhibits;

22 AND, WHEREAS, the Parties have made an application for an order preliminarily

23 approving the settlement of this Action, and for its dismissal with prejudice upon the terms and

24 conditions set forth in the Stipulation;

25 AND, WHEREAS, the Court has reviewed the Parties' application for such order, and has

26 found good cause for same.

27 NOW, THEREFORE, IT IS HEREBY ORDERED:

28

1

**[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT,
CONDITIONALLY CERTIFYING THE CLASS, PROVIDING FOR NOTICE AND SCHEDULING ORDER**

1

2

A.  **The Class Is Provisionally Certified**

3

      1.      Pursuant to Federal Rule of Civil Procedure 23, and for settlement purposes only, the Court hereby provisionally certifies the following Class:[1]

4

5

> All individuals in the United States who purchased the following TRESemmé Naturals products: (a) Nourishing Moisture Shampoo; (b) Nourishing Moisture Conditioner; (c) Radiant Volume Shampoo; (d) Radiant Volume Conditioner (e) Vibrantly Smooth Shampoo; and (f) Vibrantly Smooth Conditioner (collectively, the "Products"). Specifically excluded from the Class are (1) Defendant, (2) the officers, directors, or employees of Defendant and their immediate family members, (3) any entity in which Defendant has a controlling interest, (4) any affiliate, legal representative, heir, or assign of Defendant, (5) all federal court judges who have presided over this Action and their immediate family members, (6) all persons who submit a valid request for exclusion from the Class and (7) those who purchased the Products for the purpose of resale.

6

7

8

9

10

11

12

      2.      With respect to the Class and for settlement purposes only, the Court preliminarily finds the prerequisites for a class action under Federal Rules of Civil Procedure 23(a) and (b)(3) have been met, including: (a) numerosity; (b) commonality; (c) typicality; (d) adequacy of the class representatives and Class Counsel; (e) predominance of common questions of fact and law among the Class; and (f) superiority.  Provisional certification of a Class pursuant to the terms of the Settlement shall not constitute and does not constitute, and shall not be construed or used as, an admission, concession, or declaration by or against Defendant that (except for the purposes of the Settlement) this action or any other action is appropriate for class treatment under Fed. R. Civ. P. 23, or any similar federal or state class action statute or rule, for litigation purposes.

13

14

15

16

17

18

19

20

21

      3.      Pursuant to Federal Rule of Civil Procedure 23, the Court hereby appoints the Plaintiffs in the Action Alba Morales, Lainie Cohen, Linda Clayman and Kenneth Drew, as class representatives.

22

23

24

_____

25

26

[1] All capitalized terms in this Order shall have the same meaning as the defined terms in the Stipulation.

27

2

28

**[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, CONDITIONALLY CERTIFYING THE CLASS, PROVIDING FOR NOTICE AND SCHEDULING ORDER**

4.      Having considered the factors set forth in Federal Rule of Civil Procedure 23(g)(1), the Court hereby appoints the law firm of Izard Nobel LLP as class counsel and the law firm of Bramson, Plutzik, Mahler & Birkhaeuser, LLP as liaison counsel for the Class.

**B.   The Settlement Is Preliminarily Approved and Final Approval Schedule Set**

5.      The Court preliminarily finds that (a) the proposed Settlement resulted from extensive arm's-length negotiations with the assistance of an experienced mediator, (b) the Settlement was executed only after Class Counsel had conducted appropriate investigation and discovery regarding the strengths and weaknesses of Plaintiffs' claims, (c) Class Counsel have concluded that the proposed Settlement is fair, reasonable, and adequate, and (d) the proposed Settlement is sufficiently fair, reasonable, and adequate to warrant sending notice of the proposed Settlement to the Class. Having considered the essential terms of the Settlement under the recommended standards for preliminary approval of settlements as set forth in relevant jurisprudence, the Court finds that those whose claims would be settled, compromised, dismissed, and/or released pursuant to the Settlement should be given notice and an opportunity to be heard regarding final approval of the Settlement and other matters.  Accordingly, the Court preliminarily approves the Stipulation and the terms and conditions of settlement set forth therein, subject to further consideration at the Final Approval Hearing described below.

Pursuant to Federal Rule of Civil Procedure 23(e), the Court will hold a Final Approval Hearing on _____, at _____ a.m./p.m., at the Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, CA, in the Courtroom of the Honorable William B. Shubb, for the following purposes:

    a.   making a final determination as to whether the Class meets all applicable requirements of Federal Rule of Civil Procedure 23 and, thus, the Class should be certified for purposes of effectuating the Settlement;

    b.   making a final determination as to whether Plaintiffs should be appointed Class Representatives, Izard Nobel LLP should be appointed as class counsel under Rule 23(g) and Bramson, Plutzik, Mahler & Birkhaeuser, LLP as liaison counsel for the Class;

3

**[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, CONDITIONALLY CERTIFYING THE CLASS, PROVIDING FOR NOTICE AND SCHEDULING ORDER**

c.   making a final determination as to whether Notice provided in accordance with the Notice Plan and preliminarily approved herein (a) constitutes the best practicable notice; (b) constitutes notice reasonably calculated, under the circumstances, to apprise members of the Class of the pendency of the litigation, their right to object to the Settlement, and their right to appear at the Final Approval Hearing; (c) is reasonable and constitutes due, adequate and sufficient notice to all persons entitled to notice; and (d) meets all applicable requirements of the Federal Rules of Civil Procedure and any other applicable law;

d.   making a final determination as to whether the proposed Settlement of the Action on the terms and conditions provided for in the Settlement is fair, reasonable and adequate and should be approved by the Court;

e.   making a final determination as to whether the proposed Plan of Allocation should be approved;

f.   considering the application of Class Counsel for an award of attorneys' fees and reimbursement of expenses, as provided for under the Stipulation;

g.   considering the applications of Plaintiffs for class representative incentive awards, as provided for under the Stipulation;

h.   considering whether the Court should enter the [Proposed] Final Settlement, Order and Judgment;

i.   considering whether the release of the Released Claims as set forth in the Stipulation should be provided; and

j.   ruling upon such other matters as the Court may deem just and appropriate.

6.   The Court may adjourn the Final Approval Hearing and later reconvene such hearing without further notice to Class Members.

7.   The Parties may further modify the Stipulation prior to the Final Approval Hearing so long as such modifications do not materially change the terms of the Settlement provided thereunder. The Court may approve the Stipulation with such modifications as may be agreed to by the Parties, if appropriate, without further notice to Class Members.

8.   All papers in support of the Settlement and any application for an award of Attorneys' Fees, Costs and Expenses and/or Class Representative Awards must be filed with the Court and served at least thirty-five (35) days prior to the Final Approval Hearing.

**[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, CONDITIONALLY CERTIFYING THE CLASS, PROVIDING FOR NOTICE AND SCHEDULING ORDER**

**C.  The Court Approves the Form and Method of Class Notice**

9.      The Court approves, as to form and content, the proposed Publication Notice and Class Notice (collectively the "Notice"), which are Exhibits C and E, respectively, to the Stipulation.

10.      The Court finds that the proposed Publication Notice and Class Notice fairly and adequately: (a) describe the terms and effects of the Settlement and the Plan of Allocation; (b) notify the Class that Class Counsel will seek Attorneys' Fees, Costs and Expenses from the Settlement Fund; (c) notify the Class that the four (4) Named Plaintiffs will request that the Court approve Class Representative Awards, not to exceed a total amount of $15,000 for all Class Representatives, for their services in such capacity, to be paid by Defendant separate and apart from Defendant's payment of $3.25 million to the Settlement Fund; (d) give notice to the Class of the time and place of the Final Approval Hearing; and (d) describe how the recipients of the Class Notice may object to any of the relief requested, opt out of the Settlement, and/or file claims.

11.      The Court finds that the distribution of Notice substantially in the manner and form set forth in the Notice Plan attached to the Stipulation as Exhibit D meets the requirements of Federal Rule of Civil Procedure 23 and due process, is the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons entitled thereto.

