1

2

3

4

5

6

7

8                           UNITED STATES DISTRICT COURT

9                          EASTERN DISTRICT OF CALIFORNIA

10                                  ----oo0oo----

11

12  ALBA MORALES; LANIE COHEN;        CIV. NO. 2:13-2213 WBS EFB
    LINDA CLAYMAN; and KENNETH
13  DREW, on behalf of themselves     MEMORANDUM AND ORDER RE: MOTION
    and all others similarly          FOR PRELIMINARY APPROVAL OF
14  situated,                         CLASS ACTION SETTLEMENT

15              Plaintiffs,

16       v.

17  CONOPCO, INC., d/b/a
    UNILEVER,
18

19              Defendant.

20                                  ----oo0oo----

21

22          Plaintiffs Alba Morales, Lanie Cohen, Linda Clayman,

23  and Kenneth Drew brought this putative class action against

24  defendant Conopco, Inc., d/b/a Unilever, asserting claims arising

25  out of defendant's alleged labeling of certain hair care products

26  as "TRESemmé Naturals" despite them containing synthetic

27  ingredients.  Presently before the court is plaintiffs' motion

28  for preliminary approval of the class action settlement.  (Docket

                                    1

1   No. 57.)

2   I. <u>Factual and Procedural Background</u>

3          Defendant is a multinational consumer goods company

4   whose products include food, beverages, cleaning agents, and

5   personal care products, including the TRESemmé brand.

6          Plaintiffs contend that defendant violated California's

7   Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 <u>et</u>

8   <u>seq.</u>, California's Consumer Legal Remedies Act ("CLRA"), Cal.

9   Civ. Code § 1750 <u>et seq.</u>, and various other state consumer

10  protection laws. (<u>See</u> Second Amended Complaint ("SAC") (Docket

11  No. 30).)  The parties litigated the case for nearly two years

12  before reaching a settlement agreement on February 5, 2016 before

13  mediator Jonathan Marks. (Stipulation of Settlement ("Settlement

14  Agreement") ¶¶ 3-10 (Docket No. 57-2).)

15         Plaintiffs brought this lawsuit on behalf of a putative

16  class of consumers in the United States who have purchased

17  TRESemmé Naturals products. (<u>Id.</u> at 2-3.)  Plaintiffs now seek

18  preliminary approval of the parties' stipulated class-wide

19  settlement, pursuant to Federal Rule of Civil Procedure 23(e).

20  (<u>Id.</u> at 4.)

21  II. <u>Discussion</u>

22         Rule 23(e) provides that "[t]he claims, issues, or

23  defenses of a certified class may be settled . . . only with the

24  court's approval." Fed. R. Civ. P. 23(e). "Approval under 23(e)

25  involves a two-step process in which the Court first determines

26  whether a proposed class action settlement deserves preliminary

27  approval and then, after notice is given to class members,

28  whether final approval is warranted." <u>Nat'l Rural Telecomms.</u>

1   Coop. v. DIRECTV, Inc., 221 F.R.D. 523, 525 (C.D. Cal. 2004)

2   (citing Manual for Complex Litig., Third, § 30.41 (1995)).

3         This Order is the first step in that process and

4   analyzes only whether the proposed class action settlement

5   deserves preliminary approval.  See Murillo v. Pac. Gas & Elec.

6   Co., 266 F.R.D. 468, 473 (E.D. Cal. 2010).  Preliminary approval

7   authorizes the parties to give notice to putative class members

8   of the settlement agreement and lays the groundwork for a future

9   fairness hearing, at which the court will hear objections to (1)

10  the treatment of this litigation as a class action and (2) the

11  terms of the settlement.  See id.; Diaz v. Trust Territory of

12  Pac. Islands, 876 F.2d 1401, 1408 (9th Cir. 1989) (stating that a

13  district court's obligation when considering dismissal or

14  compromise of a class action includes holding a hearing to

15  "inquire into the terms and circumstances of any dismissal or

16  compromise to ensure that it is not collusive or prejudicial").

17  The court will reach a final determination as to whether the

18  parties should be allowed to settle the class action on their

19  proposed terms after that hearing.

20        The Ninth Circuit has declared a strong judicial policy

21  favoring settlement of class actions.  Class Plaintiffs v. City

22  of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).  Nevertheless,

23  where, as here, "the parties reach a settlement agreement prior

24  to class certification, courts must peruse the proposed

25  compromise to ratify both [1] the propriety of the certification

26  and [2] the fairness of the settlement."  Staton v. Boeing Co.,

27  327 F.3d 938, 952 (9th Cir. 2003).

