Alan R. Plutzik (State Bar No. 77785)
Michael S. Strimling (State Bar No. 96135)
**BRAMSON, PLUTZIK, MAHLER**
**& BIRKHAEUSER LLP**
2125 Oak Grove Road
Walnut Creek, CA 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792
aplutzik@bramsonplutzik.com
mstrimling@bramsonplutzik.com

Mark P. Kindall (State Bar No. 138703)
Robert A. Izard (*Admitted pro hac vice*)
**IZARD, KINDALL & RAABE, LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290
mkindall@ikrlaw.com
rizard@ikrlaw.com

*Attorneys for Plaintiffs*
[Additional Counsel on Signature Page]

## UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ALBA MORALES; LAINIE COHEN; LINDA CLAYMAN; and KENNETH DREW, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> CONOPCO INC., d/b/a UNILEVER, <br><br> Defendant. | CIV. NO.  2:13-cv-2213 WBS EFB <br><br> **PLAINTIFFS' NOTICE OF MOTION AND MOTION FOR AWARD OF ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND CASE CONTRIBUTION AWARDS** <br><br> Date: October 17, 2016 <br><br> Time: 1:30 p.m. <br><br> Courtroom 5, 14th Floor <br><br> Hon. William B. Shubb |

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that on October 17, 2016 at 1:30 p.m., or as soon thereafter as the matter may be heard by the Court, located at 501 I Street, Sacramento, California, 95814, Courtroom 5, 14th Floor, in the courtroom of the Honorable William B. Shubb, Plaintiffs will move for the Court to: (1) approve an award of attorneys' fees in the amount of $812,500.00, representing 25 percent of the Settlement Fund, to be paid from the Settlement Fund; (2) approve an award of $70,700.54 to be paid from the Settlement Fund to reimburse litigation reasonable litigation expenses; and (3) approve case contribution awards to each of the named Plaintiffs, to be paid by Defendant separate from, and in addition to, the Settlement Fund.

Payment of attorneys' fees and expenses from the "common fund" obtained for the Class is reasonable, appropriate, and amply supported by law.  Moreover, the Ninth Circuit has specifically approved the payment of reasonable case contribution awards to lead plaintiffs whose efforts were instrumental in obtaining benefits for the class as a whole.

The Motion is based on the accompanying Declarations of Mark Kindall ("Kindall Decl."), Alan Plutzik, the attachments thereto, as well as the attached Memorandum of Law, the pleadings and papers on file in this case and any other written and oral arguments that may be presented to the Court.

Notice of Motion & Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards
Case No. 2:13-cv-2213 WBS EFB

ii

1  Dated:  September 12, 2016                Respectfully submitted,

2

3                                           By: /s/ Mark P. Kindall
                                            Mark P. Kindall (State Bar No. 138703)
4                                           Robert A. Izard (admitted pro hac vice)
                                            **IZARD, KINDALL & RAABE, LLP**
5                                           29 South Main Street, Suite 305
                                            West Hartford, CT 06107
6                                           Telephone: (860) 493-6292
                                            Facsimile: (860) 493-6290
7                                           mkindall@ikrlaw.com
                                            rizard@ikrlaw.com
8

9                                           Alan R. Plutzik (State Bar No. 77785)
                                            **BRAMSON, PLUTZIK, MAHLER**
10                                          **& BIRKHAEUSER LLP**
                                            2125 Oak Grove Road
11                                          Walnut Creek, CA 94598
                                            Telephone: (925) 945-0200
12                                          Facsimile: (925) 945-8792
                                            aplutzik@bramsonplutzik.com
13

14                                          Joseph J. DePalma (admitted pro hac vice)
                                            Katrina Carroll (admitted pro hac vice)
15                                          **LITE DEPALMA GREENBERG, LLC**
                                            Two Gateway Center, 12th Floor
16                                          Newark, New Jersey 07102
                                            Telephone: (973) 623-3000
17                                          Facsimile: (973) 623-0858
                                            jdepalma@litedepalma.com
18                                          kcarroll@litedepalma.com

19

20                                          Nicole A. Veno (admitted pro hac vice)
                                            **LAW OFFICE OF NICOLE VENO**
21                                          573 Hopmeadow Street
                                            Simsbury, CT 06070
22                                          Telephone: (860) 474-4024
                                            Facsimile: (860) 717-3207
23                                          nveno@venolaw.com

24

25                                          *Attorneys for Plaintiffs*

26

27

28

Notice of Motion & Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards
Case No. 2:13-cv-2213 WBS EFB

iii

## MEMORANDUM OF POINTS AND AUTHORITIES

### TABLE OF CONTENTS

I.     INTRODUCTION ...........................................................................................1

II.    BACKGROUND FACTS ..............................................................................1

III.   ARGUMENT ................................................................................................2

     A.    The Plaintiffs' Attorneys' Fee Request Is Reasonable and Appropriate ................2

         1.   The Court Should Award Attorneys' Fees Based on a Percentage of the Settlement ....................................................................................2

         2.   A Fee Equal to 25 Percent of the Common Settlement Fund is Fair ................4

             a.   The Results Achieved .......................................................5

             b.   The Riskiness & Burden of Representation Where Payment of Fees and Expenses Was Wholly Contingent ....................7

             c.   The Complexity of the Case .............................................10

             d.   Counsels' Skill, Experience and Effort..............................11

             e.   Reaction of the Class ........................................................13

          3.   A Lodestar Crosscheck Confirms That a 25 Percent Fee Award is Fair and Reasonable .......................................................................14

         4.   Taking All Relevant Factors into Account, the Requested 25 Percent Fee is Fair and Reasonable ............................................16

     B.    The Requested Litigation Expenses Are Reasonable ...........................................17

     C.  Plaintiffs Should Receive Case Contribution Awards .................................18

IV.   CONCLUSION.............................................................................................22

Notice of Motion & Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards
Case No. 2:13-cv-2213 WBS EFB

iv

1

2

# TABLE OF AUTHORITIES

3

*Cases*

4
*Abrams v. Lightolier Inc.,* 50 F.3d 1204 (3d Cir. 1995) ....................................................17

5
*Alberto v. GMRI, Inc.,* 252 F.R.D. 652 (E.D. Cal. 2008) ...............................................21

6
*Alberto v. GMRI, Inc.,* No. CIV 07-1895 WBS DAD,
   2008 WL 4891201 (E.D. Cal. Nov. 12, 2008) .............................................4, 6, 10, 11, 17

7
*Amchem Prods., Inc. v. Windsor,* 521 U.S. 591 (1997) .....................................................6

8
*Balser v. Hain Celestial Grp., Inc.,* 640 F. App'x 694 (9th Cir. 2016) .........................11

9
*Boeing Co. v. Van Gemert,* 444 U.S. 472 (1980) .............................................................2

10

11
*Boyd v. Bank of Am. Corp.,* No. SACV 13-0561-DOC,
   2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ...............................................................12

12
*Burden v. SelectQuote Ins. Servs.,* No. C 10-5966 LB,
   2013 WL 3988771 (N.D. Cal. Aug. 2, 2013) ..................................................................8

13

14
*Carter v. Anderson Merchandisers, LP,* No. EDCV 08-0025-VAP OPX,
   2010 WL 1946757 (C.D. Cal. May 11, 2010) ...............................................................16

15
*Cicero v. DirecTV, Inc.,* No. EDCV 07-1182,
   2010 WL 2991486 (C.D. Cal. July 27, 2010) .................................................................8

16

17
*Comcast v. Behrens,* __ U.S. __, 133 S. Ct. 1426 (2013) ...............................................10

*Craft v. County of San Bernardino,* 624 F. Supp. 2d 1113 (C.D. Cal. 2008) ...............8

18

19
*de Mira v. Heartland Employment Serv.,* LLC, No. 12-CV-04092 LHK,
   2014 WL 1026282 (N.D. Cal. Mar. 13, 2014) .................................................................6

20
*Estrada v. iYogi, Inc.,* No. 2:13-01989 WBS CKD,
   2016 WL 310279 (E.D. Cal. Jan. 26, 2016) .....................................................................6

21

22
*Fischel v. Equitable Life Assur. Society of U.S.,* 307 F.3d 997 (9th Cir. 2002) ...............2, 7, 16

23
*Gallucci v. Boiron, Inc.,* No. 11CV2039 JAH NLS,
   2012 WL 5359485 (S.D. Cal. Oct. 31, 2012), *aff'd sub nom.*
   *Gallucci v. Gonzales,* 603 F. App'x 533 (9th Cir. 2015) ..................................................19

24

25
*Goldberger v. Integrated Res., Inc.,* 209 F.3d 43 (2d Cir. 2000) .................................15

