UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

----oo0oo----

| | |
|---|---|
| ALBA MORALES; LANIE COHEN; LINDA CLAYMAN; and KENNETH DREW, on behalf of themselves and all other similarly situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>CONOPCO, INC., d/b/a Unilever,<br><br>            Defendant. | CIV. NO.: 2:13-2213 WBS EFB<br><br>MEMORANDUM AND ORDER RE: FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND ATTORNEYS' FEES |

----oo0oo----

Plaintiffs Alba Morales, Lanie Cohen, Linda Clayman, and Kenneth Drew brought this putative class action against defendant Conopco, Inc., d/b/a Unilever, asserting claims arising out of defendant's alleged labeling of certain hair care products as "TRESemmé Naturals" despite them containing synthetic ingredients.  Presently before the court are plaintiffs' motions for final approval of the class action settlement and attorneys' fees.  (Docket Nos. 66-67.)

1

1  I.  Factual and Procedural Background

2          Defendant is a multinational consumer goods company

3  whose products include food, beverages, cleaning agents, and

4  personal care products, including the TRESemmé brand.

5          Plaintiffs contend that defendant violated California's

6  Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et

7  seq., California's Consumer Legal Remedies Act ("CLRA"), Cal.

8  Civ. Code § 1750 et seq., and various other state consumer

9  protection laws.  (See Second Amended Complaint (Docket No. 30).)

10 Plaintiffs brought this lawsuit on behalf of a putative class of

11 consumers in the United States who have purchased TRESemmé

12 Naturals products.  (Stipulation of Settlement ("Settlement

13 Agreement") at 2-3 (Docket No. 66-3).)  The parties litigated the

14 case for nearly two years before reaching a settlement agreement

15 on February 5, 2016 before mediator Jonathan Marks.  (Id. ¶¶ 3-

16 100.)

17          After reaching settlement terms, the parties then filed

18 a motion for preliminary approval of a class action settlement on

19 May 27, 2016.  (Docket No. 57.)  In its Order granting

20 preliminary approval of the settlement, the court provisionally

21 certified the following class: "All individuals in the United

22 States who purchased the following TRESemmé Naturals products:

23 (a) Nourishing Moisture Shampoo; (b) Nourishing Moisture

24 Conditioner; (c) Radiant Volume Shampoo; (d) Radiant Volume

25 Conditioner; (e) Vibrantly Smooth Shampoo; and (f) Vibrantly

26 Smooth Conditioner."  The court appointed Alba Morales, Lanie

27 Cohen, Linda Clayman, and Kenneth Drew as class representatives,

28 the law firm of Kindall & Raabe, LLP as class counsel, the law

1  firm of Bramson, Plutzik, Mahler & Birkhaeuser, LLP as liaison

2  counsel, and KCC Class Action Service LLC as claims

3  administrator.  The court also approved the class opt-in form,

4  opt-out form, and notice of settlement; directed the claims

5  administrator to publish notice pursuant to the action by August

6  11, 2016; directed class members to file objections, requests for

7  exclusion, and claim forms by September 19, 2016; directed

8  plaintiffs to file a motion for attorneys' fees by September 12,

9  2016; and directed parties to file briefs in support of final

10 approval of the settlement by September 12, 2016.  The court set

11 the final fairness hearing for October 17, 2016, at 1:30 p.m.

12         After conducting the final fairness hearing and

13 carefully considering the settlement terms, the court now

14 addresses whether this class action should receive final

15 certification; whether the proposed settlement is fair,

16 reasonable, and adequate; and whether class counsel's request for

17 attorneys' fees and costs should be granted.

18 II.  Discussion

19         The Ninth Circuit has declared that a strong judicial

20 policy favors settlement of class actions.  Class Plaintiffs v.

21 City of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992).

22 Nevertheless, where, as here, "the parties reach a settlement

23 agreement prior to class certification, courts must peruse the

24 proposed compromise to ratify both [1] the propriety of the

25 certification and [2] the fairness of the settlement."  Staton v.

26 Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).