12.      The Court approves the designation of KCC Class Action Services LLC to serve as the Court-appointed Claim Administrator for the Settlement. The Claim Administrator shall cause the Publication Notice to be published, disseminate Class Notice, and supervise and carry out the notice procedure, the processing of claims, and other administrative functions, and shall respond to Class Member inquiries, as set forth in the Stipulation and this Order under the direction and supervision of the Court.

13.      The Court directs the Claim Administrator to establish a Settlement Website, on which it will make available copies of this Order, Class Notice, Claim Forms (that may be downloaded and submitted online, by mail, or by facsimile), the Stipulation and all Exhibits

**[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, CONDITIONALLY CERTIFYING THE CLASS, PROVIDING FOR NOTICE AND SCHEDULING ORDER**

thereto.  The Settlement Website will list a toll-free hotline, as well as other information that may be of assistance to Class Members or required under the Stipulation.  The Class Notice and Claim Forms shall be made available to Class Members through the Settlement Website on the date notice is first published and continuously thereafter through the Effective Date (and on the websites of Class Counsel at their options during the same period).

14.     The Claim Administrator is ordered to complete publication of the Publication Notice on or about ninety (90) days before the Final Approval Hearing.

15.     The costs of Notice, processing of Class Members' claims, creating and maintaining the Settlement Website, and all other Claim Administrator and Notice expenses shall be paid from the Settlement Fund in accordance with the applicable provisions of the Stipulation. In the event that the Settlement is not finally approved, or is terminated pursuant to the terms of this Stipulation, all Notice Costs actually paid or incurred will not be returned or repaid to Defendant.

**D.  Procedure for Class Members to Participate in the Settlement**

16.     The Court approves the Parties' proposed Claim Form.  Any Class Member who wishes to participate in the Settlement shall complete a Claim Form in accordance with the instructions contained therein and submit it to the Claim Administrator no later than five (5) days after the date of the Final Approval Hearing, which date will be specifically identified in the Claim Form.  Such deadline may be further extended without notice to the Class by written agreement of the Parties.

17.     The Claim Administrator shall have the authority to accept or reject claims in accordance with the Stipulation, including the Claims Administration Protocols.

18.     Any Class Member may enter an appearance in the Action, at his or her own expense, individually or through counsel who is qualified to appear in the jurisdiction.  All Class Members who do not enter an appearance will be represented by Class Counsel.

**[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, CONDITIONALLY CERTIFYING THE CLASS, PROVIDING FOR NOTICE AND SCHEDULING ORDER**

**E.  Procedure for Requesting Exclusion from the Class**

19.      All Class Members who do not timely exclude themselves from the Class shall be bound by all determinations and judgments in the Action concerning the Settlement, whether favorable or unfavorable to the Class.

20.      Any person or entity falling within the definition of the Class may, upon his, her or its request, be excluded from the Class.  Any such person or entity must submit a request for exclusion to the Clerk of the Court c/o the Class Action Administrator, postmarked or delivered no later than twenty-one (21) days prior to the date of the Final Approval Hearing, the date for which will be specifically identified in the Publication Notice and Class Notice.  Requests for exclusion purportedly filed on behalf of groups of persons/or entities are prohibited and will be deemed to be void.

21.      Any Class Member who does not send a signed request for exclusion postmarked or delivered on or before the time period described above will be deemed to be a Class Member for all purposes and will be bound by all judgments and further orders of this Court related to the Settlement of this Action and by the terms of the Settlement, if finally approved by the Court.  The written request for exclusion must request exclusion from the Class, must be signed by the potential Class Member and include a statement indicating that the person or entity is a member of the Class.  All persons or entities who submit valid and timely requests for exclusion in the manner set forth in the Stipulation shall have no rights under the Stipulation and shall not be bound by the Stipulation or the Final Judgment and Order.

22.      A list reflecting all requests for exclusions shall be filed with the Court by the parties at or before the Final Approval Hearing.

**F.      Procedure for Objecting to the Settlement**

23.      Any Class Member who desires to object either to the Settlement, application for attorneys' fees and expenses, or Class Representative Awards must timely file with the Clerk of this Court and timely serve on the Parties' counsel by hand or first-class mail a notice of the

**[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, CONDITIONALLY CERTIFYING THE CLASS, PROVIDING FOR NOTICE AND SCHEDULING ORDER**

objection(s) and the grounds for such objections, together with all papers that the Class Member

desires to submit to the Court no later than twenty-one (21)  days prior to the date of the Final

Approval Hearing, the date for which will be specifically identified in the Publication Notice and

Class Notice.  The Court will consider such objection(s) and papers only if such papers are timely

received by the Clerk of the Court and by Class Counsel and by Defendant's Counsel.  Such papers

must be sent to each of the following persons:

> Mark P. Kindall
> **IZARD NOBEL LLP**
> 29 South Main Street, Suite 305
> West Hartford, CT 06107
> Telephone: (860) 493-6292
> Facsimile: (860) 493-6290
>
> Jay P. Lefkowitz, P.C.
> **KIRKLAND & ELLIS LLP**
> 601 Lexington Avenue
> New York, N.Y. 10022
>
> Clerk of Court
> Eastern District of California
> Robert T. Matsui United States Courthouse
> 501 I Street
> Sacramento, 95814

24.     All objections must include the name, address, and telephone number of the

objecting Class Member, an affirmation that they purchased one of the Products, and the

submitting party's signature.  All objections must also include a reference to *Morales, et al. v.*

*Conopco, Inc. d/b/a Unilever*, No. 2:13-cv-02213 (E.D. Cal.). Each Class Member submitting an

objection must state whether he or she (or his or her attorney) intends to appear at the Final

Approval Hearing.

25.     Attendance at the Final Approval Hearing is not necessary; however, any Class

Member wishing to be heard orally with respect to approval of the Settlement, the applications for

attorneys' fees and reimbursement of expenses, or the application for Class Representative Awards

are required to provide written notice of their intention to appear at the Final Approval Hearing no

later than twenty-one (21) days prior to the date of the Final Approval Hearing, which date will be

**[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT,
CONDITIONALLY CERTIFYING THE CLASS, PROVIDING FOR NOTICE AND SCHEDULING ORDER**

specifically identified in the Class Notice.  Class Members who do not oppose the Settlement, the applications for attorneys' fees and expenses, or class representative incentive awards need not take any action to indicate their approval.  A Class Member's failure to submit a written objection in accordance with the procedure set forth in the Class Notice waives any right the Class Member may have to object to the Settlement, attorneys' fees and expenses, or class representative incentive awards, to appear at the Final Approval Hearing, or to appeal or seek other review of the Final Judgment and Order.


IT IS SO ORDERED.

    DATED: _____        _____

                                          The Honorable William B. Shubb
                                          United States District Court Judge

---

9

**[PROPOSED] ORDER PRELIMINARILY APPROVING CLASS ACTION SETTLEMENT, CONDITIONALLY CERTIFYING THE CLASS, PROVIDING FOR NOTICE AND SCHEDULING ORDER**

# EXHIBIT C

<u>LEGAL NOTICE</u>

# If you Purchased TRESemmé Naturals brand Shampoo or Conditioner You May be Entitled to Cash from a Class Action Settlement

A proposed settlement has been reached in a class action lawsuit about the packaging of TRESemmé Naturals brand shampoo and conditioner products. The plaintiffs in the lawsuit claim that these products falsely claimed they were natural. Conopco, Inc. d/b/a Unilever, the company that makes these products, denies all the plaintiffs' allegations and is entering into this settlement to avoid burdensome and costly litigation. The settlement is not an admission of wrongdoing.

**Am I a Class Member?** You may be a Class Member if you bought at least one of the following TRESemmé Naturals brand products: (a) Nourishing Moisture Shampoo; (b) Nourishing Moisture Conditioner; (c) Radiant Volume Shampoo; (d) Radiant Volume Conditioner (e) Vibrantly Smooth Shampoo; and (f) Vibrantly Smooth Conditioner.