28        The first part of this inquiry requires the court to

3

1  "pay 'undiluted, even heightened, attention' to class

2  certification requirements" because, unlike in a fully litigated

3  class action suit, the court "will lack the opportunity . . . to

4  adjust the class, informed by the proceedings as they unfold."

5  Amchem Prods. Inc. v. Windsor, 521 U.S. 591, 620 (1997); see

6  Hanlon v. Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).

7  The parties cannot "agree to certify a class that clearly leaves

8  any one requirement unfulfilled," and consequently the court

9  cannot blindly rely on the fact that the parties have stipulated

10 that a class exists for purposes of settlement.  See Windsor, 521

11 U.S. at 621-22 (stating that courts cannot fail to apply the

12 requirements of Rule 23(a) and (b)).

13        The second part of this inquiry obliges the court to

14 "carefully consider 'whether a proposed settlement is

15 fundamentally fair, adequate, and reasonable,' recognizing that

16 '[i]t is the settlement taken as a whole, rather than the

17 individual component parts, that must be examined for overall

18 fairness . . . .'"  Staton, 327 F.3d at 952 (quoting Hanlon, 150

19 F.3d at 1026); see also Fed. R. Civ. P. 23(e) (outlining class

20 action settlement procedures).

21     A. Class Certification

22        A class action will be certified only if it meets the

23 four prerequisites identified in Rule 23(a) and additionally fits

24 within one of the three subdivisions of Rule 23(b).  Fed. R. Civ.

25 P. 23(a)-(b).  Although a district court has discretion in

26 determining whether the moving party has satisfied each Rule 23

27 requirement, the court must conduct a rigorous inquiry before

28 certifying a class.  See Califano v. Yamasaki, 442 U.S. 682, 701

1  (1979); <u>Gen. Tel. Co. of Sw. v. Falcon</u>, 457 U.S. 147, 161 (1982).

2              1. <u>Rule 23(a) Requirements</u>

3          Rule 23(a) restricts class actions to cases where:

4      (1) the class is so numerous that joinder of all
       members is impracticable; (2) there are questions of
5      law or fact common to the class; (3) the claims or
       defenses of the representative parties are typical of
6      the claims or defenses of the class; and (4) the
       representative parties will fairly and adequately
7      protect the interests of the class.

8  Fed. R. Civ. P. 23(a).  These requirements are more commonly

9  referred to as numerosity, commonality, typicality, and adequacy

10 of representation.

11              a. <u>Numerosity</u>

12         Under the first requirement, "[a] proposed class of at

13 least forty members presumptively satisfies the numerosity

14 requirement."  <u>Avilez v. Pinkerton Gov't Servs</u>., 286 F.R.D. 450,

15 456 (C.D. Cal. 2012); <u>see also, e.g.</u>, <u>Collins v. Cargill Meat</u>

16 <u>Solutions Corp.</u>, 274 F.R.D. 294, 300 (E.D. Cal. 2011) (Wanger,

17 J.) ("Courts have routinely found the numerosity requirement

18 satisfied when the class comprises 40 or more members.").  Here,

19 plaintiffs estimate that the proposed class will contain

20 thousands of members because thousands of people purchased

21 TRESemmé Naturals products.  (Kindall Decl. ¶ 21 (Docket No. 57-

22 1).)  This easily satisfies the numerosity requirement.

23              b. <u>Commonality</u>

24         Commonality requires that the class members' claims

25 "depend upon a common contention" that is "capable of classwide

26 resolution--which means that determination of its truth or

27 falsity will resolve an issue that is central to the validity of

28 each one of the claims in one stroke."  <u>Wal-Mart Stores, Inc. v.</u>

1   <u>Dukes</u>, 131 S. Ct. 2541, 2550 (2011).  "[A]ll questions of fact

2   and law need not be common to satisfy the rule," and the

3   "existence of shared legal issues with divergent factual

4   predicates is sufficient, as is a common core of salient facts

5   coupled with disparate legal remedies within the class."  <u>Hanlon</u>,

6   150 F.3d at 1019.