26
*Gustafson v. Valley Ins. Co.,* No. CV 01-1575-BR,
   2004 WL 2260605 (D. Or. Oct. 6, 2004) .........................................................................7

27
*Harris v. Marhoefer,* 24 F.3d 16 (9th Cir. 1994) ..........................................................17

28

Notice of Motion & Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards
Case No. 2:13-cv-2213 WBS EFB

v

*HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.,* No. 07 CV 2245 MMA,
   2010 WL 4156342 (S.D. Cal. Oct. 15, 2010) ..................................................14

*Hensley v. Eckerhart,* 461 U.S. 424 (1983) ..........................................................5

*Hopeson v. Hanesbrands Inc.,* Civ. No. 08-0844 EDL,
   2009 WL 928133 (N.D. Cal. Apr. 3, 2009) .................................................20

*Hopkins v. Stryker Sales Corp.,* No. 11-CV-02786-LHK,
   2013 WL 496358 (N.D. Cal. Feb. 6, 2013) ..................................................16

*In re Abrams & Abrams, P.A.,* 605 F.3d 238 (4th Cir. 2010) ..........................3

*In re Activision Sec. Litig.,* 723 F. Supp. 1373 (N.D. Cal. 1989) ....................3

*In re Apple Computer, Inc. Derivative Litig.,* No. C 06-4128 JF (HRL),
   2008 WL 4820784 (N.D. Cal. Nov. 5, 2008) ...............................................11

*In re Apple iPhone/iPod Warranty Litig.,* 40 F. Supp. 3d 1176 (N.D. Cal. 2014) ........................6

*In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935 (9th Cir. 2011) ........................3, 4, 15

*In re Cathode Ray Tube (CRT) Antitrust Litig.,* No. 1917,
   2016 WL 4126533 (N.D. Cal. Aug. 3, 2016) ...............................................11

*In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,*
   109 F.3d 602 (9th Cir. 1997) .............................................................16, 17

*In re ECOtality, Inc. Sec. Litig.,* No. 13-CV-03791-SC,
   2015 WL 5117618 (N.D. Cal. Aug. 28, 2015) .............................................15

*In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,*
   55 F.3d 768 (3d Cir. 1995) ...................................................................14

*In re Heritage Bond Litig.,* No. 02-1475, 2005 WL 1594403
   (C.D. Cal. June 10, 2005) ...............................................................7, 10, 13

*In re Immune Response Sec. Litig.,* 497 F. Supp. 2d 1166 (S.D. Cal. 2007) .................15

*In re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454 (9th Cir. 2000) ..........................20, 21

*In re MetLife Demutualization Litig.,* 689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..............2

*In re Nuvelo, Inc. Sec. Litig.,* No. C 07-04056 CRB,
   2011 WL 2650592 (N.D. Cal. July 6, 2011) .........................................8, 11, 13

*In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036 (N.D. Cal. 2008) ....................2, 7

*In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934 (9th Cir. 2015) .............2, 4. 14, 17

*In re Prudential Ins. Co. Am. Sales Litig.,* 148 F.3d 283 (3d Cir.1998) ...................15

*In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294 (3d Cir. 2005), *as amended* (Feb. 25, 2005).........15

Notice of Motion & Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards
Case No. 2:13-cv-2213 WBS EFB

vi

*In re SmithKline Beckman Corp.*, 751 F. Supp. 525 (E.D. Pa. 1990) ............................................21

*In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231 (D. Del. 2002),
    *aff'd*, 391 F.3d 516 (3d Cir. 2004) ...................................................................................16

*In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291 (9th Cir. 1994) ....................2, 7, 9

*In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.*,
    364 F. Supp. 2d 980 (D. Minn. 2005) ................................................................................9

*Johnson v. Gen. Mills, Inc.*, No. SACV 10-00061-CJC,
    2013 WL 3213832 (C.D. Cal. June 17, 2013) ....................................................................8

*Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir. 1974) ..............................10

*Jones v. ConAgra Foods, Inc.*, No. C 12-01633 CRB,
    2014 WL 2702726 (N.D. Cal. June 13, 2014) ....................................................................9

*Kanawi v. Bechtel Corp.*, No. C 06-05566 CRB,
    2011 WL 782244 (N.D. Cal. Mar. 1, 2011) ...............................................................7, 8, 14

*Kerr v. Screen Extras Guild, Inc.*, 526 F.2d 67 (9th Cir.1975), *abrogated on other grounds*,
    *City of Burlington v. Dague*, 505 U.S. 557 (1992) ...........................................................15

*Kirchoff v. Flynn*, 786 F.2d 320 (7th Cir. 1986) ........................................................................3

*Kosta v. Del Monte Foods, Inc.*, 308 F.R.D. 217 (N.D. Cal. 2015) ............................................9

*Mark v. Valley Ins. Co.*, No. CV 01-1575-BR, 2005 WL 1334374 (D. Or. May 31, 2005) .....7, 13

*Miller v. Ghirardelli Chocolate Co.*, No. 12-CV-04936-LB,
    2015 WL 758094 (N.D. Cal. Feb. 20, 2015) ...............................................................5, 8

*Ontiveros v. Zamora*, No. 2:08-567 WBS DAD,
    2014 WL 3057506 (E.D. Cal. July 7, 2014) .........................................................20, 21

*Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268 (9th Cir. 1989) .....................................4

*Radcliffe v. Experian Info. Sys., Inc.*, 715 F.3d 1157 (9th Cir. 2013) ..........................................18

*Ralston v. Mortgage Inv'rs Grp., Inc.*, No. 508CV00536JFPSG,
    2013 WL 5290240 (N.D. Cal. Sept. 19, 2013) ...................................................................16

*Richardson v. THD At-Home Servs., Inc.*, No. 1:14-CV-0273-BAM,
    2016 WL 1366952 (E.D. Cal. Apr. 6, 2016) .......................................................................7

*Rieckborn v. Velti PLC*, No. 13-CV-03889-WHO,
    2015 WL 468329 (N.D. Cal. Feb. 3, 2015) ......................................................................15

*Rodriguez v. Disner*, 688 F.3d 645 (9th Cir. 2012) ....................................................................4

*Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948 (9th Cir. 2009) ......................................................18

Notice of Motion & Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards
Case No. 2:13-cv-2213 WBS EFB

vii

*Shames v. Hertz Corp.,* No. 07-CV-2174-MMA WMC, 2012 WL 5392159
(S.D. Cal. Nov. 5, 2012) ................................................................................6

*Silverman v. Motorola Solutions, Inc.,* 739 F.3d 956 (7th Cir. 2013) .......................................7, 9

*Six (6) Mexican Workers v. Ariz. Citrus Growers,* 904 F.2d 1301 (9th Cir. 1990) ......................4

*Stanger v. China Elec. Motor, Inc.,* 812 F.3d 734 (9th Cir. 2016) .......................................15, 16

*Staton v. Boeing,* 327 F.3d 938 (9th Cir. 1992) ..........................................................18

*Steiner v. Am. Broad. Co.,* 248 F. App'x 780 (9th Cir. 2007) ..........................................16

*Stetson v. Grissom,* 821 F.3d 1157 (9th Cir. 2016) .................................................14, 15

*Sullivan v. DB Investments, Inc.,* 667 F.3d 273 (3d Cir. 2011) ........................................9

*Syed v. M-I LLC,* No. 1:14-742 WBS BAM,
2016 WL 310135 (E.D. Cal. Jan. 26, 2016) ..................................................2, 4, 15, 17, 21

*Sykes v. Harris,* No. 09 CIV. 8486 (DC), 2016 WL 3030156 (S.D.N.Y. May 24, 2016) ...........15

*Thieriot v. Celtic Ins. Co.,* No. C-10-04462-LB,
2011 WL 1522385 (N.D. Cal. Apr. 21, 2011) .................................................................8

*Vizcaino v. Microsoft Corp.,* 290 F.3d 1043 (9th Cir. 2002) ............................... 2-5, 8, 14, 16, 17

*Wade v. Minatta Transp. Co.,* No. C10-2796 BZ,
2012 WL 300397 (N.D. Cal. Feb. 1, 2012) ....................................................................4

*Weeks v. Kellogg Co.,* No. CV 09-08102 MMM RZX, 2013 WL 6531177
(C.D. Cal. Nov. 23, 2013) ..............................................................................6

*Wells v. Sullivan,* 907 F.2d 367 (2d Cir. 1990) ...........................................................3

*Williams v. MGM-Pathe Commc'ns Co.,* 129 F.3d 1026 (9th Cir. 1997) ................................6

*Yarrington v. Solvay Pharm., Inc.,* 697 F. Supp. 2d 1057 (D. Minn. 2010).............................16


**Treatises**

MANUAL FOR COMPLEX LITIGATION (FOURTH) ..........................................................3

Rubenstein, Conte and Newberg, NEWBERG ON CLASS ACTIONS  (5th ed. 2015)................8

Notice of Motion & Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards
Case No. 2:13-cv-2213 WBS EFB

viii

## I.   INTRODUCTION

Plaintiff Alba Morales, Kenneth Drew, Lainie Cohen and Linda Clayman ("Plaintiffs") brought this class action in 2013 to challenge the sale of hair care products (the "Products") that Defendant Conopco, Inc., d/b/a Unilever ("Defendant") labeled "TRESemmé Naturals" even though they contain numerous synthetic ingredients.  As a result of the litigation, Defendant agreed to – and has – discontinued the sale of the Products, and has agreed to settle the damages claim on behalf of a nationwide class for $3.25 million.  This is a very good result for the Class, achieved through the commitment of time and effort by Plaintiffs as well as the hard work, skill and persistence of Interim Class Counsel Izard, Kindall & Raabe LLP, supported by Bramson, Plutzik, Mahler & Birkhaeuser, LLP, acting as liaison counsel.