27         The first part of the inquiry requires the court "pay

28 'undiluted, even heightened, attention' to class certification

                                    3

1    requirements" because, unlike in a fully litigated class action

2    suit, the court "will lack the opportunity . . . to adjust the

3    class, informed by the proceedings as they unfold." Amchem

4    Prods. Inc. v. Windsor, 521 U.S. 591, 620 (1997); see Hanlon v.

5    Chrysler Corp., 150 F.3d 1011, 1019 (9th Cir. 1998).  In the

6    second stage, the court holds a fairness hearing where the court

7    entertains any putative class member's objections to (1) the

8    treatment of this litigation as a class action and (2) the terms

9    of the settlement.  See Diaz v. Tr. Territory of Pac. Islands,

10   876 F.2d 1401, 1408 (9th Cir. 1989) (holding that a court is

11   required to hold a hearing prior to final approval of a dismissal

12   or compromise of class claims to "inquire into the terms and

13   circumstances of any dismissal or compromise to ensure it is not

14   collusive or prejudicial").  Following such a hearing, the court

15   must reach a final determination as to whether the court should

16   allow the parties to settle the class action pursuant to the

17   terms agreed upon.  See Telecomms. Coop. v. DIRECTV, Inc., 221

18   F.R.D. 523, 525 (C.D. Cal. 2004).

19        A.    Class Certification

20        A class action will be certified only if it meets the

21   four prerequisites identified in Rule 23(a) and fits within one

22   of the three subdivisions of Rule 23(b).  Fed. R. Civ. P. 23(a)-

23   (b).  Although a district court has discretion in determining

24   whether the moving party has satisfied each Rule 23 requirement,

25   the court must conduct a rigorous inquiry before certifying a

26   class.  See Califano v. Yamasaki, 442 U.S. 682, 701 (1979).

27        1.    Rule 23(a) Requirements

28        Rule 23(a) restricts class actions to cases where:

4

1    (1) the class is so numerous that joinder of all
     members is impracticable; (2) there are questions of
2    law or fact common to the class; (3) the claims or
     defenses of the representative parties are typical of
3    the claims or defenses of the class; and (4) the
     representative parties will fairly and adequately
4    protect the interests of the class.

5    Fed. R. Civ. P. 23(a).  In the court's Order granting preliminary

6    approval of the settlement, the court found the putative class

7    satisfied the Rule 23(a) requirements.  Since the court is

8    unaware of any changes that would alter its Rule 23(a) analysis,

9    and because the parties indicated that they were unaware of any

10   such developments, the court finds that the class definition

11   proposed by plaintiffs meets the requirements of Rule 23(a).

12                    2.    Rule 23(b) Requirements

13        An action that meets all the prerequisites of Rule

14   23(a) may be certified as a class action only if it also

15   satisfies the requirements of one of the three subdivisions of

16   Rule 23(b).  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th

17   Cir. 2013).  Plaintiffs seeks certification under Rule 23(b)(3),

18   which provides that a class action may be maintained only if (1)

19   "the court finds that questions of law or fact common to class

20   members predominate over questions affecting only individual

21   members" and (2) "a class action is superior to other available

22   methods for fairly and efficiently adjudicating the controversy."

23   Fed. R. Civ. P. 23(b)(3).

24        In its Order granting preliminary approval of the

25   settlement, the court found that both prerequisites of Rule

26   23(b)(3) were satisfied.  The court is unaware of any changes

27   that would affect this conclusion, and the parties indicated that

28   they were aware of no such developments.  Accordingly, since the

1 settlement class satisfies both Rule 23(a) and 23(b)(3), the

2 court will grant final class action certification.

3                3.    Rule 23(c)(2) Notice Requirements

4         If the court certifies a class under Rule 23(b)(3), it

5 "must direct to class members the best notice that is practicable

6 under the circumstances, including individual notice to all

7 members who can be identified through reasonable effort."  Fed.

8 R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and

9 content of a proposed notice.  See Ravens v. Iftikar, 174 F.R.D.

10 651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin,

11 417 U.S. 156, 172-77 (1974)).  Although that notice must be

12 "reasonably certain to inform the absent members of the plaintiff

13 class," actual notice is not required.  Silber v. Mabon, 18 F.3d

14 1449, 1454 (9th Cir. 1994) (citation omitted).

15         As provided by the Settlement Agreement, KCC

16 administered the claims process.  (Settlement Agreement at 2.)

17 Because defendant does not have records showing who purchased its

18 products, KCC used class demographics to develop a notice plan

19 that it estimated would reach over 70% of the class members.