**What Can I Get From the Settlement?** A fund of $3.25 million will be created to pay Class Members for a portion of the cost of products they purchased and to pay for attorneys' fees (up to $975,000 plus expenses) and notice and claim administration costs. The TRESemmé Naturals line has been discontinued as a result of this litigation.

If you are a Class Member, you may return a Claim Form to receive a partial refund for each purchase.

**What are My Options?** To ask for a cash payment and stay in the Class, you must submit a Claim Form by [**month day, 2016**]. If you do not wish to participate in the settlement, you may exclude yourself from the Class by [**month day, 2016**]. If you exclude yourself, you can't get money from this settlement if it is approved. If you wish to object to the settlement, you must stay in the Class and object to it by [**month day, 2016**]. This is only a summary. Visit the website for important information about these options.

A Court authorized this notice. Before any money is paid, the Court will have a hearing on [**month day, 2016**] to decide whether to approve the settlement and Class Counsel's request for attorney fees and expenses. The motion(s) by Class Counsel for attorneys' fees will be available for viewing on the settlement website after they are filed. You don't have to attend the hearing.

---

**CLAIM FORMS MUST BE RETURNED BY [MONTH DAY, 2016]**

**QUESTIONS? VISIT [WEBSITE] OR CALL 1-800-XXX-XXXX**

---

# EXHIBIT D



**Legal Notification Services**

---

# Settlement Notice Plan

## *Morales, et al.*

## *v. Conopco, Inc. d/b/a Unilever*

## Case No. 2:13-cv-02213-WBS-EFB

United States District Court

Eastern District of California

**Prepared: May 27, 2016**

---

© 2016 KCC LLC
Proprietary and Confidential

# Table of Contents

Page

Media Terms .................................................................................................................3

Media Resources ..........................................................................................................4

Program Overview .........................................................................................................5

Notice Schedule ............................................................................................................7

Target Analysis .............................................................................................................8

Media Selection ..........................................................................................................10

Consumer Magazine ...................................................................................................11

Internet Banners .........................................................................................................12

CLRA Newspaper .......................................................................................................13

Response Mechanisms ...............................................................................................14

# Media Terms

The following provides the meaning of media terms highlighted throughout the Notice Plan:

**Audience:** Net number of persons or different persons exposed to a media vehicle. It is larger than a publication's circulation because it includes pass-along readers who may obtain the publication second hand (*e.g.*, from a reception room, neighbor, friend).

**Circulation:** Total number of publication copies sold through all channels of distribution (*e.g.*, subscriptions, newsstand, bulk).

**Frequency:** Estimated average number of times a population group is exposed to a media vehicle or combination of media vehicles containing a notice within a given period of time.

**Impressions or Exposures:** Total number of opportunities to be exposed to a media vehicle or combination of media vehicles containing a notice. It is a gross or cumulative number that may include the same person more than once. Impressions can exceed the population size.

**Reach or Coverage:** Net percentage of a specific population group exposed to a media vehicle or a combination of media vehicles containing a notice at least once within a given period of time. Reach factors out duplication, representing the total different/net persons.

**Selectivity Index:** Shows the concentration of a specific population group relative to the general adult population. For example, a publication selectivity index of 175 among men indicates that the publication's readers are 75% more likely to be men as compared to the general adult population.

# Media Resources

The resources we use to quantify our plan approach include the same resources used by media professionals to guide the billions of dollars of advertising we see today:

**Alliance for Audited Media (AAM)**

AAM is a nonprofit organization that connects North America's leading media companies, advertisers and ad agencies. Founded in 1914 as the Audit Bureau of Circulations, the AAM is the preeminent source of cross-media verification and information services, providing standards, audit services and data critical to the advertising industry. The organization independently verifies print and digital circulation, mobile apps, website analytics, social media, technology platforms and audience information for newspapers, magazines and digital media companies in the U.S. and Canada.

**GfK Mediamark Research & Intelligence, LLC (MRI)**

MRI is a nationally accredited research firm that provides consumer demographics, product and brand usage, and audience/exposure in all forms of advertising media. Established in 1979, MRI measures the usage of nearly 6,000 product and service brands across 550 categories, along with the readership of hundreds of magazines and newspapers, internet usage, television viewership, national and local radio listening, yellow page usage, and out-of-home exposure. Based on a yearly face-to-face interview of 26,000 consumers in their homes, MRI's *Survey of the American Consumer*™ is the primary source of audience data for the U.S. consumer magazine industry and the most comprehensive and reliable source of multi-media audience data available.

**Telmar**

Telmar is the world-leading supplier of computer based advertising media information services. Its software provides for survey analysis, data integration, media planning and optimization. With over 5,000 users in 85 countries, Telmar's clients include many of the world's leading advertising agencies, publishers, broadcasters and advertisers.

## Program Overview

**Objective**

To design a notice program that will effectively reach Class members and capture their attention with notices communicated in clear, concise, plain language so that their rights and options may be fully understood. The FJC's *Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide* considers 70-95% reach among class members reasonable.

**Class Definition**

The "Class" (or "Class Members") includes all individuals in the United States who purchased the following TRESemmé Naturals products: (a) Nourishing Moisture Shampoo; (b) Nourishing Moisture Conditioner; (c) Radiant Volume Shampoo; (d) Radiant Volume Conditioner; (e) Vibrantly Smooth Shampoo; and (f) Vibrantly Smooth Conditioner (collectively, the "Challenged Products"). Specifically excluded from the Class are (1) Defendant, (2) the officers, directors, or employees of Defendant and their immediate family members, (3) any entity in which Defendant has a controlling interest, (4) any affiliate, legal representative, heir, or assign of Defendant, (5) all federal court judges who have presided over this Action and their immediate family members, (6) all persons who submit a valid request for exclusion from the Class and (7) those who purchased the Challenged Products for the purpose of resale.

**Case Analysis**

The Plaintiffs allege violations of California's Unfair Competition Law (UCL), California's Consumer Legal Remedies Act (CLRA), Massachusetts's Consumer Protection Act, and various other state consumer protection laws, all which were related to the labeling, advertising, and marketing of Defendant Unilever's "TRESemmé Naturals" line of products.

Defendant Unilever has discontinued producing the Challenged Products. Additionally, under the proposed settlement, eligible Class Members who properly and timely submit a Claim Form are eligible to receive compensation for each of the Products purchased.

The following known factors were considered when determining our recommendation:
1. Class Members are located throughout the U.S., including large cities and rural areas.
2. Class Members are unknown; therefore, Class Members must be reached through a consumer media campaign.
3. The class action alleges violations of California's CLRA; therefore, CLRA notice requirements must be fulfilled.
4. Effective reach and notice content is vital to convey the importance of the information affecting Class Members' rights, as well as to withstand challenge and collateral review.

**Target Audience**

MRI data does not separately analyze the TRESemmé Naturals product line; therefore, to verify the program's effectiveness, MRI data was studied among adults who use TRESemmé shampoo or hair conditioner at home and who buy natural products because they are concerned about their health and their family's ("TRESemmé Naturals Shampoo and Conditioner Consumers"), because this broad, and over-inclusive target group best represents the Class.

© 2016 KCC LLC
Proprietary and Confidential

**Strategies**

A schedule of paid notices in *People* magazine and on a variety of websites will provide the necessary reach among the Class. To fulfill the CLRA notice requirement, the Notice Plan also includes <u>four</u> placements, once a week for four consecutive weeks, in the *Sacramento Bee* newspaper.

**Plan Delivery**

The media effort will reach approximately 71.6% of likely Class Members on average 1.2 times each. Coverage will be further enhanced by the CLRA notice placements.[1]

**Notice Design**

The Notices will be designed to provide a clear, concise, plain language statement of Class Members' legal rights and options. To ease response, the toll-free number and website address will be provided in all printed notice documents, and the website will be accessible through an embedded hyperlink in the internet banner notices.

---

[1] The reach stated here does not factor in the potential impact of cookie deletion.

## Notice Schedule

The schedule below is a hypothetical schedule based on preliminary approval (PA) and final approval (FA) dates.