7          The proposed class includes "all individuals in the

8   United States who purchased the following TRESemmé Naturals

9   products: (a) Nourishing Moisture Shampoo; (b) Nourishing

10  Moisture Conditioner; (c) Radiant Volume Shampoo; (d) Radiant

11  Volume Conditioner; (e) Vibrantly Smooth Shampoo; and (f)

12  Vibrantly Smooth Conditioner" while they were still being sold.

13  (Pls.' Mot. for Prelim. Approval ("Pls.' Mot.") at 2, 18 (Docket

14  No. 57).)  The class would be comprised of individuals alleging,

15  like the named plaintiffs, that they purchased a Unilever product

16  labeled "TRESemmé Naturals" that contained synthetic ingredients

17  in violation of state consumer protection laws.  Due to the

18  common core of salient facts and legal contentions, the proposed

19  class meets the commonality requirement.

20              c. <u>Typicality</u>

21          Typicality requires that named plaintiffs have claims

22  "reasonably coextensive with those of absent class members," but

23  their claims do not have to be "substantially identical."

24  <u>Hanlon</u>, 150 F.3d at 1020.  The test for typicality "is whether

25  other members have the same or similar injury, whether the action

26  is based on conduct which is not unique to the named plaintiffs,

27  and whether other class members have been injured by the same

28  course of conduct."  <u>Hanon v. Dataproducts Corp.</u>, 976 F.2d 497,

1   508 (9th Cir. 1992) (citation omitted).

2           The putative class members allege a simple set of facts

3   that is essentially identical to those alleged by the named

4   plaintiffs.  Both the class members and the named plaintiffs were

5   allegedly injured by paying a premium for the TRESemmé Naturals

6   products over comparable products that are not represented to be

7   natural.  (SAC ¶ 63.)  Although class members may have purchased

8   varying amounts of the products and therefore have claims for

9   different amounts, the class members' claims appear to be

10  reasonably coextensive with those of the named plaintiffs.

11  Moreover, the differences in amounts purchased are taken into

12  account by the settlement agreement's "Plan of Allocation," which

13  allots payments based on the number of products each class member

14  purchased.  (Settlement Agreement Ex. A, Plan of Allocation at 1

15  (Docket No. 57-2).)  The proposed class therefore meets the

16  typicality requirement.

17                  d. Adequacy of Representation

18          To resolve the question of adequacy, the court must

19  make two inquiries: "(1) do the named plaintiffs and their

20  counsel have any conflicts of interest with other class members

21  and (2) will the named plaintiffs and their counsel prosecute the

22  action vigorously on behalf of the class?"  Hanlon, 150 F.3d at

23  1020.  These questions involve consideration of a number of

24  factors, including "the qualifications of counsel for the

25  representatives, an absence of antagonism, a sharing of interests

26  between representatives and absentees, and the unlikelihood that

27  the suit is collusive."  Brown v. Ticor Title Ins., 982 F.2d 386,

28  390 (9th Cir. 1992).

1          First, there do not appear to be any conflicts of

2   interest.  The named plaintiffs' interests are generally aligned

3   with the putative class members.  The putative class members

4   suffered a similar injury as the named plaintiffs, and the

5   definition of the class is narrowly tailored and aligns with the

6   named plaintiffs' interests.  See Windsor, 521 U.S. at 625-26

7   ("[A] class representative must be part of the class and possess

8   the same interest and suffer the same injury as the class

9   members."); Murillo, 266 F.R.D. at 476 (finding that an

10  appropriate class definition ensured that "the potential for

11  conflicting interests will remain low while the likelihood of

12  shared interests remains high").

13          In this case, the settlement agreement provides a

14  collective incentive award of up to $15,000 to the named

15  plaintiffs, at the court's discretion.  (Settlement Agreement

16  ¶ 60.)  While the provision of an incentive award raises the

17  possibility that the named plaintiffs' interest in receiving that

18  award will cause their interests to diverge from the class's

19  interest in a fair settlement, the Ninth Circuit has specifically

20  approved the award of "reasonable incentive payments."  Staton,

21  327 F.3d at 977-78.  The court, however, must "scrutinize

22  carefully the awards so that they do not undermine the adequacy

23  of the class representatives."  Radcliffe v. Experian Info. Sys.,

24  Inc., 715 F.3d 1157, 1163 (9th Cir. 2013).

25          Courts have generally found that $5,000 incentive

26  payments are reasonable.  Hopson v. Hanesbrands Inc., Civ. No.

27  08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009)

28  (citing In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454, 463 (9th

1   Cir. 2000); In re SmithKline Beckman Corp., 751 F. Supp. 525, 535

2   (E.D. Pa. 1990); Alberto v. GMRI, Inc., 252 F.R.D. 652, 669 (E.D.

3   Cal. 2008).  Here, the incentive awards average $3,750 to each

4   named plaintiff and are to be paid separate and apart from the

5   settlement fund.  (Settlement Agreement ¶ 60.)  The max recovery

6   per bottle of TRESemmé Naturals per class member is $5.