Plaintiffs request that the Court approve an award of attorneys equal to 25 percent of the $3.25 million settlement fund, plus payment of litigation expenses in the amount of $70,700.54, to be paid from the Settlement Fund.  In addition, Plaintiffs request that the Court approve modest case contribution awards of between $1,000 and $6,000 to each of the four named Plaintiffs, to be paid by Defendant separate from, and in addition to, the $3.25 million Settlement Fund, for their time and effort on behalf of the Settlement Class.  These requests are fair, reasonable, and amply supported by caselaw in this Circuit and others.

## II.   BACKGROUND FACTS

For purposes of brevity, Plaintiffs incorporate by reference the recitation of background facts and details of the Settlement set out in Section II of the Memorandum of Law in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement ("Final Appr. Br."), as well as the Declaration of Mark P. Kindall In Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Case Contribution Awards (hereinafter the "Kindall Decl."), the Declaration of Alan R. Plutzik on Behalf of Bramson, Plutzik, Mahler & Birkhaeuser, LLP in Support of Plaintiffs' Motion for Final Approval of Class Action Settlement and Motion for Award of Attorneys' Fees, Reimbursement of Expenses, and Case Contribution Awards (the "Plutzik Decl."), and all attachments to both

Declarations, filed contemporaneously.  Specific facts relevant to this motion will be discussed in the body of this brief.

## III.   ARGUMENT

### A.   The Plaintiffs' Attorneys' Fee Request Is Reasonable and Appropriate

Class counsel whose efforts create a common fund of money for class members are entitled to a payment from that fund. *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478 (1980) ("[A] litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole."); *Fischel v. Equitable Life Assur. Society of U.S.,* 307 F.3d 997, 1006 (9th Cir. 2002); *Syed v. M-I LLC,* No. 1:14-742 WBS BAM, 2016 WL 310135, at * 9 (E.D. Cal. Jan. 26, 2016) (quoting *Boeing*).  Put another way, "those who benefit from the creation of the fund should share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.,* 19 F.3d 1291, 1300 (9th Cir. 1994) ("WPPSS").  Moreover, awards of fair attorney's fees from a common fund should also serve to encourage skilled counsel to represent those who seek redress for damages inflicted on entire classes of people, and to discourage future alleged misconduct of a similar nature. *See, e.g., In re MetLife Demutualization Litig.,* 689 F. Supp. 2d 297, 356 (E.D.N.Y. 2010).

Here, Plaintiffs' counsel have brought this case to a successful conclusion after over three years of litigation, spending over fourteen hundred attorney hours and over $70,000 in out-of-pocket expenses, purely on contingency.  They have earned a reasonable and appropriate fee.

#### 1.   The Court Should Award Attorneys' Fees Based on a Percentage of the Settlement

Courts in the Ninth Circuit may award attorneys' fees in common fund cases based on either the lodestar method and the percentage-of-recovery method. *In re Online DVD-Rental Antitrust Litig.,* 779 F.3d 934, 949 (9th Cir. 2015).  However, courts most often use the percentage method. *See In re Omnivision Techs., Inc.,* 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008)  (stating "use of the percentage method in common fund cases appears to be dominant" and its "advantages . . . have been described thoroughly by other courts."); *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050 (9th

Notice of Motion & Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards
Case No. 2:13-cv-2213 WBS EFB

2

Cir. 2002) (approving use of percentage method); *In re Activision Sec. Litig.,* 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) ("this court concludes that in class action common fund cases the better practice is to set a percentage fee").  This percentage method is particularly appropriate "where, as here, 'the benefit to the class is easily quantified.'" *Syed*, 2016 WL 310135, at * 9 (quoting *In re Bluetooth Headset Prods. Liab. Litig.,* 654 F.3d 935, 942 (9th Cir. 2011)).  Whichever method is used, the court "ha[s] an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth.,* 654 F.3d at 941.

The Court should use the percentage-of-the-fund method here for the same reasons most other courts employ that method.  First, percentage approaches are the standard contingent-fee arrangements in non-class action cases, and awarding them in cases like these acts as a strong incentive to attorneys to take risky cases such as this. Indeed, without contingent-fee contracts and their percentage awards, many individuals could not afford access to the courts. *In re Abrams & Abrams, P.A.,* 605 F.3d 238, 245 (4th Cir. 2010) ("contingency fees provide access to counsel for individuals who would otherwise have difficulty obtaining representation"); *see also Wells v. Sullivan,* 907 F.2d 367, 371 (2d Cir. 1990) ("Many claimants . . . cannot afford to retain counsel at fixed hourly rates . . . yet they are willing to pay a portion of any recovery they may receive in return for successful representation. Ignoring reasonable contingent fee agreements or automatically reducing them would impair claimants' ability to secure representation").  Thus, the percentage approach best emulates the real-world market value of attorney's services that are provided on a contingent basis. *See Kirchoff v. Flynn,* 786 F.2d 320, 328 (7th Cir. 1986).

Moreover, the percentage method aligns the interest of the attorney and client, while avoiding the downsides of the lodestar method. It provides class counsel with a strong incentive to effectuate the maximum possible recovery in the shortest amount of time, which is a tangible benefit to class members and the judicial system. The "lodestar method is difficult to apply, time-consuming to administer, inconsistent in result, and capable of manipulation" and "creates inherent incentive to prolong the litigation until sufficient hours have been expended." MANUAL FOR COMPLEX LITIGATION (Fourth) § 14.121 (2004); *see also Vizcaino,* 290 F.3d at 1050 n.5 ("The lodestar method

is merely a cross-check on the reasonableness of a percentage figure, and it is widely recognized that the lodestar method creates incentives for counsel to expend more hours than may be necessary on litigating a case so as to recover a reasonable fee . . . ."); *Syed*, 2016 WL 310135, at * 9 (use of the percentage method avoids "'the often more time-consuming task of calculating the lodestar'") (quoting *Bluetooth*, 654 F.3d at 942).

### 2.   A Fee Equal to 25 Percent of the Common Settlement Fund is Fair

In the Ninth Circuit, "usual range" for a percentage award of attorneys' fees in a common fund case is 20-30 percent.  *Vizcaino*, 290 F.3d at 1047.  The midpoint of the range is the "benchmark" (*id.*), which can be adjusted upwards or downwards "to account for any unusual circumstances involved in [the] case."  *Alberto v. GMRI, Inc.*, No. CIV 07-1895 WBS DAD, 2008 WL 4891201, at *11 (E.D. Cal. Nov. 12, 2008) (quoting *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir. 1989)); *see also Rodriguez v. Disner*, 688 F.3d 645, 653 (9th Cir. 2012); *Online DVD-Rental Antitrust Litig.*, 779 F.3d at 949 (noting that the Ninth Circuit has established a 25 percent benchmark); *Wade v. Minatta Transp. Co.*, No. C10-2796 BZ, 2012 WL 300397, at *1 (N.D. Cal. Feb. 1, 2012) ("courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, and must provide adequate explanation in the record of any 'special circumstances' justifying a departure.") (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir. 1990) and *Paul, Johnson, Alston & Hunt*, 886 F.2d 268, 272).

Which circumstances are relevant to the fee award will vary from case to case, but generally, the Ninth Circuit has recognized that a number of factors can be considered, including the result achieved (including any benefits beyond the cash settlement fund), customary fees awarded in similar cases, the riskiness of the representation to class counsel and the burden of contingent representation. *See Vizcaino*, 290 F.3d at 1048-50.  Courts also consider the reaction to the class to the fee request (*Syed*, 2016 WL 310135, at * 9), the complexity of the case and counsel's skill, experience and effort.  *Alberto*, 2008 WL 4891201, at *11.  Evaluation of these factors supports a 25% fee award in this case.