20 (Id. Ex. D at 10.)  Based on its research, KCC believes the

21 notice plan reached over 70% of the class members.  (Kindall

22 Decl. Ex. 2 ("Geraci Decl.") ¶ 9 (Docket No. 66-4).)

23         On July 25, 2016, KCC launched a dedicated settlement

24 website and toll-free line that class members could call for

25 information.  (Id. ¶ 5.)  The website included the Settlement

26 Notice, Complaint, the Settlement Agreement, the Plan of

27 Allocation, and the court's Preliminary Approval Order.  (Id.)

28 It also had a page for class members to file claims online or

1   print out claim forms to submit by mail.  (Id.)  KCC placed over

2   150 million banner advertisements on websites targeted to adults

3   over 18, with 105 million banner advertisements targeted to women

4   over 18.  (Id. ¶ 6.)  The advertisement campaign began July 26,

5   2016, and lasted approximately one month.  (Pls.' Mot. for Final

6   Approval of Class Action Settlement ("Pls.' Mot.") at 5:2-3

7   (Docket No. 66); Geraci Decl. ¶ 5.)  Each banner included an

8   embedded link to the settlement website.  (Geraci Decl. ¶ 6.)

9   KCC also placed class notices in the August 22, 2016, edition of

10  People magazine and the online and print versions of the

11  Sacramento Bee on July 26, 2016, August 2, 2016, August 9, 2016,

12  and August 16, 2016.  (Id. ¶¶ 7-8.)

13          As of September 6, 2016, there have been 249,742

14  website visitor sessions and 253 people have called the toll-free

15  number.  (Id. ¶ 10.)  This has resulted in 179,676 claims filed

16  by purchasers of TRESemmé Naturals products.[1]  (Id. ¶ 11.)

17          The notice explains the proceedings; defines the scope

18  of the class; informs the class member of the claim form

19  requirement and the binding effect of the class action; describes

20  the procedure for opting out and objecting; provides the time and

21  date of the fairness hearing; and directs interested parties to

22  more detailed information on the settlement website.  (Settlement

23  Agreement Ex. E.)  The notice makes clear that class members may

24  recover for the purchase of up to ten bottles per household

25  without providing proof of purchase and can recover for more than

26  ten bottles if they submit adequate proof of a greater number of

27  _____

28          [1]   This constitutes approximately seven percent of the
    class.  (See Docket No. 69 at 2:15.)

                                    7

1   purchases with their claim forms.  (Id.)  The content of the

2   notice therefore satisfies Rule 23(c)(2)(B).  See Fed. R. Civ. P.

3   23(c)(2)(B); see also Churchill Vill., L.L.C. v. Gen. Elec., 361

4   F.3d 566, 575 (9th Cir. 2004) ("Notice is satisfactory if it

5   generally describes the terms of the settlement in sufficient

6   detail to alert those with adverse viewpoints to investigate and

7   to come forward and be heard." (citation omitted)).

8        B.      Rule 23(e): Fairness, Adequacy, and Reasonableness

9                of Proposed Settlement

10       Having determined that class treatment is warranted,

11   the court must now address whether the terms of the parties'

12   settlement appear fair, adequate, and reasonable.  In conducting

13   this analysis, the court must balance several factors, including:

14       the strength of the plaintiffs' case; the risk,
         expense, complexity, and likely duration of further
15       litigation; the risk of maintaining class action status
         throughout the trial; the amount offered in settlement;
16       the extent of discovery completed and the stage of the
         proceedings; the experience and views of counsel; the
17       presence of a governmental participant; and the
         reaction of the class members to the proposed
18       settlement.

19   Hanlon, 150 F.3d at 1026.  But see In re Bluetooth Headset Prods.

20   Liab. Litig., 654 F.3d 935, 946 (9th Cir. 2011) ("The factors in

21   a court's fairness assessment will naturally vary from case to

22   case.").

23       1.   Strength of Plaintiffs' Case

24       An important consideration is the strength of

25   plaintiffs' case on the merits compared to the settlement amount

26   offered.  DIRECTV, 221 F.R.D. at 526.  The court, however, is not

27   required to reach an ultimate conclusion of the merits "for it is

28   the very uncertainty of outcome in litigation and avoidance of

1   wastefulness and expensive litigation that induce consensual

2   settlements."  Officers for Justice v. Civ. Serv. Comm'n of City

3   & County of S.F., 688 F.2d 615, 625 (9th Cir. 1982).

4          Plaintiffs' claims that defendant violated various

5   state consumer protection laws survived defendant's motion to

6   dismiss, indicating plaintiffs' claims as alleged may have merit.