- Media funding and final ad approval = PA + 7 days
- Media campaign start = PA + 30 days
- Media campaign end = PA + 60 days
- Exclusion and objection deadline = FA – 21 days (but no earlier than 30 days from the last notice appearance)

| Notice Tactic | Issued | Week 1 | Week 2 | Week 3 | Week 4 | Week 5 | Week 6 | Week 7 | Week 8 |
|---|---|---|---|---|---|---|---|---|---|
| *People* | Weekly | | | | | | | | |
| *Sacramento Bee* | Daily | | | | | | | | |
| Internet Banner Notices | Monthly | | | | | | | | |
| Case Website | Constant | | | | | | | | |

Blocks indicate when readers first receive publications (the on-sale date, not the issue/cover date). All media subject to change based on availability at the time of placement.

## Target Analysis

Knowing the characteristics, interests, and habits of a target group aids in the media selection process.

**Demographic Highlights**

Demographic highlights of TRESemmé Naturals Shampoo and Conditioner Consumers likely include the following:

- 97.3% speak English most often;
- 89.3% live in a household consisting of two or more people, 67.5% live in a household consisting of two to four people, and 62.4% live in a household consisting of three or more people;
- 85.9% have graduated from high school and 56.2% have attended college or beyond;
- 84.3% live in a Metropolitan CBSA;[2]
- 81.2% are 25 years of age or older, 74.3% are 18-54 years of age, and 56.0% are 18-44 years of age;
- 75.2% have a household income of $30,000 or more, 64.7% have a household income of $40,000 or more, and 55.0% have a household income of $50,000 or more;
- 73.6% are white;
- 71.4% are women;
- 70.2% live in County Size A or B, with 43.2% living in County Size A;[3]
- 62.8% own a home;
- 56.4% own a home valued at less than $500,000; and
- 50.2% are married.

On average, TRESemmé Naturals Shampoo and Conditioner Consumers:[4]

- are 43 years of age;
- have a household income of $73,475; and

---

[2] Core Based Statistical Areas (CBSAs) consist of the county or counties or equivalent entities associated with at least one core (urbanized area or urban cluster) of at least 10,000 population, plus adjacent counties having a high degree of social and economic integration with the core as measured through commuting ties with the counties associated with the core. The general concept of a CBSA is that of a core area containing a substantial population nucleus, together with adjacent communities having a high degree of economic and social integration with that core. CBSAs are defined by the U.S. Office of Management and Budget to provide a nationally consistent set of geographic entities for the United States and Puerto Rico for use in tabulating and presenting statistical data. Metropolitan Statistical Areas are CBSAs associated with at least one urbanized area that has a population of at least 50,000. The metropolitan statistical area comprises the central county or counties or equivalent entities containing the core, plus adjacent outlying counties having a high degree of social and economic integration with the central county or counties as measured through commuting. Micropolitan Statistical Areas are CBSAs associated with at least one urban cluster that has a population of at least 10,000 but less than 50,000. The micropolitan statistical area comprises the central county or counties or equivalent entities containing the core, plus adjacent outlying counties having a high degree of social and economic integration with the central county or counties as measured through commuting.

[3] Nielsen County Size classifications are based on Census household counts and metropolitan proximity. "A" counties are highly urbanized areas and belong to the 21 largest Metropolitan Statistical Areas. The combined counties contain 40% of United States households. "B" counties are counties not defined as A counties that have more than 85,000 households. The combined counties contain 30% of United States households. "C" counties are counties not defined as A or B counties that have more than 20,000 households or are in Consolidated Metropolitan Areas or Metropolitan Statistical Areas with more than 20,000 households. The combined counties contain 15% of United States households. "D" counties are all counties not classified as A, B, or C counties. They are considered very rural. The combined counties contain 15% of United States households.

[4] The average age for U.S. adults is 47, the average household income is $77,026, and the average home value is $253,020.

---

© 2016 KCC LLC
Proprietary and Confidential

- own a home valued at $245,480.

Compared to the general adult population, TRESemmé Naturals Shampoo and Conditioner Consumers are:

- 70.7% more likely to be American Indian or Alaska Native, 45.7% more likely to be of Spanish, Hispanic or Latino origin or descent, and 18.8% more likely to be Asian;
- 47.9% more likely to be 18-24 years of age and 22.1% more likely to be 25-34 years of age;
- 37.9% more likely to be women;
- 37.0% more likely to speak Spanish most often;
- 36.0% more likely to be working women;
- 27.8% more likely to live in a household consisting of five or more people and 9.2% more likely to live in a household consisting of three or four people;
- 25.9% more likely to be working part time and 8.3% more likely to be unemployed;
- 23.8% more likely to have a household income between $10,000-$19,999, 12.4% more likely to have a household income under $10,000, and 11.9% more likely to have a household income between $30,000-$39,999;
- 19.3% more likely to have lived at their current address for less than one year and 12.3% more likely to have lived at their current address for one to four years;
- 16.3% more likely to be parents;
- 14.9% more likely to have never married;
- 11.4% more likely to have attended college and 10.4% more likely to have not graduated high school;
- 11.1% more likely to rent their home;
- 7.6% more likely to live in the South Census Region and 5.9% more likely to live in the North East Census Region; and
- 5.3% more likely to own a home valued less than $100,000.

*Source: 2015 MRI Doublebase Study*

# Media Selection

To create the optimal notice program, we evaluated the strengths and weaknesses of the various media, as well as their reach and frequency potential, composition, format/content and efficiencies. Our recommended media mix provides:

- Broad national coverage into the largest cities as well as the smallest towns throughout the nation;

- A large percentage of likely Class Members to be reached via the measurable paid print and internet media alone (approximately 71.6% of TRESemmé Naturals Shampoo and Conditioner Consumers);

- Repeat notice exposures as a result of the overlapping media audiences;

- A written summary of key information that may be easily referred to or passed on to others as a result of placement in one of the largest and most well-read publications in the country;

- A direct link to the case website through the internet banner notices; and

- Easy access to the notice documents through an established case website.

## Consumer Magazine

To establish a reach base, a third-page Summary Notice will be placed in *People* magazine.



- Circulation: 3,486,478
- Adult Audience: 42,089,000
- Reaches 23.3% of TRESemmé Naturals Shampoo and Conditioner Consumers
- Readers are 31.7% more likely to be TRESemmé Naturals Shampoo and Conditioner Consumers, as compared to the general adult population
- Weekly entertainment magazine featuring celebrity news, biographies and gossip
- Provides a large number of pass along readers

© 2016 KCC LLC
Proprietary and Confidential

## Internet Banners

86.5% of TRESemmé Naturals Shampoo and Conditioner Consumers have access to the internet at home using a computer and 85.9% have looked at or used the internet in the last 30 days. Compared to the general adult population, TRESemmé Naturals Shampoo and Conditioner Consumers are 1.1% more likely to have access to the internet from home using a computer and 3.3% more likely to have looked at or used the internet in the last 30 days.

As a result, to extend reach among the Class, we recommend purchasing 150 million banner impressions over a one-month period. The impressions will be targeted to adults 18 years of age or older (Adults 18+), of which 105 million will be targeted to women 18 years of age or older (Women 18+). The banners will include an embedded link to the case website.

## CLRA Newspaper

To fulfill the CLRA notice requirement, <u>four</u> eighth-page notices will appear once a week for <u>four</u> consecutive weeks in the *Sacramento Bee*.