7   (Settlement Agreement Ex. A, Plan of Allocation at 1.)  Class

8   members may recover for the purchase of up to ten bottles per

9   household without providing proof of purchase and can recover for

10  more than ten bottles if they submit adequate proof of a greater

11  number of purchases along with their claim forms.  (Id.)  While

12  the incentive award is relatively high in comparison to class

13  recovery, it is well below the $5,000 benchmark and does not

14  appear on its face to create a conflict of interest given that it

15  does not detract from the settlement fund.  Accordingly, the

16  court preliminarily finds that the proposed incentive awards do

17  not render plaintiffs inadequate representatives of the class.

18      The second prong of the adequacy inquiry examines the

19  vigor with which the named plaintiffs and their counsel have

20  pursued the common claims.  "Although there are no fixed

21  standards by which 'vigor' can be assayed, considerations include

22  competency of counsel and, in the context of a settlement-only

23  class, an assessment of the rationale for not pursuing further

24  litigation."  Hanlon, 150 F.3d at 1021.

25      Plaintiffs' counsel Mark Kindall and his colleagues at

26  Izard, Kindall & Raabe, LLP have significant experience with

27  litigating class action suits and have been appointed as lead

28  counsel or co-counsel in over sixty class actions.  (See Pls.'

9

1  Mot. Ex. 3, Firm Resume of Izard, Kindall & Raabe, LLP ("Izard

2  Resume") at 1 (Docket No. 57-4).)  Plaintiffs' liaison counsel

3  Bramson, Plutzik, Mahler & Birkhaeuser, LLP is similarly

4  experienced with class actions, having recovered hundreds of

5  millions of dollars in class action settlements while serving as

6  lead or co-counsel.  (See Pls.' Mot. Ex. 4, Firm Resume of

7  Bramson, Plutzik, Mahler & Birkhaeuser, LLP ("Bramson Resume") at

8  1 (Docket No. 57-5).)  The court finds no reason to doubt that

9  plaintiffs' attorneys are qualified to conduct the proposed

10  litigation and assess the value of the settlement.

11       In addition, plaintiffs' counsel seems to have

12  seriously considered the risks of continued litigation in

13  deciding to settle this action.  Both parties have aggressively

14  litigated the case, filing and briefing numerous motions,

15  engaging in extensive discovery, and participating in mediation.

16  (Kindall Decl. ¶¶ 2-14.)  Plaintiffs' counsel was therefore

17  informed about the strengths and weaknesses of this case when

18  they decided to accept the terms of the mediator's proposed

19  settlement agreement.  (Pls.' Mot. at 17.)

20       Accordingly, the court concludes that the absence of

21  conflicts of interest and the vigor of counsel's representation

22  satisfy Rule 23(a)'s adequacy assessment for the purpose of

23  preliminary approval.

24            2. Rule 23(b)

25       An action that meets all the prerequisites of Rule

26  23(a) may be certified as a class action only if it also

27  satisfies the requirements of one of the three subdivisions of

28  Rule 23(b).  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th

1   Cir. 2013).  Plaintiffs seek certification under Rule 23(b)(3),

2   which provides that a class action may be maintained only if (1)

3   "the court finds that questions of law or fact common to class

4   members predominate over questions affecting only individual

5   members" and (2) "that a class action is superior to other

6   available methods for fairly and efficiently adjudicating the

7   controversy."  Fed. R. Civ. P. 23(b)(3).

8           "Because Rule 23(a)(3) already considers commonality,

9   the focus of the Rule 23(b)(3) predominance inquiry is on the

10  balance between individual and common issues."  Murillo v. Pac.

11  Gas & Elec. Co., 266 F.R.D. 468, 476 (E.D. Cal. 2010) (citing

12  Hanlon, 150 F.3d at 1022); see also Windsor, 521 U.S. at 623

13  ("The Rule 23(b)(3) predominance inquiry tests whether proposed

14  classes are sufficiently cohesive to warrant adjudication by

15  representation.").

16          The class members' contentions appear to be similar, if

17  not identical.  Although there are differences in the total

18  number of bottles of TRESemmé Naturals products purchased by

19  class members, there is no indication that those variations are

20  "sufficiently substantive to predominate over the shared claims."

21  See id.  Accordingly, the court finds that common questions of

22  law and fact predominate over the class members' claims.