Notice of Motion & Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards
Case No. 2:13-cv-2213 WBS EFB

4

### a.  The Results Achieved

One of the most important factors in determining the reasonableness of a fee is the result achieved for the class. *See Hensley v. Eckerhart,* 461 U.S. 424, 436 (1983) ("most critical factor is the degree of success obtained"); *Vizcaino,* 290 F.3d at 1048.  Here, Plaintiffs brought this case to accomplish two goals:  stopping the challenged practice and obtaining compensation for the Class. The litigation itself achieved the first goal: discontinuance of Defendant's "Naturals" line of products, effectively rendering moot Plaintiffs' request for injunctive relief.  Kindall Decl., ¶ 16. This result itself provides real value to the Class, including economic value, since Defendant will no longer be able to charge any sort of a "naturals" label-based price premium for TRESemmé shampoos and conditioners.  This positive economic impact was recognized in *Miller v. Ghirardelli Chocolate Co.,* No. 12-CV-04936-LB, 2015 WL 758094, at *1 (N.D. Cal. Feb. 20, 2015), where the Court awarded $1,575,000 in attorneys' fees in a "natural food" labeling case where the cash value of the Settlement was $5.25 million, based in part on the economic value of the changed labeling practices.

The Settlement also achieved a very positive result with respect to the goal of compensating class members for historical damages. Documents obtained through discovery, coupled with analysis by a marketing expert Plaintiffs retained, permitted Plaintiffs to estimate consumers paid a premium of approximately 16.65% attributable to the "naturals" representation – approximately sixty-eight cents on a product sold for around $4.75 – leading to class-wide damages of approximately $12.65 million.  Kindall Decl., ¶ 17.  Thus, the settlement amount of $3.25 million represents approximately 25.7% of the amount that Plaintiffs might have obtained in damages if they had prevailed completely with respect to both liability and their theory of damages.  Moreover, based on just the number of claims made to date, all of the settlement, net of costs of notice and claims administration, attorneys' fees and expenses, will be distributed to class members who have made claims rather than a *cy pres* recipient.  Kindall Decl., ¶¶ 17, 28.[1]

---

[1] The Settlement provided that all funds in excess of the claims submitted by class members would be distributed to a *cy pres* recipient agreed to by the Parties and approved by the Court.  Settlement Agreement, ¶ 43.  No funds were to be returned to Defendant in the event that the claims made did

In addition, while it is premature to calculate the amount that each class member will receive, since the deadline for filing claims continues until October 24, 2016, it appears very likely that the amount that each class member who filed a claim will receive, while small in dollar terms,[2] will exceed their individual damages for each bottle of product claimed. *See* Kindall Decl., ¶ 29. This is important in assessing the quality of the results achieved. *Alberto*, 2008 WL 4891201, at *9 (favorably noting that the recovery obtained by class members who filed claims "appears at least comparable to their injuries"); *In re Apple iPhone/iPod Warranty Litig.,* 40 F. Supp. 3d 1176, 1182 (N.D. Cal. 2014) ("Counsels' success in obtaining a settlement fund large enough both to make class members nearly whole and to compensate themselves on a percentage basis should not be seen as creating an unreasonable windfall.").

The litigation was completely successful in stopping the challenged practice and the Settlement as a whole is a very good result for the Class in light of the litigation risks discussed below. In *de Mira v. Heartland Employment Serv.*, LLC, No. 12-CV-04092 LHK, 2014 WL 1026282, at *2 (N.D. Cal. Mar. 13, 2014), where the Court found that the litigation had succeeded in stopping the challenged practice and class members who filed claims would receive approximately 72 percent of their estimated actual damages, the court determined that the quality of the results

---

not at least equal to the amount of the net Settlement Fund. *Id.* There is, accordingly, no need to rely upon authorities, such as *Williams v. MGM-Pathe Commc'ns Co.,* 129 F.3d 1026, 1027 (9th Cir. 1997) and *Estrada v. iYogi, Inc.,* No. 2:13-01989 WBS CKD, 2016 WL 310279 (E.D. Cal. Jan. 26, 2016), that held that the percentage of fund should apply to the total money available to class members, not just the money actually claimed, where there is a claims-made settlement.

[2] While the absolute dollar amount is small, that is a reflection of the value of the products, not the strength of the Settlement. *See, e.g., Weeks v. Kellogg Co.,* No. CV 09-08102 MMM RZX, 2013 WL 6531177, at *15 (C.D. Cal. Nov. 23, 2013) (court noted that, while amount of compensation class members would receive was small, it was not disproportionately so "[g]iven the relatively low cost of a box of cereal, moreover, and the likelihood that few, if any, class members possess documentation verifying the number of boxes of Krispies cereals they bought during the class period"); *see also Shames v. Hertz Corp.,* No. 07-CV-2174-MMA WMC, 2012 WL 5392159, at *9 (S.D. Cal. Nov. 5, 2012) ($2 per-day settlement allocation was fair "when compared to [plaintiffs'] estimated $3 in actual damages"). Companies can and do unfairly generate substantial profits through unfair trade practices that create very small individual harms, but to very large numbers of people. Indeed, facilitating such small claims is "[t]he policy at the very core of the class action mechanism," *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 617 (1997).

merited an upward adjustment to the lodestar benchmark.  The results achieved in this case are, if anything, superior, and certainly merit an award of no less than the 25 percent benchmark.

### b. The Riskiness & Burden of Representation Where Payment of Fees and Expenses Was Wholly Contingent

In addition to the risks associated with complex litigation, "the risk of non-payment or reimbursement of expenses [in cases undertaken on a contingent basis] is a factor in determining the appropriateness of counsel's fee award." *In re Heritage Bond Litig.,* No. 02-1475, 2005 WL 1594403, at *21 (C.D. Cal. June 10, 2005); *see also In re Omnivision Techs.,* 559 F. Supp. 2d at 1047; *WPPSS,* 19 F.3d at 1299-301. "Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel." *Silverman v. Motorola Solutions, Inc.,* 739 F.3d 956, 958 (7th Cir. 2013). "This provides the 'necessary incentive' for attorneys to bring actions to protect individual rights and to enforce public policies" *Fischel v. Equitable Life Assur. Soc'y of U.S.,* 307 F.3d 997, 1007 (9th Cir. 2002). Contingent fees that may far exceed the market value of the services rendered on a non-contingent basis are accepted in the legal profession as a legitimate way of assuring competent representation for plaintiffs who could not afford to pay on an hourly basis regardless of whether they win or lose. *WPPSS,* 19 F.3d at 1299.  Indeed, numerous courts have found that the cases brought purely on a contingency basis justify an *upward* adjustment to the 25 percent benchmark.  *Richardson v. THD At-Home Servs., Inc.,* No. 1:14-CV-0273-BAM, 2016 WL 1366952, at *12 (E.D. Cal. Apr. 6, 2016); *Kanawi v. Bechtel Corp.,* No. C 06-05566 CRB, 2011 WL 782244, at *2 (N.D. Cal. Mar. 1, 2011); *Mark v. Valley Ins. Co.,* No. CV 01-1575-BR, 2005 WL 1334374, at *2 (D. Or. May 31, 2005); *Gustafson v. Valley Ins. Co.,* No. CV 01-1575-BR, 2004 WL 2260605, at *1 (D. Or. Oct. 6, 2004).

Here, Plaintiffs' Counsel have spent the last three years and devoted over 1400 hours of professional time investigating, crafting briefs and arguments, engaging in discovery, reviewing documents, conducing and defending depositions, retaining and consulting experts, negotiating, mediating, and finally settling this case. Kindall Decl., ¶ 36. In that time, they have never been paid

for their work on the class action here, taking the case on a wholly contingent basis. Instead, they faced the very real risk, in the face of staunch opposition from highly qualified defense counsel, that they would receive nothing for the $744,000 worth of professional time spent, and over $70,000 in hard cash outlays they invested in the case.