7   (See April 9, 2014 Order (Docket No. 27).)  However, since expert

8   discovery has not commenced, it is unclear whether a reasonable

9   consumer would find defendant's products were deceptive and

10  whether a reasonable consumer paid a premium for the TRESemmé

11  Naturals label.  Further, the only substantive motion the court

12  has ruled on is the motion to dismiss the First Amended

13  Complaint.  This limited record precludes the court from

14  assessing the merits of plaintiffs' case.  Accordingly, the court

15  will not consider this factor for settlement purposes.

16          2.   Risk, Expense, Complexity, and Likely Duration of

17               Further Litigation

18          Although the court cannot assess the strength of

19  plaintiffs' case from the record, the presence of substantially

20  disputed legal issues does serve to heighten the risk and

21  uncertainty that both parties would face if this action went to

22  trial.  See Hanlon, 150 F.3d at 1026.  The parties disagree over

23  whether reasonable consumers would be deceived by the labels.

24  (See April 9, 2014 Order at 14:14-19:20 (describing dispute

25  between plaintiffs and defendant over the reasonable consumer

26  test).)

27          Plaintiffs believe that the product labels are

28  deceptive and would deceive reasonable consumers.  (Pls.' Mot. at

9

13.)  However, their individual testimony is insufficient to establish whether defendant's representations on its products would deceive a reasonable consumer and whether these representations were material to a reasonable consumer.  See Clemens v. DaimlerChrysler Corp., 534 F.3d 1017, 1025-26 (9th Cir. 2008) (holding individual's belief of deception was insufficient to establish a reasonable consumer would be deceived under the UCL).  This would lead to competing surveys and expert testimony to determine whether a reasonable consumer would be deceived.  The risk of this dispute weighs in favor of finding this settlement fair.  See Weeks v. Kellogg Co., Civ. No. 09-08102 MMM RZX, 2013 WL 6531177, at *13 (C.D. Cal. Nov. 23, 2013) ("The fact that this issue, which is at the heart of plaintiffs' case, would have been the subject of competing expert testimony suggests that plaintiffs' ability to prove liability was somewhat unclear; this favors a finding that the settlement is fair.").

Assuming the case progressed further, the complexity and duration of the litigation would be considerable.  With a current stipulated class of over 179,000 members, completing discovery in this case would be extremely costly.  (See Docket No. 69 at 2:15.)  Further litigation of this action would likely include a motion for class certification and a series of dispositive motions.  It has been nearly three years since plaintiffs filed the original Complaint, yet only one dispositive motion has been resolved by the court and expert discovery has not commenced.  Accordingly, the court finds that the risk of litigation and likely expense and duration of further litigation favor approval of the settlement.

10

1    3.   Risk of Maintaining Class-Action Status Throughout

2         Trial

3         Defendant has stipulated to certification of a

4    nationwide class for settlement purposes only.  (Settlement

5    Agreement ¶ 44.)  If the Settlement Agreement terminates for any

6    reason, class certification will be vacated.  (See July 12, 2016

7    Order at 21:27-22:1 (Docket No. 63).)  Plaintiffs would have to

8    file a motion for class certification, which defendant would

9    almost certainly oppose.  Plaintiffs believe they would be able

10   to certify a class and maintain it throughout the litigation, but

11   this is not guaranteed.  If the class was certified, however, the

12   court is unaware of any foreseeable difficulty the class might

13   have in maintaining the certification at trial.  Since class

14   certification is not guaranteed at trial, this factor weighs in

15   favor of accepting the final class action settlement.

16        4.   Amount Offered in Settlement

17        "In assessing the consideration obtained by the class

18   members in a class action settlement, it is the complete package

19   taken as a whole, rather than the individual component parts,

20   that must be examined for overall fairness."  Ontiveros v.

21   Zamora, 303 F.R.D. 356, 370 (E.D. Cal. 2014).  In determining

22   whether a settlement agreement is substantively fair to the

23   class, the court must balance the value of expected recovery

24   against the value of the settlement offer.  See In re Tableware

25   Antitrust Litig., 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).

26   This inquiry may involve consideration of the uncertainty class

27   members would face if the case were litigated to trial.  See

28   Ontiveros, 303 F.R.D. at 370-71.

1    The settlement achieved a "key goal" of the litigation

2 in that it resulted in the discontinuance of the TRESemmé

3 Naturals products.  (Kindall Decl. ¶ 16 (Docket No. 66-2).)  This

4 goal would be achieved regardless of whether the settlement is

5 approved.  However, plaintiffs achieved this goal because they

6 brought and litigated this suit for nearly three years.