## Response Mechanisms

**Case Website**
- Provides an easy to remember domain
- Allows Class Members the ability to obtain additional information and documents including the Detailed Notice, Claim Form, Settlement Agreement, Complaint, and any other information that the parties may agree to provide or that the Court may require
- Prominently displayed in all printed notice materials and accessible through a hyperlink embedded in the internet banner ads

**Toll-Free Telephone Support**
- Provides a simple way for Class Members to obtain additional information about the settlement
- Allows Class Members the opportunity to learn more about the case in the form of frequently asked questions and answers
- Allows Class Members to request to have more information mailed directly to them
- Prominently displayed in all printed notice materials

© 2016 KCC LLC
Proprietary and Confidential

# EXHIBIT E

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

# IF YOU PURCHASED TRESEMMÉ NATURALS NOURISHING MOISTURE SHAMPOO, NOURISHING MOISTURE CONDITIONER, RADIANT VOLUME SHAMPOO, RADIANT VOLUME CONDITIONER, VIBRANTLY SMOOTH SHAMPOO, OR VIBRANTLY SMOOTH CONDITIONER YOU MAY BE ENTITLED TO PARTICIPATE IN A CLASS ACTION SETTLEMENT

*A Federal Court authorized this notice.*
*This is not a solicitation from a lawyer.*

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT | |
|---|---|
| SUBMIT A CLAIM FORM | The only way to be eligible for a cash payment. |
| EXCLUDE YOURSELF | Get no settlement benefits. Remove yourself from both the settlement and the lawsuit. |
| OBJECT | Write to the Court about why you don't like the settlement. |
| DO NOTHING | Get no cash payment. Give up your rights. |

Please read this entire Class Notice carefully.
Your rights and options – **and the deadlines by which you must exercise them** – are explained in this notice.

### WHAT IS THIS LAWSUIT ABOUT?

A proposed settlement has been reached in a class action lawsuit about the packaging of the following TRESemmé Naturals products: Nourishing Moisture Shampoo, Nourishing Moisture Conditioner, Radiant Volume Shampoo, Radiant Volume Conditioner, Vibrantly Smooth Shampoo, and Vibrantly Smooth Conditioner (collectively, the "Products"). The plaintiffs in the lawsuit assert that the Products' packaging falsely indicated they were natural. Defendant Conopco, Inc. d/b/a Unilever ("Unilever" or "Defendant") denies all the plaintiffs' allegations and is entering into this settlement, among other reasons, to avoid burdensome and costly litigation. The settlement is not an admission of wrongdoing.

### WHO IS INCLUDED IN THE CLASS?

You are a member of the Class if you purchased at least one of the following TRESemmé Naturals products: Nourishing Moisture Shampoo, Nourishing Moisture Conditioner, Radiant Volume Shampoo, Radiant Volume Conditioner, Vibrantly Smooth Shampoo, or Vibrantly Smooth Conditioner.

The following persons are excluded from the Class: (a) Defendant, (b) the officers, directors, or employees of Defendant, (c) any entity in which Defendant has a controlling interest, (d) any affiliate, legal representative, heir, or assign of Defendant, and (e) the judge to whom this case is assigned and any member of the judge's immediate family; (f) all persons who submit a valid request for exclusion from the Class; and (g) those who purchased the Products for the purpose of resale.

## THE SETTLEMENT **BENEFITS** – WHAT YOU MAY GET

### CASH FROM THE CLAIM PROCESS

Unilever will create a fund of $3.25 million to pay Class Members' claims, attorneys' fees, costs and expenses and certain administrative costs. You may obtain a cash payment from the fund if you purchased one of the Products. The amount of your payment will depend on the statements in your Claim Form and the support you may provide, as well as on the total volume of valid claims received. Details are provided below.

### WHAT ELSE DOES THE SETTLEMENT PROVIDE?

Unilever has agreed to discontinue sale of the Products under the "TRESemmé Naturals" label as a result of this litigation.

## HOW YOU GET A CASH PAYMENT – SUBMITTING A CLAIM FORM

### HOW CAN I GET A PAYMENT?

You must return a Claim Form to get a cash payment. A copy of the Claim Form is included in this Notice Package. Claim Forms are also available at [**WEBSITE**] or by calling 1-800-**xxx xxxx**.

The Claim Forms are simple and easy to complete. The Claim Form requires that you provide:

1. Your mailing address;

2. The number of each of the Products you purchased; and

3. Your signature under penalty of perjury, confirming that the information provided is true and

correct.

Claim forms may be filled out and submitted online or they may be mailed to the Claim Administrator.

***Please submit a Claim Form if you think that you have a claim. Submitting a Claim Form is the only way to receive a cash payment from this settlement. No claimant may submit more than one Claim Form, and two or more claimants may not submit Claim Forms for the same alleged damage.***

You may claim up to ten Products per household without submitting any proof of purchase, but you may claim more than ten Products per household if you submit valid proof of your purchases along with your Claim Form.  The Claim Administrator may request additional information if the Claim Form is insufficient to process your claim. Failure to provide any requested documentation may result in the denial of your claim and may limit the type of remedy you receive.

## WHEN IS THE CLAIM FORM DUE?

If you mail or fax your Claim Form, it must be postmarked or faxed no later than [**DATE**].

Online submission of Claim Forms must be done by no later than [**DATE**].

## WHO DECIDES MY CLAIM?

The Claim Forms will be reviewed by an independent Claim Administrator according to criteria agreed to by the parties.

The Claim Administrator may contact you or other persons listed in your Claim Form if he or she needs additional information or otherwise wants to verify information in your Claim Form.

The Claim Administrator's determination is final. Neither you, nor Plaintiffs' Counsel, nor Unilever can appeal or contest the decision of the Claim Administrator.

## WHEN WOULD I GET MY PAYMENT?

The Court will hold a hearing on [DATE] to decide whether to approve the settlement. If the Court approves the settlement, after that there may be appeals. It is always uncertain whether these appeals can be resolved, and resolving them can take time, perhaps more than a year. Please be patient.

## HOW WILL THE SETTLEMENT BE ALLOCATED?

After payment of court-approved Attorneys' Fees, Costs and Expenses and certain administration costs related to maintenance of the Settlement Fund and payment of the costs of notice and claims administration, the balance of the Settlement Fund will be distributed to Class Members who have filed Claims on the basis of the number of Products that they purchased, verified as necessary by the Claim Administrator.  Class members may receive a maximum of $5 for each Product purchased.  Class Members may recover for up to ten Products purchased per household without submitting proofs of purchase, and may recover for more than ten Products per household by submitting valid proofs of purchase along with their Claim Forms.  If there are insufficient funds in the Settlement Fund to pay all claims in full, every claim will be reduced pro rata.  Further details on allocation are in Exhibit A to the Settlement Agreement.

## WHAT HAPPENS IF I DO NOTHING AT ALL?

You must submit a Claim Form to receive a cash payment. If you do nothing, you will get no money from the settlement. But, unless you exclude yourself, you will not be able to start a lawsuit, continue with a

lawsuit or be part of any other lawsuit against Unilever about the legal issues in this case.

## EXCLUDING YOURSELF FROM THE SETTLEMENT

### HOW DO I GET OUT OF THE SETTLEMENT?

If you do not wish to be included in the Class and receive settlement benefits, you must send a letter stating that you want to be excluded from this lawsuit. Be sure to include your name, address, telephone number, and your signature. You must mail your exclusion request post-marked no later than **[INSERT DATE]** to:

### **[INSERT CLAIM ADMINISTRATOR INFO]**

If you asked to be excluded, you will not get any settlement payment, and you cannot object to the settlement. You will not be legally bound by anything that happens in this lawsuit. You may be able to sue (or continue to sue) Unilever in the future.

If you have a pending lawsuit against Unilever, speak to your lawyer immediately. You may need to exclude yourself from this lawsuit in order to continue your own lawsuit. Remember, the exclusion date is **[DATE]**.

## THE LAWYERS REPRESENTING YOU

### DO I HAVE LAWYERS IN THIS CASE?

The Court appointed the law firm of Izard Nobel LLP to represent you and other class members. These lawyers are called Class Counsel. If you want to be represented by your own lawyer, you may hire one at your own expense.

### HOW WILL THE LAWYERS BE PAID?

Class Counsel will ask the Court to award them attorneys' fees from the Settlement Fund established as a result of this Litigation, in an amount not to exceed 30% of the Settlement Amount, together with payment of litigation costs and expenses.

The four named plaintiffs will also ask the Court for an award for their time and effort acting as plaintiffs and for their willingness to bring this litigation and act on behalf of consumers. These amounts, if approved by the Court, will be paid by the Defendant separate and apart from the Settlement Fund, and will not exceed $15,000 in the aggregate for all named plaintiffs.

The costs to administer the settlement, to review Claim Forms, and notify Class Members about this settlement will be paid out of the Claim Fund.