23          Rule 23(b)(3) also sets forth four non-exhaustive

24  factors to consider in determining whether "a class action is

25  superior to other available methods for fairly and efficiently

26  adjudicating the controversy":

27          (A) the class members' interests in individually
            controlling the prosecution or defense of separate
28          actions; (B) the extent and nature of any litigation

11

concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).  The parties settled this action prior to certification, making factors (C) and (D) inapplicable.  See Murillo, 266 F.R.D. at 477 (citing Windsor, 521 U.S. at 620).

Here, class members likely have little interest in individually pursuing litigation.  Plaintiffs allege that they suffered injury based on paying a premium for "natural" products. (SAC ¶¶ 6-9.)  Defendant's line of products only cost several dollars and the premium paid constituted only a small portion of the total cost of each product.  (Pls.' Mot. at 12.)  As a result, the damages for each individual class member would be nominal compared to the costs of litigation.  Even though class members could conceivably have an interest in individually controlling prosecution given that plaintiffs estimated the damages sustained by the class as a whole are approximately $12.65 million and the $3.25 million settlement fund is only 25% of this "best case" recovery amount, the costs and risks associated with pursuing litigation would likely outweigh recoverable damages for each individual class member.  (Id. at 12, 18; Kindall Decl. ¶ 17.)

The court is also unaware of any concurrent litigation already begun by class members regarding the TRESemmé Naturals products sold by defendant.  Objectors at the final fairness hearing may reveal otherwise.  See Alberto, 252 F.R.D. at 664. At this stage, the class action device appears to be the superior method for adjudicating this controversy.

12

1                 3. Rule 23(c)(2) Notice Requirements

2          If the court certifies a class under Rule 23(b)(3), it

3 "must direct to class members the best notice that is practicable

4 under the circumstances, including individual notice to all

5 members who can be identified through reasonable effort." Fed.

6 R. Civ. P. 23(c)(2)(B). Rule 23(c)(2) governs both the form and

7 content of a proposed notice. See Ravens v. Iftikar, 174 F.R.D.

8 651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin,

9 417 U.S. 156, 172–77 (1974)). Although that notice must be

10 "reasonably certain to inform the absent members of the plaintiff

11 class," actual notice is not required. Silber v. Mabon, 18 F.3d

12 1449, 1454 (9th Cir. 1994) (citation omitted).

13          The settlement agreement provides that KCC Class Action

14 Service LLC ("KCC") will provide notice to the class and

15 administer the claims process. (Settlement Agreement at 2.)

16 "KCC has successfully served as the notice and claim

17 administrator [in] a number of other consumer class action

18 settlements where it has employed similar notice plans." (Pls.'

19 Mot. at 15.) Because defendant does not have records showing who

20 purchased its products, KCC used class demographics to develop a

21 notice plan that it estimates will reach over 70% of the class

22 members. (Id. at 14; Settlement Agreement Ex. D, Settlement

23 Notice Plan at 10 (Docket. No. 57-2).) KCC will place month-long

24 banner advertisements on websites that class members are likely

25 to visit, an advertisement in People magazine for one week's

26 issue, and a four-week advertisement in the Sacramento Bee. (Id.

27 at 7.) Further, KCC will provide ongoing toll-free telephone

28 support and a dedicated class action website where class members

1  can obtain additional information and fill out online claim

2  forms.  (Settlement Agreement Ex. D, Settlement Notice Plan at

3  14.)

4          The notice explains the proceedings; defines the scope

5  of the class; informs the class member of the claim form

6  requirement and the binding effect of the class action; describes

7  the procedure for opting out and objecting; provides the time and

8  date of the fairness hearing; and directs interested parties to

9  more detailed information on the settlement website.  (Settlement

10  Agreement Ex. E, Proposed Notice.)  The notice makes clear that

11  class members may recover for the purchase of up to ten bottles

12  per household without providing proof of purchase and can recover

13  for more than ten bottles if they submit adequate proof of a

14  greater number of purchases along with their claim forms.  (Id.)

15  The content of the notice therefore satisfies Rule 23(c)(2)(B).

16  See Fed. R. Civ. P. 23(c)(2)(B); see also Churchill Vill., L.L.C.

17  v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) ("Notice is

18  satisfactory if it 'generally describes the terms of the

19  settlement in sufficient detail to alert those with adverse

20  viewpoints to investigate and to come forward and be heard.'"

21  (quoting Mendoza v. Tucson Sch. Dist. No. 1, 623 F.2d 1338, 1352

22  (9th Cir. 1980)).