"[I]n most cases it may be more appropriate to examine lawyers' reasonable expectations, which are based on the circumstances of the case and the range of fee awards out of common funds of comparable size." *Vizcaino,* 290 F.3d at 1050. In assuming the risks involved in this litigation, Plaintiffs' Counsel had an expectation that they would receive a percentage award, and that the benchmark for such awards in the Ninth Circuit was approximately 25 percent.  Moreover, "it is common practice to award attorneys' fees at a higher percentage than the 25% benchmark in cases that involve a relatively small—i.e., under $10 million—settlement fund."  *Thieriot v. Celtic Ins. Co.,* No. C-10-04462-LB, 2011 WL 1522385, at *6 (N.D. Cal. Apr. 21, 2011); *see also Cicero v. DirecTV, Inc.,* No. EDCV 07-1182, 2010 WL 2991486, at *6 (C.D. Cal. July 27, 2010) ("case law surveys suggest that 50% is the upper limit, with 30-50% commonly being awarded in case in which the common fund is relatively small.") (citing Rubenstein, Conte and Newberg, NEWBERG ON CLASS ACTIONS at § 14:6); *Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) (noting that attorneys' fees in cases where the settlement fund is below $10 million are often more than the 25% benchmark).  Indeed, courts have specifically found that relatively small class action cases such as this, where the value of the settlement is under $10 million, support an upward adjustment of the 25 percent benchmark.  *See, e.g., Burden v. SelectQuote Ins. Servs.,* No. C 10-5966 LB, 2013 WL 3988771, at *5 (N.D. Cal. Aug. 2, 2013); *In re Nuvelo, Inc. Sec. Litig.,* No. C 07-04056 CRB, 2011 WL 2650592, at *2 (N.D. Cal. July 6, 2011); *Kanawi,* 2011 WL 782244, at *2.

The same logic has applied, as well, in settlements involving "natural" food labeling challenges.  *See, e.g., Miller,* 2015 WL 758094, at *1 (taking only the cash value of the $5.25 million settlement into account, the requested fee represented 30 percent of the value, which was appropriate "[w]here a common fund is under $10 million"); *Johnson v. Gen. Mills, Inc.,* No. SACV 10-00061-CJC, 2013 WL 3213832, at *6 (C.D. Cal. June 17, 2013) (awarding 30 percent fee of $8.5

million settlement).  Thus, Class Counsel's "reasonable expectation," based on the circumstances of the case and the size of the settlement, supports a fee award of 25-30 percent in this case.[3]

Moreover, while there may be class action cases where the risk of non-payment is slight, this case is most definitely not among them.  As discussed more fully in Plaintiff's Memorandum of Law in Support of Final Approval of Class Action Settlement, surveys and expert testimony would almost certainly have been a key element of proof for both liability (demonstrating that the challenged labels were materially false and misleading) and damages (quantifying the price premium attributable to the challenged representations).  This would require a battle of experts that would need to be moderated by the Court and sorted out by a jury.  This is a high-risk scenario.  *Sullivan v. DB Investments, Inc.,* 667 F.3d 273, 322 (3d Cir. 2011) (noting the "uncertainty attendant to such a battle").  Furthermore, numerous plaintiffs have found class certification in similar cases to present many pitfalls.  *See, e.g., Kosta v. Del Monte Foods, Inc.,* 308 F.R.D. 217 (N.D. Cal. 2015) (denying class certification); *Jones v. ConAgra Foods, Inc.,* No. C 12-01633 CRB, 2014 WL 2702726, at *1 (N.D. Cal. June 13, 2014) (same).  Thus, as with liability and damages, class certification created additional major risks.

In short, this was a high-risk case for Plaintiffs and – accordingly – for Plaintiffs' counsel.  From the outset of the case to its conclusion, there was a very real possibility that counsel would not receive any fees, or the reimbursement of any expenses, invested in the case.  Accordingly, this factor supports the award of the requested fee.

---

[3] While this percentage represents a modest premium of nine percent above counsel's lodestar (as discussed below), "[i]t is an established practice in the private legal market to reward attorneys for taking the risk of non-payment by paying them a premium over their normal hourly rates for winning contingency cases."  *WPPSS,* 19 F.3d at 1299); *see also Silverman,* 739 F.3d at 958 ("Contingent fees compensate lawyers for the risk of nonpayment. The greater the risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel."); *In re Xcel Energy, Inc. Sec., Derivative & "ERISA" Litig.,* 364 F. Supp. 2d 980, 994 (D. Minn. 2005) ("[p]recedent is replete with situations in which attorneys representing a class have devoted substantial resources in terms of time and advanced costs yet have lost the case despite their advocacy.").

Notice of Motion & Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards
Case No. 2:13-cv-2213 WBS EFB

9

### c.   The Complexity of the Case

As courts have recognized, "the novelty, difficulty and complexity of the issues involved are significant factors in determining a fee award."  *Heritage Bond,* 2005 WL 1594403, at *20; *accord, Alberto,* 2008 WL 4891201, at *11 (citing *Heritage Bond*).  Counsel "should not be penalized for undertaking a case which may 'make new law,' [but] appropriately compensated for accepting the challenge."  *Heritage Bond,* 2005 WL 1594403, at *20 (quoting *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714, 718 (5th Cir. 1974)).

This case raised a host of complex issues with – in many instances – relatively few useful precedents, unlike fields such as securities fraud and antitrust where caselaw is far more developed. To prevail, Plaintiffs needed to establish, *inter alia,* that: (1) reasonable consumers would understand the challenged "naturals" label to mean that the Products contained no man-made, synthetic ingredients; (2) the difference between a shampoo or conditioner containing *all* natural ingredients and one containing only *some* natural ingredients would be material to a reasonable consumer – that is, would impact their decision to purchase the Products and/or the amount that they would pay for them; (3) that the Products sold at a price premium relative to equivalent products in the market that did not purport to be natural; (4) the degree to which that price premium could be attributed to the challenged representation (and, whether the proper point of comparison to the prices actually paid by consumers was the price the product would have sold for if it had not contained the challenged representation *at all,* or instead, the price the product would have sold for if it had *accurately represented* the Products' degree of "naturalness"); and (5) that payment of the price premium constituted both injury and damages for every class member, regardless of whether the class member personally believed that the Product *was* all natural, or cared.  Moreover, the case raised numerous technical issues for class certification, including but not limited to whether differences in the amounts actually paid for the Products by consumers based on, for example, place of purchase, region, time period, distribution channel, promotions and sales, would make it impossible to create a class-wide damages model that complied with the requirements of *Comcast v. Behrens,* __ U.S. __, 133 S. Ct. 1426, 1432-35 (2013) – a decision that came out just months before the instant suit was

filed.   These issues are complex, requiring in-depth factual discovery, expert analysis, and navigation of new on often conflicting caselaw.

Courts have often found that complex cases merit an upward adjustment to the 25 percent benchmark. *In re Cathode Ray Tube (CRT) Antitrust Litig*., No. 1917, 2016 WL 4126533, at *5 (N.D. Cal. Aug. 3, 2016); *Nuvelo,* 2011 WL 2650592, at *3; *In re Apple Computer, Inc. Derivative Litig.,* No. C 06-4128 JF (HRL), 2008 WL 4820784, at *4 (N.D. Cal. Nov. 5, 2008).   Certainly a complex case such as this one does not merit any reduction to the requested fee.

### d.   Counsels' Skill, Experience and Effort

This court has noted that counsel's skill, experience and effort may also be an appropriate factor for consideration in determining a fee.   *Alberto*, 2008 WL 4891201, at *11.   Class Counsel Izard, Kindall & Raabe, LLP has successfully represented class action plaintiffs for over twenty years, serving as lead or co-lead counsel in over seventy class action cases and recovery hundreds of millions of dollars for victims of securities, pension and consumer fraud and/or misfeasance.   *See* Firm Resume, attached to the Kindall Decl. as Exh. 3.   In the consumer area, Izard, Kindall & Raabe has served or is serving as lead counsel in cases involving a variety of industries including banking, wholesale milk pricing, book printing and distribution, gasoline distribution, electricity supply (*id.*), as well as several other cases involving allegations that "natural" claims on consumer products are materially false and misleading. *Langan v. Johnson & Johnson Consumer Cos., Inc.,* Nos. 13-cv-01470 & 13-cv-01471 (D. Conn.), *Fagan v. Neutrogena Corp.,* No. EDCV 13-01316 (C.D. Cal.), and *Balser v. The Hain Celestial Group, Inc.,* No. 13-cv-5604 (C.D. Cal.).