7    The settlement also provides that defendant pay $3.25

8 million into an escrow account to pay for class claims, after

9 subtracting expenses, costs, and attorneys' fees.  (Settlement

10 Agreement ¶ 15.)  In its previous Order, the court found the

11 settlement amount was on the low-end of the expected recovery

12 range.  (July 12, 2016 Order at 18:2-3.)  After subtracting the

13 maximum amount of attorneys' fees, litigation expenses, and costs

14 of Notice and Claims Administration, approximately $1.75 million

15 would remain in the class claims account.  (Kindall Decl. ¶ 29.)

16    Defendant's line of products only cost several dollars,

17 and plaintiffs' analysis found the premium paid for a "Naturals"

18 product was approximately sixty-eight cents per product.

19 (Kindall Decl. ¶ 17.)  As of October 6, 2016, 179,676 purchasers

20 of defendant's Naturals products filed claims under the

21 settlement with an aggregate claims value of $6,964,930.  (Docket

22 No. 69 at 2:15.)  Based on the value of claims made to date,

23 class counsel states each class member would receive $1.26 per

24 product purchased, up to ten products.[2]  (Id. at 3:16-20.)  This

25    [2]    The $1.26 per product recovery was calculated by
26 dividing the estimated $1.75 million to be distributed to class
   members after fees, costs, and expenses by the estimated $7
27 million aggregate value of the class members' claims and then
   multiplying that number by the $5 per product limit.  Class
28 counsel provided an updated calculation of $1.14 per product at

1 is almost double the estimated sixty-eight cents premium each

2 consumer paid for each Naturals product.  (Id. at 3:19-20); see

3 Brazil v. Dole Packaged Foods, LLC, No. 14-17480, 2016 WL

4 5539863, at *2 (9th Cir. Sept. 30, 2016) ("[A] plaintiff cannot

5 be awarded a full refund unless the product she purchased was

6 worthless.").  Class members claiming more than ten products will

7 receive the same per-product amount if they provide proof of

8 purchase.  (Settlement Agreement ¶ 29.)  While this is a nominal

9 amount, facilitating such small claims is "[t]he policy at the

10 very core of the class action mechanism." Windsor, 521 U.S. at

11 617 (quoting Mace v. Van Ru Credit Corp., 109 F.3d 338, 344 (7th

12 Cir. 1997)).

13      This recovery weighs in favor of approving the

14 settlement because class members receive an amount greater than

15 the economic damages suffered per product purchased.  The court

16 finds no reason to doubt class counsel's assertion that a per-

17 product recovery greater than the premium paid for the products

18 is a good result.

19      Given the risk and uncertainty of the litigation, the

20 overall terms of the settlement appear fair.  See DIRECTV, 221

21 F.R.D. at 527.  Accordingly, the court finds the amount offered

22 favors approving the settlement.

23           5.    Extent of Discovery Completed and the Stage of the

24                 Proceedings

25      "A settlement that occurs in an advance stage of the

26 proceedings indicates the parties carefully investigated the

27

28 the final fairness hearing.

13

1  claims before reaching a resolution."  <u>Ontiveros</u>, 303 F.R.D. at

2  371.  Plaintiffs first filed their Complaint three years ago.

3  (<u>See</u> Docket No. 1.)  Both parties have aggressively litigated the

4  case, briefed several motions, engaged in extensive discovery,

5  and participated in lengthy mediation and settlement discussions.

6  (Kindall Decl. ¶¶ 6-12.)  Plaintiffs' counsel was informed about

7  the strengths and weaknesses of this case when plaintiffs

8  accepted the terms of the settlement agreement.  (Kindall Decl. ¶

9  15.)  Accordingly, the court finds the extent of discovery and

10  stage of the proceedings favors approving the settlement.

11              6.   <u>Experience and Views of Counsel</u>

12          "When approving class action settlements, the court

13  must give considerable weight to class counsel's opinions due to

14  counsel's familiarity with the litigation and its previous

15  experience with class action lawsuits."  <u>Murillo v. Pac. Gas &</u>

16  <u>Elec. Co.</u>, Civ. No. 2:08-1974 WBS GGH, 2010 WL 2889728, at *8

17  (E.D. Cal. July 21, 2010).  Class counsel Mark Kindall and his

18  colleagues at Izard, Kindall & Raabe, LLP have significant

19  experience with litigating class action suits and have been

20  appointed as lead or co-counsel in over sixty class actions.