## OBJECTING TO THE SETTLEMENT

### HOW DO I TELL THE COURT THAT I DO NOT LIKE THE SETTLEMENT?

If you are a Class Member, you can object to the settlement if you do not like any part of it and the Court will consider your views. To object, you must send a letter to the Court and the parties saying that you object to the settlement. Be sure to include your name, address, telephone number, your signature, and a

*statement under penalty of perjury that you purchased one of the Products during the Class Period*, as well as the reasons you object to the settlement. This objection ***must be postmarked*** no later than [**DATE**]. Send your objection to:

Mark P. Kindall
**IZARD NOBEL LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290

Jay P. Lefkowitz, P.C.
**KIRKLAND & ELLIS LLP**
601 Lexington Avenue
New York, N.Y. 10022

Clerk of Court
Eastern District of California
Robert T. Matsui United States Courthouse
501 I Street
Sacramento, 95814

### WHAT IS THE DIFFERENCE BETWEEN OBJECTING AND EXCLUDING?

Objecting is telling the Court that you do not like something about the settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you do not want to be part of the Class or the lawsuit. You cannot request exclusion **and** object to the settlement. If you exclude yourself, you have no basis to object because the case no longer affects you.

### RELEASE OF CLASS MEMBERS' CLAIMS AND DISMISSAL OF LAWSUIT

### IN RETURN FOR THESE SETTLEMENT BENEFITS, WHAT AM I GIVING UP?

If the Court approves the proposed settlement and you do not request to be excluded from the Class, you are releasing (giving up) all claims that are subject to the Release, and the case will be dismissed on the merits and with prejudice. **If you remain in the Class, you may not assert any of those claims in any other lawsuit or proceeding. This includes any other lawsuit or proceeding already in progress.**

The text of the Release is reprinted in full at Appendix A to this notice.

### THE FINAL APPROVAL HEARING

### WHEN AND WHERE WILL THE COURT DECIDE WHETHER TO APPROVE THE SETTLEMENT?

The Judge will hold a Final Approval Hearing at [**TIME**] on [**DATE**] at the United States District Court for the Eastern District of California, Robert T. Matsui United States Courthouse, 501 I Street, Sacramento, CA

95814. At this hearing, the Judge will consider whether the settlement is fair, reasonable and adequate. If there are objections, the Judge will consider them. The Judge will listen to people who have asked to speak at the hearing. After the hearing, the Judge will decide whether to approve the settlement. We do not know how long this decision will take.

## DO I HAVE TO COME TO THE HEARING?

No. Class Counsel will answer questions the Judge may have. But, you are welcome to come at your own expense. If you submit an objection, you do not have to come to the Court to talk about it. As long as you delivered your written objection on time, the Judge will consider it. You may also pay your own lawyer to attend, but it is not necessary.

## MAY I SPEAK AT THE HEARING?

You may ask the Court for permission to speak at the Final Approval Hearing. To do so, you must file with the Court a "Notice of Intention to Appear" in *Morales, et al. v. Conopco, Inc. d/b/a Unilever*, 2:13-cv-02213 (E.D. Cal.) Be sure to include your name, address, telephone number, your signature and *a statement under penalty of perjury that you are a member of the Class,* i.e. that you purchased one of the Products). Your Notice of Intention to Appear must be sent to the Clerk of the Court, Class Counsel, and Defense Counsel at the three addresses listed above, post-marked no later than        [**DATE**].

## GETTING MORE INFORMATION

## ARE THERE MORE DETAILS ABOUT THE SETTLEMENT?

This notice summarizes the proposed settlement. More details are in the Stipulation of Settlement.  You can get a copy of the Stipulation of Settlement at [**WEBSITE**] or by asking the Claim Administrator to send you a copy through the mail.  The Claim Administrator may be reached by [Address], or through the dedicated toll-free hotline, [number].  The Claim Administrator can also assist you with any questions about how to complete a claim form.  You can also contact attorneys for the class at (860) 493-6292.

## PLEASE DO NOT CALL OR WRITE TO THE COURT FOR INFORMATION OR ADVICE.

BY ORDER OF THE U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

DATED:

## APPENDIX A - RELEASE

The Releasing Parties agree to release all claims against the Released Parties as set forth below:

1.      As of the Effective Date, in consideration of the settlement obligations set forth herein, any and all claims, demands, rights, causes of action, suits, petitions, complaints, damages of any kind, liabilities, debts, punitive or statutory damages, penalties, losses and issues of any kind or nature whatsoever, asserted or unasserted, known or unknown (including, but not limited to, any and all claims relating to or alleging deceptive or unfair business practices, false or misleading advertising, intentional or negligent misrepresentation, negligence, concealment, omission, unfair competition, promise without intent to perform, unsuitability, unjust enrichment, and any and all claims or causes of action arising under or based upon any statute, act, ordinance, or regulation governing or applying to business practices generally, including, but not limited to, any and all claims relating to or alleging violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 et seq.; California's Consumer Legal Remedies Act, Cal. Civ. Code § 1750 et seq.; Massachusetts' Consumer Protection Act, Mass. Gen. Laws Ann. ch. 93A; Florida Deceptive and Unfair Trade Practices Act, F.S.A. § 501.201, et seq. and New York General Business Law § 349 (or any and all other federal, state, and/or local statutes analogous or similar to the statutes cited herein)), arising out of or related to the product representations complained of in this Action, whether legal, equitable, administrative, direct or indirect, or any other type or in any other capacity, against any Released Party ("Released Claims") shall be finally and irrevocably compromised, settled, released, and discharged with prejudice.

2.      Each of the Releasing Parties hereby waives any and all rights and benefits arising out of the facts alleged in the Action by virtue of the provisions of Civil Code § 1542, or any other provision in the law of the United States, or any state or territory of the United States, or principle of common law or equity that is similar, comparable or equivalent to Civil Code § 1542, with respect to this release. The Releasing Parties are aware that Civil Code § 1542 provides as follows:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor.**

The Releasing Parties expressly acknowledge that they may hereafter discover facts in addition to or different from those which they now know or believe to be true with respect to the subject matter of the Released Claims, but the Releasing Parties, upon the Effective Date, shall be deemed to have, and by operation of law shall have, fully, finally and forever settled, released, and discharged any and all Released Claims, known or unknown, suspected or unsuspected, whether or not concealed or hidden, that now exist or heretofore have existed upon any theory of law or equity, including, but not limited to, Released Claims based on conduct that is negligent, reckless, intentional, with or without malice, or a breach of any duty, law or rule, without regard to the subsequent discovery or existence of such different or additional facts. The Parties agree that the Released Claims constitute a specific and not a general release.

3.      The Releasing Parties shall be deemed to have agreed that the release set forth in ¶¶ 1 and 2 above (the "Release") will be and may be raised as a complete defense to and will preclude any action or proceeding based on the Released Claims.

4.      As of the Effective Date, by operation of entry of judgment, the Released Parties shall be deemed to have fully released and forever discharged Plaintiffs, all other Class Members and Plaintiffs' Counsel from any and all claims of abuse of process, malicious prosecution, or any other claims arising out of the initiation, prosecution or resolution of the Action, including, but not limited to, claims for attorneys' fees, costs of suit or sanctions of any kind, or any claims arising out of the allocation or distribution of any of the consideration distributed pursuant to this Stipulation of Settlement.

## DEFINED TERMS USED IN THE RELEASE

1.     "Action" means the case entitled Morales, et al. v. Conopco, Inc. d/b/a Unilever, filed on October 10, 2013, in the U.S. District Court for the Eastern District of California and assigned Case No. 2:13-cv-02213.

2.     "Class" and/or "Class Members" means all individuals in the United States who purchased the following TRESemmé Naturals products:   (a) Nourishing Moisture Shampoo; (b) Nourishing Moisture Conditioner; (c) Radiant Volume Shampoo; (d) Radiant Volume Conditioner (e) Vibrantly Smooth Shampoo; and (f) Vibrantly Smooth Conditioner (collectively, the "Products"). Specifically excluded from the Class are (1) Defendant, (2) the officers, directors, or employees of Defendant and their immediate family members, (3) any entity in which Defendant has a controlling interest, (4) any affiliate, legal representative, heir, or assign of Defendant, (5) all federal court judges who have presided over this Action and their immediate family members (6) all persons who submit a valid request for exclusion from the Class and (7) those who purchased the Products for the purpose of resale.