23          The court is also satisfied with the claim form, which

24  allows each class member to specify his or her total number of

25  bottles purchased of each eligible TRESemmé Naturals product.

26  (Settlement Agreement Ex. F, Claim Form at 2 (Docket No. 57-2).)

27  Further, the claim form specifies the deadline for submission and

28  clarifies that completion of the form is necessary for receipt of

14

1  payment.  (Id. at 1.)

2          Given that there is no record of potential class

3  members and that KCC is experienced in providing similar notice

4  plans in consumer class action settlements, the court is

5  satisfied that this system is reasonably calculated to provide

6  notice to class members and is the best form of notice available

7  under the circumstances as required under Rule 23(c)(2).

8          B. Preliminary Settlement Approval

9          After determining that the proposed class satisfies the

10  requirements of Rule 23, the court must determine whether the

11  terms of the parties' settlement appear fair, adequate, and

12  reasonable.  See Fed. R. Civ. P. 23(e)(2); Hanlon, 150 F.3d at

13  1026.  This process requires the court to "balance a number of

14  factors," including:

15          the strength of the plaintiff's case; the risk,
       expense, complexity, and likely duration of further
16       litigation; the risk of maintaining class action
       status throughout the trial; the amount offered in
17       settlement; the extent of discovery completed and the
       stage of the proceedings; the experience and views of
18       counsel; the presence of a governmental participant;
       and the reaction of the class members to the proposed
19       settlement.

20  Hanlon, 150 F.3d at 1026.  Many of these factors cannot be

21  considered until the final fairness hearing, so the court need

22  only conduct a preliminary review at this time to resolve any

23  "glaring deficiencies" in the settlement agreement before

24  authorizing notice to class members.  Ontiveros v. Zamora, Civ.

25  No. 2:08-567 WBS DAD, 2014 WL 3057506, at *12 (E.D. Cal. July 7,

26  2014) (citing Murillo, 266 F.R.D. at 478).

27          At the preliminary stage, "the court need only

28  'determine whether the proposed settlement is within the range of

1  possible approval.'"  Murillo, 266 F.R.D. at 479 (quoting

2  Gautreaux v. Pierce, 690 F.2d 616, 621 n.3 (7th Cir. 1982)).

3  This generally requires consideration of "whether the proposed

4  settlement discloses grounds to doubt its fairness or other

5  obvious deficiencies, such as unduly preferential treatment of

6  class representatives or segments of the class, or excessive

7  compensation of attorneys."  Id. (quoting W. v. Circle K Stores,

8  Inc., Civ. No. 04-0438 WBS GGH, 2006 WL 1652598, at *11-12 (E.D.

9  Cal. June 13, 2006)).

10            1. Negotiation of the Settlement Agreement

11            Courts often begin by examining the process that led to

12  the settlement's terms to ensure that those terms are "the result

13  of vigorous, arms-length bargaining" and then turn to the

14  substantive terms of the agreement.  See, e.g., West, 2006 WL

15  1652598, at *11-12; In re Tableware Antitrust Litig., 484 F.

16  Supp. 2d 1078, 1080 (N.D. Cal. 2007) ("[P]reliminary approval of

17  a settlement has both a procedural and a substantive

18  component.").  Plaintiffs' counsel states that the parties

19  reached the settlement after two years of litigation involving

20  "substantial discovery," an "extensive and contentious mediation

21  process before a highly experienced and well-regarded mediator,"

22  and thorough motions practice.  (Pls.' Mot. at 17.; Kindall Decl.

23  ¶ 15.); see La Fleur v. Med. Mgmt. Int'l, Inc., Civ. No. 5:13-

24  00398, 2014 WL 2967475, at *4 (N.D. Cal. June 25, 2014)

25  ("Settlements reached with the help of a mediator are likely non-

26  collusive.").  Plaintiffs' counsel declares that his decision to

27  accept the settlement agreement takes into account the

28  "significant risks" and delays associated with continuing

16

1   litigating.  (Kindall Decl. ¶¶ 18-19.)

2          In light of these considerations, the court finds no

3   reason to doubt the parties' representations that the settlement

4   was the result of vigorous, arms-length bargaining.

5                  2. <u>Amount Recovered and Distribution</u>

6          In determining whether a settlement agreement is

7   substantively fair to the class, the court must balance the value

8   of expected recovery against the value of the settlement offer.

9   See <u>Tableware</u>, 484 F. Supp. 2d at 1080.  This inquiry may involve

10  consideration of the uncertainty class members would face if the

11  case were litigated to trial.  See <u>Ontiveros</u>, 2014 WL 3057506, at

12  *14.