The partner principally involved in overseeing this litigation, Mark Kindall, has over twenty-eight years of experience as an attorney, including years spent in private practice at both IKR and Covington & Burling, as well as years of government experience as attorney for the U.S. Environmental Protection Agency and an Assistant Attorney General for the State of Connecticut. Firm Resume, Kindall Decl. Exh. 3.   Mr. Kindall has briefed an argued numerous federal and state court appeals, including, most recently, *Balser v. Hain Celestial Grp., Inc.,* 640 F. App'x 694, 696 (9th Cir. 2016), where the Ninth Circuit overturned the dismissal of a class action suit alleging that

Notice of Motion & Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards
Case No. 2:13-cv-2213 WBS EFB

11

the defendant's "natural" label on certain Alba Botanica products was materially false and misleading. *Id.*

The Court is in the best position to evaluate the counsel's skill in the prosecution of this particular action.  Much of counsels' efforts, however, have taken place outside of the courtroom itself, conducting the initial investigation of the case, crafting the arguments that formed the basis for the complaint and opposition to Defendant's Motion to Dismiss, negotiating discovery disputes, organizing and conducting the review of over 200,000 pages of documents produced by Defendants, preparing for and conducting depositions of key witnesses, consulting with clients, preparing them for (and then defending), their depositions, consulting with an expert concerning the design and execution of a survey to assist in isolating a premium attributable to the challenged "naturals" representations, working with a mediator to negotiate the proposed settlement, further negotiations to finalize the terms of the settlement, conducting a competitive bid process for notice and claims administration, and working with KCC on numerous issues related to notice, claims processing and the development of an fair, reasonable and appropriate plan of allocation.  Class Counsel alone devoted over 1275 attorney hours to the case over the course of three years – the equivalent of one hourly employee working full time for over 30 months.  This represented a very significant commitment of resources, particularly since the firm consisted of only four to five attorneys during the majority of that period.  *Compare Boyd v. Bank of Am. Corp.,* No. SACV 13-0561-DOC, 2014 WL 6473804, at *10 (C.D. Cal. Nov. 18, 2014) (upwards adjustment to benchmark warranted where "[b]oth of the firms representing the Class are small firms with fewer than fifteen attorneys. Firms of this size face even greater risks in litigating large class actions with no guarantee of payment." Interim Liaison Counsel Bramson, Plutzik, Mahler & Birkhaeuser, LLP devoted 24 hours to the case, and a third firm, Lite DePalma Greenberg LLC, provided additional assistance, including but not limited to assistance reviewing the large quantity of documents produced in response to discovery, spending 133 hours on the case.  Plutzik Decl., ¶ 5; Kindall Decl., ¶¶ 34-35.  In addition, counsel paid over $70,000 dollars in out-of-pocket litigation costs – again all on a contingency basis. Kindall Decl., ¶ 36.

Notice of Motion & Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards
Case No. 2:13-cv-2213 WBS EFB

12

Finally, it is impossible to evaluate the skill, experience and resources required for plaintiffs to prosecute this litigation to a successful conclusion after three years of litigation without taking into account the quality, skill and resources brought to bear by Defendant and its counsel.  *See, e.g., Mark,* 2005 WL 1334374, at *2 (noting defendants' counsel's "high quality of work in defense of the action.").  Defendant Conopco has been ably represented in this litigation by Kirkland & Ellis LLP, a firm with approximately 1700 attorneys, offices in places as widespread as Beijing, San Francisco and Munich, and over a century of experience in complex litigation.  *See* https://www.kirkland.com/sitecontent.cfm?contentID=256.  Defendant's litigation team, led by K&E partners Jay Lefkowitz and Ross Weiner, defended the case with skill and thoroughness.

Taking into account the skill, experience and resources this case required, counsel's request for the "benchmark" fee is fair and reasonable.  Again, courts have often found that this factor warrants the award of a fee in excess of the 25 percent benchmark.  *Nuvelo,* 2011 WL 2650592, at *3; *Heritage Bond,* 2005 WL 1594403, at *19 ("prosecution and management of a complex national class action requires unique legal skills and abilities" weighing in favor of an increased fee).

### e.   Reaction of the Class

KCC Class Action Services, LLC ("KCC") was retained by the parties to act as the notice and claims administrator with respect to this Settlement.  Preliminary Approval Order, ECF No. 63, at 13.  The notice plan crafted by KCC and approved by the Court was designed to reach over seventy percent of the Class through a dedicated website and telephone hotline, newspaper and magazine ads, and an internet campaign including over 150 million impressions of banner ads.  *Id.* at 13-15.  KCC has executed this notice plan in accordance with the Preliminary Approval Order. Declaration of Jay Geraci ("Geraci Decl."), attached to the Kindall Declaration as Exh. 2, at ¶¶ 3-9. The Class Notice approved by the Court specifically informed class members that "Class Counsel will ask the Court to award them attorneys' fees from the Settlement Fund established as a result of this Litigation, in an amount not to exceed 30% of the Settlement Amount, together with payment of litigation costs and expenses."

In the six weeks that have elapsed since KCC launched the Settlement website, the telephone hotline and the media campaign, only one class member has opted out of the Settlement,[4] and the Court docket reflects that none have filed an objection to either the Settlement or to the request for an award of attorneys' fees up to 30 percent of the Settlement.   Since the deadline for opting out or objecting is September 29, 2016 – a date that was chosen to give class members ample time to review this motion, as well as the final approval motion, and all supporting papers – it is premature to make a final determination on whether any class members will file an objection.   To date, however, there has been no negative response to counsel's representation that they could seek the award of a fee as high as $975,000.   There is no reason to believe, therefore, that the Class would object to the significantly lower fee request counsel is making in this motion.   *See, e.g., Kanawi,* 2011 WL 272244, at * 2 (fair to presume that "even fewer class members would object to a fee award of 30 percent" where notice indicated that counsel could seek an award of up to a third of the settlement).

### 3.  A Lodestar Crosscheck Confirms That a 25 Percent Fee Award is Fair and Reasonable

The Ninth Circuit has noted that a court can test the reasonableness of a requested percentage fee with "a crosscheck using the lodestar method."  *Online DVD-Rental,* 779 F.3d at 949 (quoting *Bluetooth,* 654 F.3d at 945 and *In re Gen. Motors Corp. Pick–Up Truck Fuel Tank Prods. Liab. Litig.,* 55 F.3d 768, 821 n. 40 (3d Cir. 1995)).  It is not a required methodology, especially where, as here, the requested fee is within the accepted benchmark.  *HCL Partners Ltd. P'ship v. Leap Wireless Int'l, Inc.,* No. 07 CV 2245 MMA, 2010 WL 4156342, at *2 (S.D. Cal. Oct. 15, 2010).  But it can provide a "useful perspective on the reasonableness of a given percentage award."  *Vizcaino,* 290 F.3d at 1050.

Calculation of fees using the lodestar method begins by multiplying "a reasonable number of hours by a reasonable hourly rate."  *Stetson v. Grissom,* 821 F.3d 1157, 1165 (9th Cir. 2016).  When

---

[4] As discussed in the Final Approval Brief, the only person who requested to opt-out does not appear to have done so because he was dissatisfied with the Settlement, but rather, because he realized, *after* he had already filed a claim form, that he had not, in fact, purchased any of the subject Products.  *See* Geraci Decl., ¶ 13 & Exh. 1; Kindall Decl., ¶ 26.

this method is employed in common fund cases, a court "*must* apply a risk multiplier to the lodestar 'when (1) attorneys take a case with the expectation they will receive a risk enhancement if they prevail, (2) their hourly rate does not reflect that risk, and (3) there is evidence the case was risky.'" *Id.* at 1166 (quoting *Stanger v. China Elec. Motor, Inc.,* 812 F.3d 734, 741 (9th Cir. 2016) (emphasis in original)).  In addition, the court "discretion to adjust the lodestar upwards or downwards using a mulitiplier that reflects a host of 'reasonableness' factors, including the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment."  *Stetson,* 821 F.3d at 1166-67 (internal quotations and citations omitted).  These are the so-called "*Kerr* factors," after *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67, 70 (9th Cir. 1975), *abrogated on other grounds by City of Burlington v. Dague,* 505 U.S. 557 (1992)).  *Stetson,* 821 F.3d at 1167.