21  (<u>See</u> Kindall Decl. Ex. 3 at 1 (Docket No. 66-5).)  Liaison

22  counsel Bramson, Plutzik, Mahler & Birkhaeuser, LLP is similarly

23  experienced, having recovered hundreds of millions of dollars in

24  class action settlements as lead or co-counsel.  (<u>See</u> Pls.' Mot.

25  for Preliminary Class Action Settlement Ex. 4 at 1 (Docket No.

26  57-5).)  Both lead and liaison counsel strongly support the

27  settlement.  (Pls.' Mot. at 19:3-13.)  Thus, this factor supports

28  approval of the settlement.

1              7.    Presence of a Government Participant

2         No government party participated in this matter; this

3    factor, therefore, is irrelevant to the court's analysis.

4              8.    Reaction of the Class Members to the Proposed

5                   Settlement

6         "[T]he absence of a large number of objections to a

7    proposed class action settlement raises a strong presumption that

8    the terms of a proposed class settlement action are favorable to

9    the class members." DIRECTV, 221 F.R.D. at 529.  The notice

10   complied with Federal Rules of Civil Procedure 23(c)(2) and

11   23(e).  It provided the best notice practicable under the

12   circumstances, and it informed potential class members of the

13   settlement amount, the basis of the lawsuit, the definition of

14   the class, the procedure for and consequences of opting-in to the

15   settlement, the procedure for and consequences of objecting or

16   obtaining exclusion from the settlement, and the date of the

17   final fairness hearing.

18        Of the 179,676 individuals who filled out the claim

19   form online or by mail, only one individual requested to opt-out

20   and one objected to the settlement.  (Docket No. 69 at 2:20-24.)

21   One individual asked to be excluded due to a mistaken belief

22   about who is in the class, stating:  "I have purchased tressme

23   [sic] shampoo and conditioner in the past.  But after further

24   evaluation, [the class action] only pertains to the naturals

25   selection.  Therefore, I resign my submition [sic] to this

26   action."  (Id. Ex. 1.)  This is not an opt-out, instead the

27   individual realized she had not purchased a covered product until

28   after filing the claim form.  (Kindall Decl. ¶ 26; Geraci Decl.

                              15

1   Ex. 1.)  A second individual objected to the scope of the release

2   in the Settlement Agreement, but later withdrew the objection

3   after realizing the release did not include release of personal

4   injury claims.  (Docket No. 69 Ex. A ("Helfand Objection") at 1;

5   Docket No. 70 Ex. A.)  Therefore, the court finds this factor

6   weighs in favor of settlement.

7          Having considered the foregoing factors, the court

8   finds the settlement is fair, adequate, and reasonable pursuant

9   to Rule 23(e).

10          C.    Attorneys' Fees

11          If a negotiated class action settlement includes an

12  award of attorneys' fees, that fee award must be evaluated in the

13  overall context of the settlement.  Kinsley v. Network Assocs.,

14  312 F.3d 1123, 1126 (9th Cir. 2002).  Class counsel whose efforts

15  create "a common fund for the benefit of persons other than

16  himself or his client is entitled to a reasonable attorney's fee

17  from the fund as a whole."  Boeing Co. v. Van Gemert, 444 U.S.

18  472, 478 (1980).  The Ninth Circuit has approved two methods of

19  assigning attorneys' fees in common fund cases: percentage-of-

20  recovery and lodestar.  Vizcaino v. Microsoft Corp., 290 F.3d

21  1043, 1047 (9th Cir. 2002).  The court has discretion in common

22  fund cases, such as here, to choose either method.  Id.

23          "Despite this discretion, use of the percentage method

24  in common fund cases appears to be dominant."  In re Omnivision

25  Techs., Inc., 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008) (citing

26  cases).  It is "particularly appropriate in common fund cases

27  where, as here, 'the benefit to the class is easily quantified.'"

28  Syed v. M-I LLC, Civ. No. 1:14-742 WBS BAM, 2016 WL 310135, at *9

1   (E.D. Cal. Jan. 26, 2016) (quoting Bluetooth, 654 F.3d at 942).

2   Here, class counsel agreed to represent plaintiffs on a wholly

3   contingent basis.  (Pls.' Mot. for Attorneys' Fees at 7-8.)