3.     "Class Counsel" means Izard Nobel LLP.

4.     "Effective Date" means the date that the Settlement becomes final, as described more full in the Stipulation at ¶ 53.

5.     "Released Claims" means those claims released pursuant to ¶¶ 16 and 17 of the Stipulation (reprinted above as paragraphs 1 and 2 of Appendix A).

6.     "Releasing Parties" means Defendant and each of its parent, affiliated and subsidiary corporations and all of their agents, employees, partners, predecessors, successors, assigns, insurers, attorneys, officers and directors.

# EXHIBIT F

**Must Be Electronically Submitted or Mailed No Later Than Month DD, 2016**

*Plaintiff v. Conopco, Inc. d/b/a Unilever*

STATE SUPERIOR COURT

Case No. XXXXXXXX

**Must Be Electronically Submitted or Mailed No Later Than Month DD, 2016**

## CASE

# Claim Form



<<Barcode>>  <<ClaimID>>
<<FirstName>> <<LastName>>
<<Addr1>> <<Addr2>>
<<City>>, <<State>> <<Zip>>

To receive a payment, you must accurately complete this Claim Form and submit it by **Month DD, 2016**.  Failure to do so will result in a reduction or the denial of your Claim.  Claim Forms (and proof of purchase, if you submit a claim with proof of purchase) may be submitted online at www.CaseWebsite.com or by mail to:  KCC, P.O. Box XXXX, City, ST XXXXX-XXXX:

## A.    CLASS MEMBER INFORMATION:

First Name                                                        M.I.        Last Name

Primary Address

Primary Address Continued (Apt, Unit, Suite, etc.)

City                                                                                State        Zip Code

Email Address (optional)

## B.    CLAIM INFORMATION

If you choose to submit a claim, please follow the instructions below and sign and date the Claim Form.

**Instructions:** Please state how many bottles of each of the six Eligible Products below you purchased. If you claim more than ten (10) Eligible Products purchased, please provide proof of purchase such as a receipt or store loyalty statement for the total number of purchases you claim. You may claim up to ten purchases without providing proof of a purchase, so long as you complete, sign and submit the Claim Form in accordance with these instructions.



FOR CLAIMS PROCESSING ONLY

OB          CB

○ DOC    ○ RED
○ LC      ○ A
○ REV     ○ B

| Eligible Product | Total Number of Bottles Purchased |
|---|---|
| TRESemmé Naturals Nourishing Moisture Shampoo | ☐ |
| TRESemmé Naturals Nourishing Moisture Conditioner | ☐ |
| TRESemmé Naturals Radiant Volume Shampoo | ☐ |
| TRESemmé Naturals Radiant Volume Conditioner | ☐ |
| TRESemmé Naturals Vibrantly Smooth Shampoo | ☐ |
| TRESemmé Naturals Vibrantly Smooth Conditioner | ☐ |

**C.     SIGN AND DATE YOUR CLAIM FORM**

I declare or affirm, under penalty of perjury, that the information in this Claim Form is true and correct to the best of my knowledge and that I purchased the Eligible Product(s) claimed above from Month DD, 2016 to Month DD, 2016.

I understand that my Claim Form may be subject to audit, verification, and Court review.  Also, I agree to be bound by the provisions of the Stipulation of Settlement, including granting to Unilever and other Released Parties a release of all Released Claims as defined and set forth in the Stipulation of Settlement and in any Final Order of the Court that may be entered pursuant to the Settlement.

_____          _____
Signature                                                                  Date Signed

**Claim Forms must be electronically submitted no later than Month DD, 2016 or
postmarked no later than Month DD, 2016.
Questions? Visit www.CaseWebsite.com or call, toll-free, (888) XXX-XXXX**



# EXHIBIT G

1

2 UNITED STATES DISTRICT COURT

3 EASTERN DISTRICT OF CALIFORNIA

4

5                                         Case No. 2:13-cv-02213-WBS

6 LAINIE COHEN, ALBA MORALES, LINDA    **[PROPOSED] ORDER AND FINAL**
CLAYMAN and KENNETH DREW, on behalf of    **JUDGMENT**

7 themselves and all others similarly situated,

8                       Plaintiffs,

9             v.

10 CONOPCO, INC. D/B/A UNILEVER,

11                       Defendant.

12

13

14

15       On the ___ day of _____, 2016, this Court held a hearing to determine (1) whether the

16 terms and conditions of the Class Action Stipulation of Settlement dated May 27, 2016 (the

17 "Stipulation" or "Settlement") are fair, reasonable and adequate for the settlement of all claims

18 asserted by all members of the Class against Defendants in the class action captioned *Morales, et al.*

19 *v. Conopco, Inc.,* Civil Action No. 2:13-cv-02213 (the "Action"), including the release of Defendant

20 from the Plaintiffs' Claims, and should be approved; (2) whether to certify a Class for settlement

21 purposes only, and whether to appoint Plaintiffs Alba Morales, Lainie Cohen, Linda Clayman and

22 Kenneth Drew as class representatives, Izard Nobel LLP as Class Counsel and Bramson, Plutzik,

23 Mahler & Birkhaeuser LLP as liaison counsel for the Class; (3) whether final judgment should be

24 entered dismissing the Plaintiffs' complaint against Defendant with prejudice; (4) whether to approve

25 the proposed Plan of Allocation as a fair and equitable method to allocate the Settlement Fund among

26 all Class members; (5) whether and in what amount to award Plaintiffs' Counsel's fees and expenses;

27 and (6) whether and in what amount to award Plaintiffs Class Representative Awards in recognition

28 of the time and effort they contributed while representing the members of the Class.

**[PROPOSED] ORDER AND FINAL JUDGMENT**

The Court having considered all matters submitted to it at the hearing and otherwise, and it appearing that a notice of the settlement and the hearing was published to the Class in the form approved by the Court and in accordance with a Notice Plan approved by the Court; and the Court having considered and determined the fairness, reasonableness and adequacy of the Settlement, the proposed Plan of Allocation, the fairness and reasonableness of the award of attorneys' fees and expenses requested, and the fairness and reasonableness of the Class Representative Awards ; and all initial capitalized terms used herein having the meanings set forth in the Stipulation,

**IT IS HEREBY ORDERED, ADJUDGED AND DECREED:**

1.      The Court has jurisdiction over the subject matter of the Action and over all parties to it, including all members of the Class.

2.      The Court finds for the purposes of the Settlement only that the prerequisites for certification of this Action as a class action under Rules 23(a) and (b)(1) of the Federal Rules of Civil Procedure have been satisfied in this Action:  (a) the number of Class members herein is so numerous that joinder of all members thereof is impracticable; (b) there are questions of law and fact common to the members of the Class herein; (c) the claims of the  Plaintiffs designated herein are typical of the claims of the Class sought to be represented; (d) Plaintiffs have fairly and adequately represented, and will fairly and adequately represent, the interests of the Class herein. The Court also finds for purposes of settlement only, as required by Rule 23(b)(3) of the Federal Rules of Civil Procedure, that the common issues predominate over individual issues and that a class action is superior to other methods of adjudicating the issues involved in the litigation.

3.      Accordingly, pursuant to Rule 23 of the Federal Rules of Civil Procedure and for purposes of the Settlement only, the Court hereby finally certifies this Action as a class action, with the Class being defined as follows:

> All individuals in the United States who purchased the following TRESemmé Naturals products: (a) Nourishing Moisture Shampoo; (b) Nourishing Moisture Conditioner; (c) Radiant Volume Shampoo; (d) Radiant Volume Conditioner (e) Vibrantly Smooth Shampoo; and (f) Vibrantly Smooth Conditioner (collectively, the "Products"). Specifically excluded from the Class are (1) Defendant, (2) the officers, directors, or employees of Defendant and their immediate family members, (3) any entity in which Defendant has a

2

controlling interest, (4) any affiliate, legal representative, heir, or assign of Defendant, (5) all federal court judges who have presided over this Action and their immediate family members, (6) all persons who submit a valid request for exclusion from the Class and (7) those who purchased the Products for the purpose of resale..