13         Here, the settlement achieved a "key goal" of the

14  litigation in that it resulted in the discontinuance of the

15  TRESemmé Naturals line of products.  Further, as discussed above,

16  the $3.25 million settlement fund is more than 25% of the "best

17  case" damages of $12.65 million, as calculated by plaintiffs.

18  (Pls.' Mot. at 18.; Kindall Decl. ¶ 17.)

19         The court however notes that the settlement agreement

20  requires class members to take the affirmative step of <u>opting in</u>

21  to receive payment and <u>opting out</u> if they do not wish to be part

22  of the settlement class.  (Settlement Agreement Ex. E, Notice of

23  Class Action Settlement ("Notice") at 2-4 (Docket No. 52-2).)

24  Class members who do not request to be excluded will release

25  defendant from any underlying claims.  (<u>Id.</u> at 3-4)  Therefore,

26  there is a risk that some members of the class will opt into the

27  judgment by default, thus releasing defendant, despite receiving

28  no recovery simply because they fail to timely return the claim

                                    17

1    form.

2           While the settlement amount is on the low-end of the

3    expected recovery range and the agreement contains a potentially

4    unfair opt-in/opt-out requirement, there are many uncertainties

5    associated with pursuing litigation that justify this recovery.

6    Plaintiffs' counsel contends that plaintiffs would have been

7    required to prove both that the TRESemmé Naturals labeling was

8    likely to deceive or confuse reasonable persons and that those

9    representations are material to reasonable persons.  (Kindall

10   Decl. ¶ 18.)  Further, establishing that all class members paid a

11   price premium that was directly related to the product being

12   "natural," rather than because of some other characteristic of

13   the product, and quantifying this premium would have involved a

14   battle of the experts.  (Id.)  Finally, "[w]hichever party did

15   not prevail would likely have appealed the judgment."  (Id. at

16   ¶ 19.)

17          In light of the uncertainties associated with pursuing

18   litigation, the court will grant preliminary approval to the

19   settlement because it is within the range of possible approval.

20   Murillo, 266 F.R.D. at 479 (quoting Gautreaux v. Pierce, 690 F.2d

21   616, 621 n.3 (7th Cir. 1982)).

22          3. Attorney's Fees

23           If a negotiated class action settlement includes an

24   award of attorney's fees, that fee award must be evaluated in the

25   overall context of the settlement.  Knisley v. Network Assocs.,

26   312 F.3d 1123, 1126 (9th Cir. 2002); Monterrubio, 291 F.R.D. at

27   455.  The court "ha[s] an independent obligation to ensure that

28   the award, like the settlement itself, is reasonable, even if the

1   parties have already agreed to an amount."   In re Bluetooth

2   Headset Prods. Liab. Litig., 654 F.3d 935, 941 (9th Cir. 2011).

3   　　　　　The settlement agreement provides that plaintiffs'

4   counsel will apply to the court for a fee award of up to 30% of

5   the gross settlement amount, or $975,000.  (Settlement Agreement

6   ¶ 56.)  Attorney's fees are to be paid from the settlement fund.

7   (Id. ¶ 15.)  Defendant agrees not to oppose plaintiffs' petition

8   for the fee award so long as it does not exceed 30%.  (Id. ¶ 56.)

9   If the court does not approve the fee award in whole or in part,

10  it will not prevent the settlement agreement from becoming

11  effective or be grounds for termination.  (Id. ¶ 58.)

12  　　　　　In deciding the attorney's fees motion, the court will

13  have the opportunity to assess whether the requested fee award is

14  reasonable by multiplying a reasonable hourly rate by the number

15  of hours counsel reasonably expended.  See Van Gerwen v. Gurantee

16  Mut. Life. Co., 214 F.3d 1041, 1045 (9th Cir. 2000).  As part of

17  this lodestar calculation, the court may take into account

18  factors such as the "degree of success" or "results obtained" by

19  plaintiffs' counsel.  See Cunningham v. County of Los Angeles,

20  879 F.2d 481, 488 (9th Cir. 1988).  If the court, in ruling on

21  the fees motion, finds that the amount of the settlement warrants

22  a fee award at a rate lower than what plaintiffs' counsel

23  requests, then it will reduce the award accordingly.  The court

24  will therefore not evaluate the fee award at length here in

25  considering whether the settlement is adequate.

26  　　　　　IT IS THEREFORE ORDERED that plaintiffs' motion for

27  preliminary certification of a conditional settlement class and

28  preliminary approval of the class action settlement be, and the

19

1    same hereby is, GRANTED.