As set forth in the declarations of Class Counsel and Liaison Counsel, counsel for plaintiffs devoted a total of 1435.8 hours of attorney time to this litigation, with a total lodestar amount of $744,779.00, calculated using counsel's regular rates.[5]  The requested fee of $812,500 is only about

---

[5] Plaintiffs' counsel have provided summaries of the hours worked and the billing rates for each of the attorneys who worked on the case, as well as firm resumes for Class Counsel and Liaison Counsel.  Kindall Decl., ¶¶ 30-36 and Exhs. 2 and 8 thereto; Plutzik Decl. at ¶¶ 5-6 and Exh. 1.  Courts have often approved the use of similar summary materials to support lodestar calculations where lodestar is being used as a cross-check, rather than the primary methodology for determining the award of attorneys' fees.  *See, e.g., In re Rite Aid Corp. Sec. Litig.,* 396 F.3d 294, 306–07 (3d Cir. 2005), as amended (Feb. 25, 2005) ("lodestar cross-check calculation need entail neither mathematical precision nor bean-counting" and thus courts "may rely on summaries submitted by the attorneys and need not review actual billing records."); *Goldberger v. Integrated Res., Inc.,* 209 F.3d 43, 50 (2d Cir. 2000) ("where used as a mere cross-check, the hours documented by counsel need not be exhaustively scrutinized by the district court.") (citing *In re Prudential Ins. Co. Am. Sales Litig.,* 148 F.3d 283, 342 (3d Cir.1998); *accord, Rieckborn v. Velti PLC,* No. 13-CV-03889-WHO, 2015 WL 468329, at *21 (N.D. Cal. Feb. 3, 2015) (holding that courts may rely on summaries) (quoting *Rite Aid*); *In re ECOtality, Inc. Sec. Litig.,* No. 13-CV-03791-SC, 2015 WL 5117618, at *4 (N.D. Cal. Aug. 28, 2015) (same); *In re Immune Response Sec. Litig.,* 497 F. Supp. 2d 1166, 1176 (S.D. Cal 2007) (citing *Rite Aid*).  Providing the Court with counsel's detailed hourly billing records would vitiate one of the primary advantages of the use of the percentage-fund-fund method for calculating fees, which is to spare courts "the often more time-consuming task of calculating the lodestar." *Syed,* 2016 WL 310135, at *9 (citing *Bluetooth,* 654 F.3d at 942); *see also Sykes v. Harris,* No. 09 CIV. 8486 (DC), 2016 WL 3030156, at *16 (S.D.N.Y. May 24, 2016) (purpose of cross-check is solely to provide a "'rough indicator of the propriety of a fee request'" and thus courts should "'be cautious of placing too much weight' on the numbers underlying the lodestar calculation so as not to introduce the problems associated with" the lodestar method).  However, counsel will certainly provide any additional materials or briefing that the Court might find helpful in its consideration of these issues.

Notice of Motion & Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards
Case No. 2:13-cv-2213 WBS EFB

15

nine percent higher than the lodestar, thus representing a lodestar multiplier of approximately 1.09. In common fund cases where the lodestar method is used calculate fees, lodestar multiples of 1-4 are common, and the majority have lodestar multiples in the range of 1.5-3. *Vizcaino,* 290 F.3d at 1051 and Appendix (collecting cases); *see also Steiner v. Am. Broad. Co.,* 248 F. App'x 780, 783 (9th Cir. 2007) (lodestar multiple of 6.85 was "well within the range" that Courts have allowed); *Hopkins v. Stryker Sales Corp.,* No. 11-CV-02786-LHK, 2013 WL 496358, at *6 (N.D. Cal. Feb. 6, 2013) (awarding 2.76 lodestar multiple); *Ralston v. Mortgage Inv'rs Grp., Inc.,* No. 508CV00536JFPSG, 2013 WL 5290240, at *5 (N.D. Cal. Sept. 19, 2013) (approving 2.8 lodestar multiple); *In re Warfarin Sodium Antitrust Litig.,* 212 F.R.D. 231, 263 (D. Del. 2002), *aff'd,* 391 F.3d 516 (3d Cir. 2004) (multiple of 1.33 in case involving false and misleading product representations); *Yarrington v. Solvay Pharm., Inc.,* 697 F. Supp. 2d 1057, 1065 (D. Minn. 2010) (multiple of 2.26 in product misrepresentation case).

Accordingly, the lodestar crosscheck confirms that a benchmark award of 25 percent is fair and reasonable. *See, e.g., Carter v. Anderson Merchandisers, LP,* No. EDCV 08-0025-VAP OPX, 2010 WL 1946757, at *2 (C.D. Cal. May 11, 2010) ("If a 1.14 risk multiplier were applied to this figure, which is on the low end of multipliers applied in common fund cases, *Vizcaino,* 290 F.3d at 1050, the fee award under a lodestar analysis would equal the amount sought under the common fund method.").[6]

### 4. Taking All Relevant Factors into Account, the Requested 25 Percent Fee is Fair and Reasonable

The Ninth Circuit has cautioned against the "mechanical or formulaic application" of any method of determining proper fees to award in class action cases. *Stanger,* 812 F.3d at 739 (quoting *Fischel v. Equitable Life Assur. Soc'y of U.S.,* 307 F.3d 997, 1007 (9th Cir. 2002) and *In re*

---

[6] The blended rate for all attorney time in the case is $527 per hour.  This is reasonable based on the level of expertise required for a nationwide class action of this nature.  However, even if one were to use a lower blended rate such as $428 per hour, the proposed fee would still represent a very modest lodestar multiple of 1.32, which is still below the majority of lodestar multipliers awarded.  *Vizcaino,* 290 F.3d at 1051 (majority of awards reviewed had lodestar multiples in the range of 1.5-3).  A recent survey suggested that $428 per hour was the average attorney rate for the Sacramento area.  *See* United States Consumer Law Attorney Fee Survey Report, 2013-14, at p. 82 (May 2, 2015), available at https://www.google.com/#q=united+states+consumer+law+attorney+fee+survey+report.

Notice of Motion & Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards
Case No. 2:13-cv-2213 WBS EFB

16

*Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.,* 109 F.3d 602, 607 (9th Cir. 1997).  Nonetheless, the 25 percent benchmark provides "a helpful 'starting point.'"  *Online DVD-Rental,* 779 F.3d at 955 (quoting *Vicaino,* 290 F.3d at 1048).  Where counsel has not requested an upward adjustment to the benchmark fee and a consideration of the relevant facts and circumstances does not warrant a reduction from the benchmark, it is proper to apply it.  *Online DVD-Rental,* 779 F.3d at *955.  That is clearly the case here where, as discussed above, the relevant factors might support an *increase* in the benchmark and a lodestar crosscheck demonstrates that the requested fee produces a lodestar that is at the very low end of the norm.  Accordingly, Plaintiffs respectfully request that the Court award attorneys' fees of $812,500, representing 25 percent of the Settlement Fund.

### B.   The Requested Litigation Expenses Are Reasonable

As this Court has held, "'an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of reasonable litigation expenses from that fund.'"  *Syed,* 2016 WL 310135, at * 9 (quoting *Alberto*, 2008 WL 4891201, at * 12).  Expenses are compensable in common-fund cases when the expenses are of the type typically billed by attorneys to paying clients in the marketplace. *Harris v. Marhoefer,* 24 F.3d 16, 19 (9th Cir. 1994) (out-of-pocket expenses recoverable where they "would normally be charged to a fee paying client.") (internal citation omitted); *see also Abrams v. Lightolier Inc.,* 50 F.3d 1204, 1225 (3d Cir. 1995) (expenses recoverable if customary to bill clients for them).

Here, Plaintiffs' Counsel expended a total of $70,700.54 in expenses that would normally be charged to a fee paying client, broken down as follows:

Notice of Motion & Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards
Case No. 2:13-cv-2213 WBS EFB

17

| EXPENSE CATEGORY | TOTAL |
|---|---:|
| Court costs | 1,611.00 |
| Service of Process fees | 459.95 |
| Damages Expert | 22,890.00 |
| Research/discovery (includes PACER, out-of-subscription Westlaw, and vendor for hosting electronic discovery database) | 17,634.26 |
| Transcripts | 4,085.51 |
| Mediation Fees | 15,987.28 |
| Out-of-State Travel Expenses | 7,700.24 |
| Photocopies & Printing (outside vendor) | 38.11 |
| Postage & Delivery | 294.19 |
| **TOTAL:** | **70,700.54** |

Kindall Decl., ¶ 36.  Lawyers routinely bill all of these types of expenses to hourly clients. And, as Plaintiffs' counsel detail in their affidavits, these expenses were necessary to the successful prosecution of this case.    Kindall Decl., ¶¶ 33 & 35; Plutzik Decl., ¶¶ 6-7.  Over half of the expenses, in fact, were fees to the mediator and to Plaintiffs' damages expert.

It is also worth noting that Plaintiffs' counsel expended these costs on a contingent basis, and thus had no guarantee that they would ever be recovered. For this reason, the Court should presume they were necessary for the litigation. For all of these reasons, the Court should approve Plaintiff's Counsel's request for expense reimbursement of $70,700.54.

**C.  Plaintiffs Should Receive Case Contribution Awards**

As this Court recognized in its Preliminary Approval Order, the Ninth Circuit has approved the use of case contribution awards to lead plaintiffs in Class Actions, so long as the awards do not undermine the adequacy of the class representatives.  ECF No. 63, at 8 (citing *Staton v. Boeing*, 327 F.3d 938, 977-78 (9th Cir. 1992) and *Radcliffe v. Experian Info. Sys., Inc.,* 715 F.3d 1157, 1163 (9th Cir. 2013)).   The purpose of case contribution awards is to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.,* 563 F.3d 948, 958–59 (9th Cir. 2009).   Incentive awards are particularly appropriate today, since employers, banks, insurance companies and others often

perform online research concerning potential employees or applicants for loans and other services, and the fact that someone is a plaintiff in a class action lawsuit is both easily discoverable through a simple internet search, and unlikely to be viewed positively. *See* Kindall Decl., ¶ 38.