4   Because of the ease of calculation and the pervasive use of the

5   percentage-of-recovery method in common fund cases, the court

6   thus adopts this method.

7        Under the percentage-of-recovery method, the court may

8   award class counsel a percentage of the total settlement fund.

9   Vizcaino, 290 F.3d at 1047.  The Ninth Circuit "has established

10  25% of the common fund as a benchmark award for attorney fees."

11  Hanlon, 150 F.3d at 1029.  The parties negotiated and agreed

12  class counsel shall not apply for a fee award greater than 30%,

13  but class counsel only requests 25% of the total $3.25 million

14  settlement fund, or $812,500.  (Settlement Agreement ¶ 56; Pls.'

15  Mot. for Attorneys' Fees at 1:11-13 (Docket No. 67).)

16        As previously discussed, there were substantial risks

17  and delays inherent in this litigation and a possibility that

18  class members would not have recovered anything.  Since class

19  counsel took this case on a contingency basis, their risk of

20  recovery was the same as the class members and they have

21  aggressively litigated this case for three years.  Defendant does

22  not oppose class counsel's application for fees.  (Id.; Kindall

23  Decl. ¶ 26.)  Further, class counsel seeks a percentage below the

24  maximum class counsel could request under the Settlement

25  Agreement.

26        One class member objects to class counsel's hourly rate

27  and hours worked in class counsel's lodestar cross-check.

28  (Helfand Objection at 2.)  As previously discussed, the court is

17

1   applying the percentage-of-recovery method and thus the hourly

2   rate and hours worked do not affect the percentage of recovery.

3   The court thus finds that class counsel's request for attorney's

4   fees is fair, appropriate, and reasonable under the

5   circumstances.  Accordingly, the court will approve class

6   counsel's application for $812,500 in attorneys' fees.

7        D.    Expenses

8        "There is no doubt that an attorney who has created a

9   common fund for the benefit of the class is entitled to

10  reimbursement of reasonable litigation expenses from that fund."

11  In re Heritage Bond Litig., No. 02-1475, 2005 WL 1594403, at *23

12  (C.D. Cal. June 10, 2005).  Class counsel has submitted a list of

13  itemized costs relating to court costs, service of process fees,

14  expert fees, electronic research and discovery, transcripts,

15  mediation, travel, photocopying and printing, and postage and

16  delivery. (Kindall Decl. Ex. 8 (Docket No. 66-10).)  The court

17  finds these are reasonable litigation expenses, and it therefore

18  will grant class counsel's request for compensation in the amount

19  of $70,700.54.

20        E.    Incentive Payment to Named Plaintiffs

21        The Ninth Circuit has approved the award of "reasonable

22  incentive payments" to named plaintiffs if it does not undermine

23  the adequacy of the class representatives.  Staton, 327 F.3d at

24  977-78; see Radcliffe v. Experian Info. Sys., Inc., 715 F.3d

25  1157, 1163 (9th Cir. 2013).  Courts have found that $5,000

26  incentive payments are reasonable.  Hopson v. Hanesbrands Inc.,

27  Civ. No. 08-0844 EDL, 2009 WL 928133, at *10 (N.D. Cal. Apr. 3,

28  2009) (citing In re Mego Fin. Corp. Sec. Litig., 213 F.3d 454,

1 │ 463 (9th Cir. 2000)).

2 │         Here, the incentive awards are to be paid by defendant

3 │ separately and apart from the settlement fund.  (Settlement

4 │ Agreement ¶ 60.)  Clayman seeks an award of $1,000 based on her

5 │ involvement in the case.  (Kindall Decl. Ex. 7 ¶ 10 (Docket No.

6 │ 66-9).)  Plaintiffs Drew and Cohen each seek an award of $4,000

7 │ based on their involvement in the litigation.  (Kindall Decl. Ex.

8 │ 4 ¶ 10 (Docket No. 66-6); Kindall Decl. Ex. 6 ¶ 10 (Docket No.

9 │ 66-8).)  Morales seeks an award of $6,000 based upon her enhanced

10 │ case involvement and travel.  (Kindall Decl. Ex. 5 ¶ 10 (Docket

11 │ No. 66-7).)  While Morales seeks an award above the general

12 │ $5,000 benchmark, this increase is due to missing three days of

13 │ work as a result of traveling for her deposition.  (Id. ¶¶ 7-8.)