4.     Pursuant to Rule 23 of the Federal Rules of Civil Procedure and for the purposes of the Settlement only, the Court appoints Plaintiffs Alba Morales, Lainie Cohen, Linda Clayman and Kenneth Drew as representatives for the Class ("Class Representatives").

5.     The Court further finds, pursuant to Rule 23(g), that Izard Nobel LLP and Bramson, Plutzik, Mahler & Birkhaeuser LLP have done sufficient work and are sufficiently experienced in class action litigation to represent the interests of the Class, and thereby appoints Izard Nobel LLP as Class Counsel and Bramson, Plutzik, Mahler & Birkhaeuser LLP as liaison counsel for the Class, respectively.

6.     The Court determines that the Class Notice provided to the Class in accordance with the Notice Plan approved in this Court's Preliminary Approval Order was the best notice practicable under the circumstances.  Such Notice provided valid, due, and sufficient notice of these proceedings and of the matters set forth therein, including the Settlement described in the Stipulation of Settlement and the Plan of Allocation, to all persons entitled to such notice, and such Notice has fully satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure and the requirements of due process.

7.     The Court determines that the Stipulation was negotiated vigorously and at arm's-length by Plaintiffs' Counsel, on behalf of the Class, and Defendant's Counsel, on behalf of Defendant, and further finds that, at all times, Plaintiffs have acted independently and that their interests are identical to the interests of the Class.  If settlement of Plaintiffs' claims had not been achieved, both Plaintiffs and Defendant faced the expense, risk, and uncertainty of extended litigation.

8.     Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, the Court hereby approves and confirms the Settlement embodied in the Stipulation of Settlement as being a fair, reasonable, and adequate settlement and compromise of the Action and in the best interests of the

3

Class.  The Court orders that the Stipulation of Settlement shall be consummated and implemented in accordance with its terms and conditions.

9.      The Court hereby finds that the Plan of Allocation provides a fair and equitable basis upon which to allocate the proceeds of the Settlement Fund among the Class members.  A full and fair opportunity was accorded to all Class members to be heard with respect to the Plan of Allocation. Accordingly, the Court hereby approves the Plan of Allocation.

10.     The Action is hereby dismissed with prejudice, each party to bear its own costs, except as provided herein.

11.     Upon the Effective Date of the Settlement, Plaintiffs and the Class, absolutely and unconditionally release and forever discharge each and all of the Released Parties from the Released Claims, and the Released Parties fully released and forever discharged Plaintiffs, all other Class Members and Plaintiffs' Counsel from any and all claims of abuse of process, malicious prosecution, or any other claims arising out of the initiation, prosecution or resolution of the Action, including, but not limited to, claims for attorneys' fees, costs of suit or sanctions of any kind, or any claims arising out of the allocation or distribution of any of the consideration distributed pursuant to this Stipulation of Settlement.  Nothing herein, however, shall preclude any action or claim related to the implementation and/or enforcement of the Stipulation.

12.     In the event that the Settlement does not become effective in accordance with the terms of the Stipulation, the Final Order shall be rendered null and void and shall be vacated *nunc pro tunc*, and the Action shall proceed in the manner provided in the Stipulation and the Order of Preliminary Approval.

13.     The Stipulation and this Final Order, whether or not consummated, do not and shall not be construed, argued or deemed in any way to be (a) an admission or concession by Defendant with respect to any of the Released Claims or evidence of any violation of any statute or law or other wrongdoing, fault, or liability by Defendant, or (b) an admission or concession by Plaintiffs or any member of the Class that their claims lack merit or that the defenses that have been or may have been asserted by Defendant have merit.  Absent written agreement of the parties, in the event the final

4

**[PROPOSED] ORDER AND FINAL JUDGMENT**

judgment approving the Settlement is reversed, vacated, or modified in any respect by the Court or any other court, the certification of the Class shall be vacated, the Action shall proceed as though the Class had never been certified, and no reference to the prior Class or any documents related thereto shall be made for any purpose.  Nothing herein shall be deemed to preclude Defendant from contesting class certification for any other purpose.

14.     The Stipulation and the Final Order shall not be offered or received in evidence by any class member or party to this action in any civil or administrative action or proceeding other than proceedings necessary to approve or enforce the terms of the Stipulation and this Order and Final Judgment.

15.     In recognition of their contributions to this action and their efforts in furtherance of the litigation as evidence by their submitted declarations, Lead Plaintiffs are awarded the following amounts as Class Representative Awards:   Alba Morales: _____; Lainie Cohen: _____; Kenneth Drew: _____; and Linda Clayman: _____.   In accordance with the Stipulation, these awards will be paid by Defendant separate and apart from Defendant's payment of $3.25 million for the Settlement Fund.

16.     The attorneys' fees sought by Plaintiffs' Counsel are fair and reasonable in light of the successful results achieved by Plaintiffs' Counsel, the monetary benefits obtained in this Action, the substantial risks associated with the Action, Plaintiffs' Counsel's skill and experience in class action litigation of this type, and the fee awards in comparable cases.  Accordingly, attorneys' fees are awarded in the amount of _____% of the Settlement Fund to be paid in accordance with the Stipulation.

17.     The litigation expenses incurred by Plaintiffs' Counsel in the course of prosecuting this action are fair and reasonable.   Accordingly expenses are awarded in the amount of $_____, to be paid from the Settlement Fund in accordance with the Stipulation.

18.     As required by Rule 23(h)(3) of the Federal Rules of Civil Procedure, the Court has considered and finds as follows in making this award of attorneys' fees and expenses:

5

**[PROPOSED] ORDER AND FINAL JUDGMENT**

a. The Settlement created a Settlement Fund fund of $3.25 million in cash, plus interest, for distribution to the Class, and numerous Class members will benefit from the Settlement pursuant to the Plan of Allocation;

b. As a result of the litigation, the TRESemmé "Naturals" product line was discontinued;

c. In accordance with the Notice Plan, the Class was advised that Plaintiffs' Counsel would be applying to the Court for up to thirty (30) percent of the Settlement Fund in attorneys' fees and approximately $_____ in expenses;

d. Pursuant to the Preliminary Approval Order, Plaintiffs' Counsel's filing in support of final approval of the Stipulation, the proposed Plan of Allocation, and the applications for attorneys' fees, expenses, and Class Representative Awards was posted to the Settlement Website at least two (2) weeks prior to the deadline for Class members to review and serve objections thereto;

e. _____ objections were filed against the terms of the Stipulation of Settlement, the proposed Plan of Allocation, or Plaintiffs' Counsel's applications for attorneys' fees, expenses and Class Representative Awards;

f. The Action involved complex factual and legal issues, was actively prosecuted for more than three years and, in the absence of a settlement, would involve further lengthy proceedings with uncertain resolution of the complex factual and legal issues;

g. Had Plaintiffs' Counsel not achieved the Settlement there would remain a significant risk that Plaintiffs and the class they sought to represent would recover less or nothing from Defendant;

h. Plaintiffs' Counsel's fee and expense application indicates that they devoted over _____ hours, with a lodestar value of approximately $_____, to achieve the Settlement; and

6

i.   The amount of attorneys' fees and expenses awarded by the Court is fair and reasonable and consistent with such awards in similar cases.

19.   Without affecting the finality of this Judgment, the Court retains jurisdiction for purposes of implementing the Stipulation and reserves the power to enter additional orders to effectuate the fair and orderly administration and consummation of the Stipulation, as may from time to time be appropriate, and resolution of any and all disputes arising thereunder.

SO ORDERED this _____ day of_____, 2016.


_____
The Honorable William B. Shubb
United States District Court Judge

7

**[PROPOSED] ORDER AND FINAL JUDGMENT**