2         IT IS FURTHER ORDERED THAT:

3         (1) The claims administrator shall notify class members

4    of the settlement in the manner specified within the Settlement

5    Notice Plan;

6         (2) Class members who want to receive a settlement

7    payment under the settlement agreement must accurately complete

8    and submit the online claim form or deliver the claim form to the

9    claims administrator no later than September 19, 2016;

10        (3) Class members who want to object to the settlement

11   agreement must either deliver written objections to the Clerk of

12   Court for the Eastern District of California, the law firm of

13   Izard, Kindall & Raabe, LLP, and the law firm of Kirkland & Ellis

14   LLP postmarked no later than September 19, 2016 or appear in

15   person at the final fairness hearing.  The objection must include

16   the objecting person's full name, current address, telephone

17   number, signature, a statement that the class member purchased

18   one of the products, all objections and reasons for the

19   objections, and any supporting papers.  Any class member who

20   submits an objection remains eligible to submit a claim form and

21   receive monetary compensation;

22        (4) Class members who fail to object to the settlement

23   agreement in the manner specified above shall be deemed to have

24   waived their right to object to the settlement agreement and any

25   of its terms;

26        (5) Class members who want to be excluded from the

27   settlement must submit the request for exclusion to the claims

28   administrator no later than September 19, 2016.  Class members

1   who opt out shall not receive any settlement proceeds or be bound

2   by any of the terms of the settlement, including the release

3   provisions;

4           (6) The following TRESemmé Naturals Settlement Class is

5   provisionally certified:

6       All individuals in the United States who purchased the
        following TRESemmé Naturals products: (a) Nourishing
7       Moisture Shampoo; (b) Nourishing Moisture Conditioner;
        (c) Radiant Volume Shampoo; (d) Radiant Volume
8       Conditioner; (e) Vibrantly Smooth Shampoo; and (f)
        Vibrantly Smooth Conditioner (collectively, the
9       "products"). Specifically excluded from the Class are
        (1) defendant, (2) the officers, directors, or
10      employees of defendant and their immediate family
        members, (3) any entity in which defendant has a
11      controlling interest, (4) any affiliate, legal
        representative, heir, or assign of defendant, (5) all
12      federal court judges who have presided over this action
        and their immediate family members, (6) all persons who
13      submit a valid request for exclusion from the class,
        and (7) those who purchased the products for the
14      purpose of resale.

15          (7) Plaintiffs Alba Morales, Lanie Cohen, Linda

16  Clayman, and Kenneth Drew are conditionally certified as the

17  class representatives to implement the parties' settlement in

18  accordance with the settlement agreement. The law firm of Izard,

19  Kindall & Raabe, LLP, through Mark Kindall, is conditionally

20  appointed as class counsel. The law firm of Bramson, Plutzik,

21  Mahler & Birkhaeuser, LLP, through Alan Plutzik and Michael

22  Strimling, is conditionally appointed as liaison counsel.

23  Plaintiffs and counsel must fairly and adequately protect the

24  class's interests;

25          (8) The parties agree that KCC will serve as the claims

26  administrator;

27          (9) If the settlement agreement terminates for any

28  reason, the following will occur: (a) class certification will be

21

1    automatically vacated; (b) plaintiffs will stop functioning as

2    class representatives; and (c) this action will revert to its

3    previous status in all respects as it existed immediately before

4    the parties executed the settlement agreement;

5              (10) All discovery and pretrial proceedings and

6    deadlines are stayed and suspended until further notice from the

7    court, except for such actions as are necessary to implement the

8    settlement agreement and this Order;

9              (11) The final fairness hearing is set for October 17,

10   2016 at 1:30 p.m., in Courtroom No. 5, to determine whether the

11   settlement agreement should be finally approved as fair,

12   reasonable, and adequate;

13             (12) The following are the certain associated dates in

14   this settlement:

15                  (a) The claims administrator shall publish notice

16   pursuant to the notice plan by August 11, 2016;

17                  (b) Class members shall file objections, requests

18   for exclusion, and claim forms by September 19, 2016;

19                  (c) Plaintiffs shall file a motion for attorney's

20   fees no later than September 12, 2016;

21             (13) The parties shall file briefs in support of the

22   final approval of the settlement no later than September 12,

23   2016.

24   Dated:   July 11, 2016

25                            WILLIAM B. SHUBB
                             UNITED STATES DISTRICT JUDGE

26

27

28