The incentive payments requested here are modest and well within the range of what has been approved in other cases. Moreover, they will not in any way diminish the amounts that will be recovered by the Class. Rather, Defendant will pay them separately. Kindall Decl., ¶ 11; Settlement Agreement at ¶ 60. In addition, Plaintiffs seek case contribution awards that reflect differences in the time and effort that each contributed to the case. *See, e.g., Gallucci v. Boiron, Inc.,* No. 11CV2039 JAH NLS, 2012 WL 5359485, at *10 (S.D. Cal. Oct. 31, 2012), *aff'd sub nom. Gallucci v. Gonzales,* 603 F. App'x 533 (9th Cir. 2015) (affirming larger incentive award for lead plaintiff who contributed a greater amount of time and effort). Moreover, each Plaintiff has submitted a declaration detailing his or her efforts on behalf of the Class.

Plaintiff Linda Clayman seeks an award of one thousand dollars. Declaration of Linda Clayman, ¶ 10. She has been involved in the litigation since 2014, having agreed to become a named plaintiff after consulting with counsel. *Id.* at ¶ 5. She agreed to become a plaintiff with full understanding of her duties as a class representative, knowing that she might need to give testimony at a deposition and ultimately at trial. *Id.* at ¶ 7. Over the course of the next two years, she communicated regularly with counsel, worked with counsel to provide responses to Defendant's discovery requests, and consulted with counsel concerning the mediation and the Settlement. *Id.* at ¶ 8.

Plaintiffs Kenneth Drew and Lainie Cohen seek awards of four thousand dollars each. Ms. Cohen has been involved in this litigation since 2013 and Mr. Drew has been involved since 2014. Declaration of Kenneth Drew, ¶ 1; Declaration of Lainie Cohen, ¶ 1. Like Ms. Clayman, each agreed to become a named plaintiff after consulting with counsel and understood their obligations as representatives of a class, including that they might have to be deposed and give testimony at trial. Drew Decl., ¶¶ 5 & 7; Cohen Decl., ¶¶ 5 & 7. They also she communicated regularly with counsel, worked with counsel to provide responses to Defendant's discovery requests, and consulted with

counsel concerning the mediation and the Settlement.  In addition, both Mr. Drew and Ms. Cohen were deposed by counsel for Defendant after first preparing for their depositions and meeting with their attorneys.  Drew Decl., ¶ 7; Cohen Decl., ¶ 7.  Both were deposed within driving distance of their homes.  *Id.*

Plaintiff Alba Marko (*née* Morales) has been involved in this litigation since 2013. Declaration of Alba Marko, ¶ 1.  Like Mr. Drew and Ms. Cohen, she agreed to become a named plaintiff after consulting with counsel and understood their obligations as representatives of a class, including that they might have to be deposed and give testimony at trial.  *Id.*, ¶¶ 5 & 7.  She communicated regularly with counsel, worked with counsel to provide responses to Defendant's discovery requests, met with counsel to prepare for a deposition and was deposed by counsel for Defendant, and consulted with counsel concerning the mediation and the Settlement.  *Id.*, ¶¶ 7-8. Unlike Ms. Cohen and Mr. Drew, however, Ms. Marko, who lives in California, was deposed in New York City.  *Id.* at ¶ 7.  This required her to fly across country and stay overnight.  *Id.* Moreover, because the deposition lasted until 3:00 in the afternoon, and traffic conditions in New York were poor, she was unable to catch her scheduled flight home on the evening of the deposition and had to return home the following day.  *Id.*  Because of the time for travel, deposition preparation and the deposition itself, Ms. Marko was unavailable for work for three days.  *Id.*  Accordingly, she seeks a slightly higher case contribution award – $6,000 – than Ms. Cohen or Mr. Drew.

Plaintiffs' requests for case contribution awards are justified "in light of the time and effort [plaintiffs have] devoted to this case."  *Ontiveros v. Zamora,* No. 2:08-567 WBS DAD, 2014 WL 3057506, at *9 (E.D. Cal. July 7, 2014).  As with the plaintiff in *Ontiveros,* plaintiffs here have each participated actively in the case, had regular communications with counsel, and were involved in the mediation and settlement discussions.  *Id.*  (finding that "[t]hese are exactly the sort of tasks for which an incentive award is appropriate").  Moreover, three of the four sat for depositions by counsel for Defendant.  Three of the four seek awards of less than $5000, which courts have generally approved as reasonable.  Preliminary Approval Order, ECF No. 63, at 8-9 (citing *Hopeson v. Hanesbrands Inc.,* Civ. No. 08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3, 2009), *In*

Notice of Motion & Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards
Case No. 2:13-cv-2213 WBS EFB

20

*re Mego Fin. Corp. Sec. Litig.,* 213 F.3d 454, 463 (9th Cir. 2000), *In re SmithKline Beckman Corp.,* 751 F. Supp. 525, 535 (E.D. Pa. 1990), and *Alberto v. GMRI, Inc.,* 252 F.R.D. 652, 669 (E.D. Cal. 2008)).  Even Ms. Marko's award is only $1000 above $5000, and the amount is justified by the extra time and effort required for her deposition in New York.[7]

While the awards here are significantly greater than the amounts that class members will receive under the Settlement than was the case in *Ontiveros,* Plaintiffs are also requesting substantially lower individual payments than the $20,000 incentive award the plaintiff received in that matter.  Moreover, as this Court found in a recent case, "[t]he incentive award here is not particularly unfair to other class members, given that it will not significantly reduce the amount of settlement funds available to the rest of the class."  *Syed,* 2016 WL 310135, at *4.  Indeed, in this case the awards will not reduce the amounts available for the rest of the class *at all,* since they will be paid by Defendant separately from, and in addition to, the amount Defendant will contribute to the Settlement Fund.

Moreover, it is worth noting that the difference between the value of the case contribution awards and the amounts each class member will receive under the Settlement are not a reflection of any lack of success of the lawsuit, but rather, reflect the undeniable fact that the damages suffered by each individual class member were small.  Yet the time and effort a lead plaintiff must devote to litigating a case on behalf of class of hundreds of thousands, if not millions, of consumers of $5 products is the same as the time and effort required of a plaintiff in a securities case where individual class members may have suffered thousands of dollars in damages, but the class itself may be considerably smaller.  Accordingly, Plaintiffs respectfully request that the Court grant their requests for case contribution awards.

---

[7] To be sure, Ms. Marko *could* have been deposed in California.  However, she agreed as a courtesy to fly to the east coast, where counsel for both Plaintiffs and Defendant have their offices, which ultimately lowered the litigation expense of all Parties.  Kindall Decl., ¶ 37.

## IV.    CONCLUSION

For the reasons set forth above and in the supporting declarations and exhibits filed in support of this motion, Plaintiffs request that the Court approve Class Counsel's request for attorneys' fees and expenses, and grant their own requests for case contribution awards.

Dated:  September 12, 2016                              Respectfully submitted,


By: /s/ Mark P. Kindall
Mark P. Kindall (State Bar No. 138703)
Robert A. Izard (Admitted *pro hac vice*)
**IZARD, KINDALL & RAABE, LLP**
29 South Main Street, Suite 305
West Hartford, CT 06107
Telephone: (860) 493-6292
Facsimile: (860) 493-6290
mkindall@ikrlaw.com
rizard@ikrlaw.com

Alan R. Plutzik (State Bar No. 77785)
**BRAMSON, PLUTZIK, MAHLER
& BIRKHAEUSER LLP**
2125 Oak Grove Road
Walnut Creek, CA 94598
Telephone: (925) 945-0200
Facsimile: (925) 945-8792
aplutzik@bramsonplutzik.com

Joseph J. DePalma (admitted *pro hac vice*)
Katrina Carroll (*pro hac vice* forthcoming)
**LITE DEPALMA GREENBERG, LLC**
Two Gateway Center, 12th Floor
Newark, New Jersey 07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
jdepalma@litedepalma.com
kcarroll@litedepalma.com

Nicole A. Veno (admitted *pro hac vice*)
**LAW OFFICE OF NICOLE VENO**
573 Hopmeadow Street
Simsbury, CT 06070
Telephone: (860) 474-4024
Facsimile: (860) 717-3207
nveno@venolaw.com

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

      The undersigned hereby certifies that all counsel of record who have consented to electronic service are being served with a copy of the attached **Notice of Motion and Motion for Award of Attorneys' Fees, Reimbursement of Expenses and Case Contribution Awards** via the CM/ECF system on September 12, 2016.

DATED:  September 12, 2016             */s/*  Mark P. Kindall_____
                                    Mark P. Kindall