14 │ Defendant does not oppose the incentive awards for named

15 │ plaintiffs.  For reasons discussed above and in the court's July

16 │ 12, 2016 Order, the court orders that incentive payments be paid

17 │ to the named plaintiffs.

18 │         Based on the foregoing, the court grants final

19 │ certification of the settlement class and approves the settlement

20 │ set forth in the Settlement Agreement as fair, reasonable, and

21 │ adequate.  The court finds an award of $883,200.54 to be an

22 │ appropriate amount for attorneys' fees and costs and an award of

23 │ $15,000 to be an appropriate amount for plaintiffs' incentive

24 │ payments.  Consummation of the settlement in accordance with the

25 │ terms and provisions of the Settlement Agreement is therefore

26 │ approved, and the definitions provided in the Settlement

27 │ Agreement shall apply to the terms used herein.  The Settlement

28 │ Agreement shall be binding upon all class members who did not

1    timely file a claim and opt-out of the settlement.

2         IT IS THEREFORE ORDERED that plaintiffs' motion for

3    final approval of the class action settlement be, and the same

4    hereby is, GRANTED.

5         IT IS FURTHER ORDERED THAT:

6         (1) Solely for the purpose of this settlement, and

7    pursuant to Federal Rule of Civil Procedure 23, the court hereby

8    certifies the following class:

9         All individuals in the United States who purchased the
          following TRESemmé Naturals products: (a) Nourishing
10        Moisture Shampoo; (b) Nourishing Moisture Conditioner;
          (c) Radiant Volume Shampoo; (d) Radiant Volume
11        Conditioner; (e) Vibrantly Smooth Shampoo; and (f)
          Vibrantly Smooth Conditioner. Specifically excluded
12        from the Class are (1) defendant, (2) the officers,
          directors, or employees of defendant and their
13        immediate family members, (3) any entity in which
          defendant has a controlling interest, (4) any
14        affiliate, legal representative, heir, or assign of
          defendant, (5) all federal court judges who have
15        presided over this action and their immediate family
          members, (6) all persons who submit a valid request for
16        exclusion from the class, and (7) those who purchased
          the products for the purpose of resale.
17
          (2) the court appoints the named plaintiffs Alba
18   Morales, Lanie Cohen, Linda Clayman, and Kenneth Drew as

19   representatives of the class and finds that they meet the

20   requirements of Rule 23;

21        (3) the court appoints Mark Kindall of Izard, Kindall &

22   Raabe, LLP as counsel to the settlement class, appoints Alan

23   Plutzik and Michael Strimling of Bramson, Plutzik, Mahler &

24   Birkhaeuser, LLP as liaison counsel, and finds that they meet the

25   requirements of Rule 23;

26        (4) the Settlement Agreement's plan for class notice is

27   the best notice practicable under the circumstances and satisfies

28

                                   20

1   the requirements of due process and Rule 23.  The plan is

2   approved and adopted;

3           (5) the parties have executed the notice plan in the

4   court's Preliminary Approval Order, in response to which 179,676

5   class members submitted an opt-in form, and one class member of

6   the settlement submitted an opt-out form.  Having found that the

7   parties and their counsel took extensive efforts to locate and

8   inform all class members of the settlement, given that no class

9   members or opt-outs have filed any objections to the settlement,

10  and having found that the number of individuals who opted in and

11  opted out to be reasonable, the court finds and orders that no

12  additional notice to the class is necessary;

13          (6) as of the date of the entry of this Order,

14  plaintiff and all individuals who have not opted-out hereby do

15  and shall be deemed to have fully, finally, and forever released,

16  settled, compromised, relinquished, and discharged defendant of

17  and from any and all settled claims;

18          (7) class counsel and liaison counsel are entitled to

19  fees and costs in the amount of $883,200.54;

20          (8) plaintiff Clayman is entitled to an incentive award

21  in the amount of $1,000.00, plaintiff Drew is entitled to an

22  incentive award in the amount of $4,000.00, plaintiff Cohen is

23  entitled to an incentive award in the amount of $4,000.00, and

24  plaintiff Morales is entitled to an incentive award in the amount

25  of $6,000.00; and

26          (9) the action is dismissed with prejudice; however,

27  without affecting the finality of this Order, the court shall

28  retain continuing jurisdiction over the interpretation,

21

implementation, and enforcement of the Settlement Agreement with respect to all parties to this action, and their counsel of record.

Dated:   October 18, 2016

WILLIAM B. SHUBB
UNITED STATES DISTRICT JUDGE